# Exhibit 1

*Yana Mazya v. Northwestern Lake Forest Hospital, et al.*
**2018-CH-07161**

**Circuit Court File**

| 06/06/18 | Complaint and Summonses | | 1 |
|---|---|---|---|
| 06/14/18 | Motion for Class Certification | | 2 |
| 06/21/18 | Order entering and continuing Motion for Class Certification | | 3 |
| 06/21/18 | Omnicell Appearance | | 4 |
| 06/21/18 | Affidavit of Service | | 5 |
| 06/29/18 | Affidavits of Service | | 6 |
| 07/06/18 | Becton Appearance | | 7 |
| 07/10/18 | Order granting Beckton extension to answer | | 8 |
| 07/11/18 | Baker Hostetler Appearance | | 9 |
| 07/17/18 | Agreed Order holding responses in abeyance | | 10 |
| 08/03/18 | Agreed Motion to Substitute Attorneys | | 11 |
| 08/08/18 | Agreed Order granting Substitution of Attorneys | | 12 |
| 08/13/18 | Miller Appearance | | 13 |
| 08/13/18 | Rhodes Appearance and Rule 707 Statement | | 14 |
| 09/26/19 | Stephan Zouras Notice of Change of Address | | 15 |
| 09/28/18 | Agreed Motion to Hold Responsive Pleadings in Abeyance | | 16 |
| 10/04/18 | Order staying case | | 17 |
| 01/28/19 | Plaintiff's Notice of Authority | | 18 |
| 02/20/19 | Order setting schedule | | 19 |
| 04/03/19 | Plaintiff's Motion to File Amended Complaint | | 20 |
| 04/03/19 | Omnicell Appearance | | 21 |

| | | | |
|---|---|---|---|
| 04/08/19 | Beckton Dickinson Opposition to Motion to File Amended Complaint | | 22 |
| 04/10/19 | First Amended Complaint | | 23 |

1

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
CALENDAR: 05
PAGE 1 of 24
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| YANA MAZYA, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. |
| v. | ) ) | |
| NORTHWESTERN LAKE FOREST HOSPITAL, NORTHWESTERN MEMORIAL HEALTHCARE, OMNICELL, INC. and BECTON DICKINSON, | ) ) ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiff, Yana Mazya, brings this Complaint ("Complaint"), by and through her attorneys, individually and on behalf of all others similarly situated (the "Class"), brings the following Class Action Complaint ("Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against Northwestern Medical Lake Forest Hospital and Northwestern Medical Memorial HealthCare ("Northwestern"), Omnicell, Inc. and Becton, Dickinson and Company ("BD") (collectively "Defendants") to redress and curtail Defendants' unlawful collection, use, storage, and disclosure of Plaintiff's sensitive biometric data. Plaintiff alleges as follows upon personal knowledge as to herself, her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

1

## NATURE OF THE ACTION

1.      Defendant Northwestern Medical Lake Forest Hospital ("NLFH") is a community hospital in the State of Illinois. Upon information and belief, Northwestern Medical Memorial HealthCare ("NMH") is the hospital's parent company.

2.      When Northwestern hires an employee, he or she is enrolled in an employee database. Northwestern uses the employee database to monitor authorized access to stored materials (*i.e.* – medications) by its employees.

3.      Northwestern employees are required to have their fingerprints scanned by a biometric device to be able to gain authorized access to stored materials.  (*See* Exhibit A – New Hire Checklist).

4.      For example, Northwestern uses medication dispensing systems (*i.e.* – BD Pyxis and Omnicell) that require workers to scan a fingerprint before gaining access to stored materials.

5.      Unlike identification badges – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each employee. This exposes Northwestern employees to serious and irreversible privacy risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels and Facebook/Cambridge Analytica data breaches – employees have **_no_** means by which to prevent identity theft, unauthorized tracking, and other improper or unlawful use of this information.

6.      Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate the collection and storage of Illinois citizens' biometrics, such as fingerprints.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 2 of 24

7.     Despite this law, Defendants disregard these workers' statutorily protected privacy rights and unlawfully collect, store, and use their biometric data in violation of BIPA. Specifically, each Defendant has violated and continues to violate BIPA because they did not and continue not to:

    a.    Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by BIPA;

    b.    Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' fingerprints, as required by BIPA; and

    c.    Receive a written release from Plaintiff and others similarly situated to collect, store, disseminate or otherwise use their fingerprints, as required by BIPA.

8.     Plaintiff and other similarly-situated individuals are aggrieved because they were not: (1) informed in writing of the purpose and length of time for which fingerprints were being collected, disseminated and used; (2) provided a publicly available retention schedule or guidelines for permanent destruction of the biometric data; and (3) provided (nor did they execute) a written release, as required by BIPA.

9.     Additionally, Plaintiff and the class members are aggrieved because Northwestern improperly discloses employees' fingerprint data to out-of-state third-party vendors in violation of BIPA.

10.     Upon information and belief, Northwestern improperly discloses employees' fingerprint data to at least two third-party vendors, Omnicell and BD, and likely others.

11.     Upon information and belief, all Defendants lack retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and has not and will not destroy their biometric data as required by BIPA.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 3 of 24

12. Plaintiff and other similarly situated are aggrieved by each Defendant's failure to destroy its biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interactions with the company.

13. Plaintiff and other similarly-situated individuals have suffered an injury in fact based on each Defendant's violations of their legal rights.

14. These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties. The Illinois Attorney General has just ranked identity theft as the top scam targeting Illinois residents. (*See* Exhibit B).

15. Each Defendant is directly liable for, and had actual knowledge of, the BIPA violations alleged herein.

16. Accordingly, Plaintiff, on behalf of herself as well as the putative Class, seeks an Order: (1) declaring that Defendants' conduct violates BIPA; (2) requiring Defendants to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 4 of 24

**PARTIES**

17. Plaintiff Yana Mazya is a natural person and a citizen of the State of Illinois.

18. Defendant Northwestern Medical Lake Forest Hospital is a not-for-profit corporation and a subsidiary of Northwestern Memorial HealthCare organized and existing under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois. Defendant is registered with the Illinois Secretary of State and conducts business in the State of Illinois.

19. Defendant Northwestern Medical Memorial HealthCare is a not-for-profit corporation organized and existing under the laws of the State of Illinois, with its principal place

of business in Chicago, Illinois. Defendant is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

20. Defendant Omnicell, Inc. is a Delaware corporation that is registered to do business in Illinois.

21. Defendant Becton, Dickinson and Company is a New Jersey corporation that is registered to do business in Illinois.

## JURISDICTION AND VENUE

22. This Court has jurisdiction over Defendants pursuant to 735 ILCS § 5/2-209 because they conduct business transactions in Illinois, have committed tortious acts in Illinois, and are registered to conduct business in Illinois.

23. Venue is proper in Cook County because Defendants conduct business in Cook County.

## FACTUAL BACKGROUND

### I. The Biometric Information Privacy Act.

24. Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

25. In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 5 of 24

biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware the scanners were not transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 6 of 24

26.　　Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

27.　　Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

28.　　BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

　　　　a.　　Informs the subject in writing that a biometric identifier or biometric information is being collected or stored;

　　　　b.　　Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

　　　　c.　　Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS 14/15(b).

29.    Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

30.    BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for such disclosures. *See* 740 ILCS 14/15(d)(1).

31.    BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

32.    Compliance with BIPA is straightforward, and the necessary disclosures and written release can be achieved easily through a single, signed sheet of paper. BIPA's requirements bestow upon consumers a right to privacy in their biometrics, as well as the right to make informed decisions when electing to provide or withhold their most sensitive information and the terms upon which they do so.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 7 of 24

33.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at a heightened risk for identity theft and left without any recourse.

34.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics.  BIPA also protects individuals' rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed, allowing individuals to make a truly informed choice. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

35.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

## II.    Defendants Violate the Biometric Information Privacy Act.

36.     By the time BIPA passed through the Illinois Legislature in mid-2008, most companies who had experimented with using workers' biometric data as an authentication method stopped doing so.

37.     However, Defendants failed to take note of the shift in Illinois law governing the collection and use of biometric data and still utilizes its biometric allowable-access regime. As a result, each Defendant continues to collect, store, use and disseminate workers' biometric data in violation of BIPA.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 8 of 24

38.     Specifically, when employees are hired, Northwestern requires them to have their fingerprints scanned to enroll them in Northwestern's, BD's Pyxis and/or Omnicell's database(s).

39.     Northwestern uses an authentication system that requires employees to use their fingerprint as a means of authentication to gain access to stored materials. Thus, employees have to use their fingerprints multiple times each day whenever they need to access these materials to perform their job duties in caring for patients.

40.     Upon information and belief, Northwestern fails to inform their employees that it discloses employees' fingerprint data to at least two out-of-state third-party vendors, Omnicell and BD; fails to inform their employees of the purposes and duration for which it collects employees' sensitive biometric data; and fails to obtain written releases from employees before collecting their fingerprints.

41.     Likewise, Omnicell and BD fails to inform Plaintiffs of the purposes and duration for which it collects their sensitive biometric data and fails to obtain written releases from workers before collecting their fingerprints.

42.     Nor do Defendants provide workers with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying workers' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

43.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA, as well as the recent Equifax and Uber data breaches, highlight why conduct such as Defendants' – where individuals are aware that they are providing a fingerprint, but not aware of to whom or for what purposes they are doing so – is dangerous. The Pay by Touch bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 9 of 24

biometric identifiers, such as a fingerprint, who exactly is collecting their biometric data, where it will be transmitted, for what purposes, and for how long. Each Defendant disregards these obligations and Plaintiffs' statutory rights and instead unlawfully collects, stores, uses and disseminates Plaintiffs' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

44.    Upon information and belief, all Defendants lack retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and has not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the worker's last interactions with the company.

45.    Plaintiffs are not told what might happen to their biometric data if and when any Defendant merges with another company, or worse, if and when any of the Defendant's entire organization folds.

46.    Since Defendants neither publish a BIPA-mandated data retention policy nor disclose the purposes for their collection of biometric data, Northwestern's employees have no idea whether any of the Defendants sell, disclose, re-disclose, or otherwise disseminate their biometric data. Moreover, Plaintiff and others similarly situated are not told to whom any of the Defendants currently disclose their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

47.    These violations have raised a material risk that Plaintiff and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

48.    By and through the actions detailed above, Defendants disregarded Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 10 of 24

### III. Plaintiff Yana Mazya's Experience

49.     Plaintiff worked for Northwestern as a registered nurse at Northwestern Memorial Lake Forest Hospital, which is located at 1000 N Westmoreland Road, Lake Forest, Illinois 60045 from November 12, 2012 until December 4, 2017.

50.     As a new employee, Plaintiff was required to scan her fingerprint so Northwestern could use it as an authorization method to allow access to stored materials at NLFH, namely medications, to administer to patients. (*See* Ex. A).

51.     Upon information and belief, each Defendant subsequently stored Plaintiff's fingerprint data in their database(s).

52.     Each time Plaintiff needed to gain access to stored materials, she was required to scan her fingerprint.

53.     Plaintiff has never been informed of the specific limited purposes or length of time for which any Defendant collected, stored, used and/or disseminated her biometric data.

54.     Plaintiff has never been informed of any biometric data retention policy developed by any Defendant, nor has she ever been informed of whether any Defendant will ever permanently delete her biometric data.

55.     Plaintiff has never been informed that her biometric data was being shared with Omnicell, BD and/or any other third-party vendors.

56.     Plaintiff has never been provided with nor ever signed a written release allowing any Defendant to collect, store, use or disseminate her biometric data.

57.     Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendants' violations of BIPA alleged herein.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 11 of 24

11

58. Unlike a social security number that can be changed, no amount of time or money can compensate Plaintiff if her biometric data is compromised by the lax procedures through which Defendants captured, stored, used, and disseminated her and other similarly-situated individuals' biometrics, and Plaintiff would not have provided her biometric data to Northwestern if she had known that they would retain such information for an indefinite period of time without her consent.

59. A showing of actual damages is not necessary in order to state a claim under BIPA. Nonetheless, Plaintiff has been aggrieved because she suffered an injury-in-fact based on Defendants' violations of her legal rights. Additionally, Plaintiff suffered an invasion of a legally protected interest when Defendants secured her personal and private biometric data at a time when they had no right to do so, a gross invasion of her right to privacy. BIPA protects workers like Plaintiff from this precise conduct, and Defendants had no lawful right to secure this data or share it with third parties absent a specific legislative license to do so.

60. Plaintiff also suffered an injury in fact because each Defendant improperly disseminated her biometric identifiers and/or biometric information to third parties, including but not limited to Omnicell, BD and any other third party that hosted the biometric data in their data centers, in violation of BIPA.

61. Plaintiff's biometric information is economically valuable, and such value will increase as the commercialization of biometrics continues to grow. As such, Plaintiff was not sufficiently compensated by any of the Defendants for their retention and use of her biometric data. Plaintiff would not have agreed to work for Northwestern for the compensation she received if she had known that it would retain her biometric data indefinitely and disseminate it to Omnicell and BD without adequate compensation to Plaintiff.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 12 of 24

62. Plaintiff also suffered an informational injury because Defendants failed to provide her with information to which she was entitled by statute. Through BIPA, the Illinois legislature has created both and an injury. An employee has the right to receive certain information prior to an employer securing their highly personal, private and proprietary biometric data. Conversely, the employee suffers injury when he or she does not receive this extremely critical information.

63. Pursuant to 740 ILCS 14/15(b), Plaintiff was entitled to receive certain information prior to Defendants securing her biometric data. Namely, Plaintiff was entitled to information advising her of the specific limited purpose(s) and length of time for which each Defendant collects, stores, uses and disseminates her private biometric data; information regarding each Defendant's biometric retention policy; and, a written release allowing each Defendant to collect, store and use her private biometric data. By depriving Plaintiff of this information, Defendants injured her. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

64. Finally, as a result of Defendants' conduct, Plaintiff has experienced personal injury in the form of mental anguish. For example, Plaintiff experiences mental anguish and injury when contemplating what would happen to her biometric data if any of the Defendants went bankrupt, whether any of the Defendants will ever delete her biometric information, and whether (and to whom) any of the Defendants share her biometric information.

65. Plaintiff has plausibly inferred actual and ongoing harm in the form of monetary damages for the value of the collection and retention of her biometric data; in the form of monetary damages by not obtaining additional compensation as a result of being denied access to material information about Defendants' policies and practices; in the form of the unauthorized disclosure

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 13 of 24

of her confidential biometric data to third parties; and in the form of the continuous and ongoing exposure to substantial and irreversible loss of privacy.

66.    As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, she seeks statutory damages under BIPA as compensation for the injuries caused by Defendants.

## CLASS ALLEGATIONS

67.    Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Named Plaintiff brings claims on her own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

68.    As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS 14/15.

69.    Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, for the following class of similarly situated workers under BIPA:

> **All individuals working for Northwestern in the State of Illinois who had their fingerprints collected, captured, received, or otherwise obtained or disclosed by any Defendant during the applicable statutory period.**

70.    This action is properly maintained as a class action under 735 ILCS 5/2-801

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 14 of 24

because:

A.   The class is so numerous that joinder of all members is impracticable;

B.   There are questions of law or fact that are common to the class;

C.   The claims of the Plaintiff are typical of the claims of the class; and,

D.   The Plaintiff will fairly and adequately protect the interests of the class.

### Numerosity

71.   The total number of putative class members exceeds fifty (50) individuals. The exact number of class members may easily be determined from Northwestern's database.

### Commonality

72.   There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendants' failure to comply with BIPA. The common questions of law and fact include, but not limited to the following:

A.   Whether any Defendant collected, captured or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

B.   Whether any Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

C.   Whether any Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometric identifiers or biometric information;

D.   Whether any Defendant has disclosed or re-disclosed Plaintiff's and the Class's biometric identifiers or biometric information;

E.   Whether any Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

F.   Whether any Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 15 of 24

satisfied or within three years of their last interaction, whichever occurs first;

G.    Whether any Defendant complies with any such written policy (if one exists);

H.    Whether any Defendant's violations of BIPA have raised a material risk that Plaintiff's and the putative Class' biometric data will be unlawfully accessed by third parties;

I.    Whether any Defendant used Plaintiff's and the Class's fingerprints to identify them; and

J.    Whether the violations of BIPA were committed negligently; and

K.    Whether the violations of BIPA were committed willfully.

73.    Plaintiff anticipates that Defendants will raise defenses that are common to the class.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 16 of 24

### Adequacy

74.    Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

### Typicality

75.    The claims asserted by Plaintiff are typical of the class members she seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

76.    Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can

"opt out" of this action pursuant to 735 ILCS 5/2-801.

**Predominance and Superiority**

77.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

78.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

**FIRST CAUSE OF ACTION**
**Violation of 740 ILCS 14/1, *et seq.***
**(On Behalf of Plaintiff and the Class)**

79.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 17 of 24

17

80.     BIPA requires companies to obtain informed written consent from workers before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

81.     BIPA also prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

82.     Furthermore, BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the customer); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

83.     Each Defendant fails to comply with these BIPA mandates.

84.     Defendant NLFH is registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

85.     Defendant NMH is registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 18 of 24

18

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 19 of 24

86.     Defendant Omnicell, Inc. is a Delaware corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

87.     Defendant Becton Dickinson is a New Jersey corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

88.     Plaintiff is an individual who had her "biometric identifiers" collected by each Defendant (in the form of her fingerprints), as explained in detail in Section II, *supra*. *See* 740 ILCS 14/10.

89.     Plaintiff's biometric identifiers were used to identify her and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

90.     Each Defendant systematically and automatically collected, used, stored, and disclosed Plaintiff's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

91.     Upon information and belief, Northwestern systematically disclosed Plaintiff's biometric identifiers and biometric information to at least two out-of-state third-party vendors, Omnicell and BD.

92.     None of the Defendants informed Plaintiff in writing that her biometric identifiers or biometric information were being collected, stored, used and disseminated, nor did any Defendant inform Plaintiff in writing of the specific purpose and length of term for which her biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

93.     Defendants do not provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

94.     By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendants violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

95.     Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class' biometric data and has not and will not destroy Plaintiff's or the Class' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the worker's last interaction with the company.

96.     These violations have raised a material risk that Plaintiff's and the Class's biometric data will be unlawfully accessed by third parties.

97.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

### SECOND CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Class)

98.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 20 of 24

99.     Each Defendant owed Plaintiff and the Class a duty of reasonable care. Such duty required Defendants to exercise reasonable care in the collection and use of Plaintiff's and the Class's biometric data.

100.    Additionally, Northwestern owed Plaintiff and the Class a heightened duty – under which it assumed a duty to act carefully and not put Plaintiff and the Class at undue risk of harm – because of the employment relationship of the parties.

101.    Each Defendant breached its duty by failing to implement reasonable procedural safeguards around the collection and use of Plaintiff's and the Class's biometric identifiers and biometric information.

102.    Specifically, each Defendant breached its duties by failing to properly inform Plaintiff and the Class in writing of the specific purpose or length for which their fingerprints were being collected, stored, used and disseminated.

103.    Each Defendant also breached its duties by failing to provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprint data.

104.    Upon information and belief, each Defendant breached its duties because it lack retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and has not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the worker's last interaction with the company.

105.     These violations have raised a material risk that Plaintiff's and the Class's biometric data will be unlawfully accessed by third parties.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 21 of 24

106. Each Defendant's breach of its duties proximately caused and continues to cause an invasion of Plaintiff's and the Class's privacy, an informational injury, and mental anguish, in addition to the statutory damage provided in BIPA.

107. Accordingly, Plaintiff seeks an order declaring that each Defendant's conduct constitutes negligence and awarding Plaintiff and the Class damages in an amount to be calculated at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Yana Mazya respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Yana Mazya as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B. Declaring that Defendants' actions, as set forth above, violate BIPA;

C. Awarding statutory damages of $5,000 for *each* willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D. Declaring that Defendants' actions, as set forth above, constitute negligence;

E. Declaring that Defendants' actions, as set forth above, were willful;

F. Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendants to collect, store, use and disseminate biometric identifiers or biometric information in compliance with BIPA;

G. Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

H. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

I. Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 22 of 24

22

Date:   June 6, 2018

Respectfully Submitted,

*/s/ Catherine T. Mitchell*

Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
Stephan Zouras, LLP
205 N. Michigan Avenue
Suite 2560
Chicago, Illinois 60601
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF**

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 23 of 24

23

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on June 6, 2018, I electronically filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

_/s/ Catherine T. Mitchell_

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 24 of 24

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
CALENDAR: 05
PAGE 1 of 2
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT A

HR_Gen/130127/Yana Mazya/3240/New Hire- Documentation/11/13/2012/Default/301YWCE_00012LYCJ001929

130127

MLI TV
K.Fiesta

# NM Northwestern Memorial® Hospital

## NEW HIRE CHECKLIST

NAME: _Yana Mazya_  START / TRANSFER DATE: _11/12/12_

JOB TITLE: _RN_

RECRUITER: _DBC_

Requisition #: _70046_  Manager / Interview Date: ▮▮

Conviction? Y (N)  SSN: ▮▮▮▮▮▮▮

Previous NM employee? Y (N) ID# _____  DOB: _11/19/198?_

Right to Work in the US? (Y) N  Marital Status: _M_

0.6, lot

✓ Licensure / Certifications Look Up

✓ Verisys Checked

✓ Offer Letter and On-Boarding Instructions Sent

___ Talent plus Test To Manager ___ Result Y / N

**STILL NEED FROM CANDIDATE:**

___ Illinois License for _RN_ (or IL Temporary Work Permit)

___ CPR Card

___ "PASS" Letter for RN Grads

___ Other Certifications/Licenses:

___ Educational Degree or Official Transcript ~~disclosure~~

Refs ⊕ completed

Recruiting Coordinator:

___ Reference: Date Sent: _10/4_  Complete: _10/4_

✓ Enrolled in BPO _11/12_

✓ Enrolled in PCO or PCT Course _11/14_

✓ Professional Experience Date _3/1/11_

✓ Licensure / Certifications Look Up (2)

✓ Licensure / Certifications Entered

✓ Highest Level of Education Entered

✓ Entered in Person Profiles

✓ Entered in Modify a Person

✓ Hourly/Annual Salary _27.82_

✓ Hours and Shift detail _24, 1st_

___ Sign-on Bonus: _____

___ Pay Dates: _____

___ Date added to spreadsheet: _____

On-Boarding Process:

✓ Employee Health Clearance verified

✓ Fingerprints completed

___ Criminal Background 3019 entered

___ Union Card: NO YES

___ Non-Licensed Direct Patient Caregiver: NO YES

___ Fee App Completed _UCIA_

✓ Emergency Contact Information

✓ Tax Data

___ ImageNow Documents

___ Direct Deposit

S:\Datastore01\Human Resources\Staffing\Forms\New Hire Paperwork for Front Desk

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 2 of 2

## APPROVED 11/12/12

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
CALENDAR: 05
PAGE 1 of 20
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT B

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 2 of 20





Not Just Security, the Right Security.

# Data Breach QuickView Report

### Data Breach Trends - First Six Months of 2017

### Sponsored by:
### Risk Based Security

### Issued in July 2017

## Mega breaches continue while pace of disclosure shows signs of slowing

- There were 2,227 breaches reported in the first half of 2017, exposing over **6 billion** records.
- Top 10 breaches exposed 5.6 billion of the 6 billion records compromised.
- Top 10 Severity scores averaged 9.82 out of 10.0.
- The Business sector accounted for 56.5% of reported breaches, followed by Unknown (17%), Government (9.1%), Medical (9%), and Education (8.4%).
- The Business sector accounted for 93% of the total records exposed, followed by Government and Unknown (approximately 3% for each). Medical and Education sectors combined accounted for less than 1% of the total records exposed year to date.
- Web (inadvertent online disclosure) continues to be the leading cause of records compromised in 2017, accounting for 68.3% of records exposed, but only 7.1% of incidents reported so far this year.
- 41.6% of reported breaches were the result of Hacking, yet accounted for 30.6% of the exposed records.
- Breaches involving U.S. entities accounted for 61% of the breaches and approximately 30% of the exposed records.
- 29.3% of the breaches exposed between one and 1,000 records, 43.6% of breaches exposed between one and 10,000 records – virtually unchanged from Q12017.
- 121 breaches, or 5.4%, affected Third Parties.
- Fifty (50) breaches - 19 in Q2 and 31 in Q1 - exposed one million or more records.
- Four 2017 breaches are now on the Top 10 List of All Time Largest Breaches.
- The company DU Called, replaced River City Media for the top spot of the single largest breach disclosed, impacting 2 billion records.

   Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Table of Contents

Mid-Year 2017 Compared to Mid-Year of the Previous Four Years ...................................3

Mid-Year 2017 by Industry, by Month ................................................................................3

Mid-Year 2017 Analysis by Breach Type ............................................................................4

Mid-Year 2017 Data Breach Analysis by Threat Vector .....................................................5

Mid-Year 2017 Exposed Records by Threat Vector ............................................................5

Mid-Year 2017 Analysis by Data Family .............................................................................6

Mid-Year 2017 Confidentiality Impact ...............................................................................6

Percentage of Breaches Exposing Data Types YTD 2017 vs. Prior Years ...........................7

Mid-Year 2017 Analysis of Records per Breach ..................................................................8

Mid-Year 2017 Breach Types/Records Exposed – Top 5 ....................................................8

Distribtuion of Business Groups Within Economic Sectors – Top 3 ....................................9

Mid-Year 2017 Analysis by Country ...................................................................................9

Mid-Year 2017 Analysis by Country – Top 10...................................................................10

Mid-Year 2017 Exposed Records by Country ...................................................................10

Mid-Year 2017 Distribution of Breaches By State ............................................................11

Mid-Year 2017 Analysis of US State Rankings- Exposed Records .....................................11

Mid-Year 2017 Breaches Involving Third Parties ..............................................................12

Mid-Year 2017 – Breach Severity Scores & Scoring .........................................................13

Mid-Year 2017 – Breach Severity Scores – Top 10 ...........................................................13

Top 20 Largest Breaches All Time (Exposed Records Count) ............................................14

Methodology & Terms......................................................................................................17

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 3 of 20

     Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Mid-Year 2017 Compared to Mid-Year of the Previous Four Years



### Number of Incidents by Year – First 6 Months

### Number of Records Exposed by Year – First 6 Months

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 4 of 20

## Mid-Year 2017 by Industry, by Month





Distribution of Incidents by Industry, by Month



Distribution of Exposed Records by Industry, by Month

 Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Mid-Year 2017 Analysis by Breach Type

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 5 of 20



### Top 10 Breach Types – First 6 Months

| Breach Type | Count |
|---|---|
| Hacking | 927 |
| Skimming | 272 |
| Phishing | 253 |
| Virus | 209 |
| Web | 158 |
| Undisclosed | 63 |
| Email | 54 |
| Fraud/SE | 54 |
| Other Mishandling | 51 |
| Stolen Laptop | 31 |

The number of phishing incidents started to decline once the U.S. tax season came to a close.

Despite being the leading cause of records exposed, Web (inadvertent online disclosure) ranked fifth on number of incidents.

### Top 5 Breach Types by Records Exposed First 6 Months

| Breach Type | Percent |
|---|---|
| Web | 68.1% |
| Hacking | 30.8% |
| Stolen Computer | 0.9% |
| Virus | 0.1% |
| Stolen Laptop | 0.1% |

While not making the top 5 list very often, a Stolen Computer from the COMELEC (Philippines Election Commission) offices resulted in 55.1 million voter records exposed.

 Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Mid-Year 2017 Data Breach Analysis by Threat Vector



### Number of Incidents by Threat Vector

16.0% of incidents were the result of insider activity, up slightly from 12.1% of incidents reported in Q12017.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 6 of 20

## Mid-Year 2017 Exposed Records by Threat Vector

| Threat Vector | Records Exposed |
|---|---|
| Outside | 2,227,842,612 |
| Inside-Unknown | 2,001,248,057 |
| Inside-Accidental | 1,739,943,232 |
| Unknown | 45,540,090 |
| Inside-Malicious | 567,571 |
| Total | 6,015,141,562 |

A single insider incident exposed Two billion records.

## Mid-Year 2017 – Breach Discovery Method

| | Internal Discovery - Incidents | Internal Discovery - Records | External Discovery - Incidents | External Discovery - Records | Undisclosed Discovery - Incidents | Undisclosed Discovery - Records |
|---|---|---|---|---|---|---|
| Q1 | 221 | 65,173,264 | 783 | 3,345,957,501 | 376 | 17,670,845 |
| Q2 | 222 | 2,966,956 | 314 | 486,285,236 | 311 | 2,097,077,760 |
| YTD | 443 | 68,140,220 | 1,097 | 3,832,242,737 | 687 | 2,114,748,605 |

       Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Mid-Year 2017 Top 10 Breaches Data Types and Severity Scores[1]

| Breach Type | Records Exposed | Percentage of Total Exposed | Data Type[2] | Severity Score |
|---|---|---|---|---|
| Web | 2,000,000,000 | 33.2% | ADD/NAA/NUM | 10.0 |
| Web | 1,374,159,612 | 22.8% | ADD/EMA/FIN/MISC/NAA | 10.0 |
| Hack | 1,221,893,767 | 20.3% | EMA/PWD | 10.0 |
| Web | 267,693,854 | 4.5% | EMA/NUM | 9.80 |
| Web | 198,000,000 | 3.3% | ADD/DOB/MISC/NAA/NUM | 10.0 |
| Web | 135,000,000 | 2.2% | ADD/FIN/MISC/NAA/NUM/SSN | 9.68 |
| Hack | 129,696,449 | 2.2% | EMA/PWD | 9.71 |
| Hack | 126,761,168 | 2.1% | ADD/NAA/NUM | 9.40 |
| Hack | 91,890,110 | 1.5% | EMA/PWD/USR | 9.56 |
| Hack | 77,000,000 | 1.3% | EMA/PWD/USR | 9.96 |

**The top 10 breaches exposed 5,622,094,960 records, or 93.4% of the total records exposed in the first 6 months**

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 7 of 20

## Mid-Year 2017 Analysis by Data Family

| Data Family | Percentage of Total Breaches Mid-Year 2016 | Percentage of Total Exposed Records Mid-Year 2016 | Percentage of Total Breaches Mid-Year 2017 | Percentage of Total Exposed Records Mid-Year 2017 |
|---|---|---|---|---|
| Electronic | 90.18% | 99.98% | 93.22% | 99.98% |
| Physical | 6.75% | <1% | 4.62% | <1% |
| Unknown | 3.07% | <1% | 2.16% | <1% |

## Mid-Year 2017 Confidentiality Impact

### Confidentality Impact



Unknown 4%
Potential 15%
Confirmed 81%

The majority of breaches continue to result in confirmed unauthorized access to sensitive data

---

[1] See page 13 for additional detail on these incidents.
[2] See page 17 for a description of abbreviations.

   Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Mid-Year 2017 Analysis by Data Type - Percentage of Breaches



Incidents by Data Type Exposed

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 8 of 20

Compared to the same time period in 2016, the percentage of breaches impacting Social Security numbers increased from 17.6 in 2016 to 26.1% in 2017. Likewise, the percentage of breaches impacting Names increased from 36.1% to 40.6% and the percentage impacting physical addresses increased from 21.6% to 30.4%. Research indicates this effect is attributable to the steady rise of successful phishing campaigns targeting W-2 data during the first 4 months of the year.

## Percentage of Breaches Exposing Data Types YTD 2017 vs. Prior Years

| Data Type | First 6 Months 2017 | First 6 Months 2016 | First 6 Months 2015 |
|---|---|---|---|
| Name | 40.6% | 36.1% | 27.8% |
| Email Address | 33.2% | 42.9% | 45.5% |
| Physical Address | 30.4% | 21.6% | 12.3% |
| Password | 28% | 39.8% | 52.2% |

The "W-2 phishing effect" is more evident when comparing the percentage of breaches impacting 2017's top four data types over time. Access credentials in the form of username / email address and password remain popular targets, but the overall number of breaches impacting these records has steadily declined during the first half of 2017 as attention turns to data more directly useful for tax fraud.

 Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Mid-Year 2017 Analysis of Records per Breach

| Exposed Records | Number of Breaches | Percent of Total |
|---|---|---|
| Unknown/Undisclosed | 1024 | 46.0% |
| 1 to 100 | 317 | 14.2% |
| 101 to 1,000 | 336 | 15.1% |
| 1,001 to 10,000 | 320 | 14.4% |
| 10,001 to 100,000 | 132 | 5.9% |
| 100,001 to 500,000 | 36 | 1.6% |
| 500,001 to 999,999 | 12 | 0.5% |
| 1 M to 10 M | 30 | 1.3% |
| > 10 M | 20 | 0.9% |

For the third year in a row, the number of incidents with exposed records either unknown or unreported increased. At this point in 2015, it was 27.6%; in 2016, it was 35.4%.

## Mid-Year 2017 Breach Types/Records Exposed – Top 5

| Breach Category | Number of Breaches | Number of Records Exposed | Average Records per Breach | Percent of Total Records Exposed |
|---|---|---|---|---|
| Hacking | 927 | 1,839,750,699 | 1,984,629 | 30.59% |
| Skimming | 272 | 4,874 | 18 | 0.00% |
| Phishing | 253 | 458,964 | 1,814 | 0.01% |
| Virus/Malware | 209 | 6,918,120 | 33,101 | 0.12% |
| Web | 158 | 4,069,836,698 | 25,758,460 | 67.67% |

ELECTRONICALLY FILED<br>6/6/2018 11:14 AM<br>2018-CH-07161<br>PAGE 40 of 246

## Mid-Year 2017 Analysis of Incidents by NAICS Economic Sector

### Distribution of Incidents by Economic Sector



 Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Distribtuion of Business Groups Within Economic Sectors – Top 3

| Economic Sector | Business Group | Percentage of Breaches Within Economic Sector |
|---|---|---|
| Information (51) | Software / Web Services | 79.9% |
| | Mass Media | 11.2% |
| | Telecommunications | 7.3% |
| HealthCare (62) | Non-Hospital Facilities | 33.3% |
| | Hospitals | 29.5% |
| | Practitioner Offices | 29.5% |
| Public Sector (92) | Federal | 33.8% |
| | State | 20.6% |
| | Cities | 19.5% |

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 10 of 20

## Mid-Year 2017 Analysis by Country



### Incidents by Location

- Other: 23.6%
- USA: 61.4%
- Unknown: 15.0%

### Records Exposed by Location

- Other: 67.9%
- USA: 31.1%
- Unknown: 1.0%

The Top 10 countries accounted for 1,708, or 76.6% of the breaches reported and 97.7% of the records compromised.

Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Mid-Year 2017 Analysis by Country – Top 10

### Incidents by Country – Top 10



| | |
|---|---|
| United States | 1367 |
| United Kingdom | 104 |
| Canada | 59 |
| India | 52 |
| Australia | 34 |
| China | 22 |
| Ukraine | 19 |
| Russian Federation | 19 |
| Indonesia | 18 |
| Iran | 14 |

North America accounted for 64.2% of breaches

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 11 of 205

## Mid-Year 2017 Exposed Records by Country

| Ranking | Number of Breaches | Country | Total Exposed Records | Average Records per Breach | Median Number of Records | Percentage of Exposed Records |
|---|---|---|---|---|---|---|
| 1 | 22 | China | 3,822,024,257 | 173,728,375 | 3,371,754 | 48.83% |
| 2 | 1367 | United States | 3,746,193,334 | 2,740,449 | 1,700 | 47.86% |
| 3 | 52 | India | 179,055,018 | 3,443,366 | 308 | 2.29% |
| 4 | 2 | Philippines | 55,254,020 | 27,627,010 | - | 0.71% |
| 5 | 7 | Hong Kong | 12,041,792 | 1,720,256 | 1,890,876 | 0.15% |
| 6 | 4 | South Africa | 6,700,000 | 1,675,000 | - | 0.09% |
| 7 | 104 | United Kingdom | 2,401,829 | 23,095 | 669 | 0.03% |
| 8 | 59 | Canada | 2,107,262 | 35,716 | 503 | 0.03% |
| 9 | 2 | Finland | 1,100,023 | 550,012 | - | 0.01% |
| 10 | 7 | Japan | 722,096 | 103,157 | 121 | 0.01% |

Large breaches affecting 1,000,000 or more records heavily influences the average number of records lost in certain countries. The median number of records lost in the five countries reporting the most breaches ranges between 308 and 1,700, with Australia coming in at 872.

Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Mid-Year 2017 Distribution of Breaches By State



### Incidents by US State –
### Top 10

The top 10 states represent 51% of US breaches.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 12 of 37

## Mid-Year 2017 Analysis of US State Rankings- Exposed Records

| Exposed Records Ranking | US State | Total Exposed Records | Number of Breaches | Exposed Records/Breach | Percentage of USA Exposed Records |
|---|---|---|---|---|---|
| 1 | WA | 1,375,336,881 | 27 | 50,938,403 | 73.42% |
| 2 | NJ | 33,724,579 | 29 | 1,162,917 | 1.31% |
| 3 | CA | 10,690,370 | 140 | 76,360 | 0.31% |
| 4 | NY | 8,163,474 | 90 | 90,705 | 0.19% |
| 5 | AR | 4,890,000 | 7 | 698,571 | 0.16% |
| 6 | TX | 4,777,984 | 98 | 48,755 | 0.15% |
| 7 | GA | 3,798,732 | 23 | 165,162 | 0.10% |
| 8 | MD | 2,674,211 | 44 | 60,778 | 0.09% |
| 9 | MI | 2,426,296 | 22 | 110,286 | 0.07% |
| 10 | FL | 1,519,843 | 94 | 16,169 | 0.02% |

        Copyright © 2017 Risk Based Security, Inc. All rights reserved.

**Mid-Year 2017 Breaches Involving Third Parties**

## Third Party Breaches by Business Type



- Medical
- Government
- Business
- Unknown
- Education

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 13 of 20

- Organizations classified in the business sector account for more than 50% of the breaches impacting data belonging to customers, clients or other 3rd parties.
- Three of the largest breaches reported in the first six months impacted 3rd parties.
- Hacking remains the dominant breach type for incidents impacting 3rd Parties, with regard to both the number of breaches and the number of records compromised.



     Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Mid-Year 2017 – Breach Severity Scores & Scoring

We can all readily agree that not all data breaches are created equal. Where disagreement arises is when we attempt to rate the 'severity' or 'impact' of a breach. At Risk Based Security we have combined our knowledge of the security industry, business experience and our comprehensive data breach information to calculate a Data Breach Severity Score.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 14 of 20

### Breach Severity Scores by Quarter



| | 9.0 – 10.0 | 8.0 – 8.99 | 7.0 – 7.99 | 6.0 – 6.99 | 5.0 – 5.99 | 4.0 – 4.99 | 3.0 – 3.99 | 2.0 – 2.99 | 1.0 – 1.99 | < 1 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1Q2017 | 12 | 11 | 27 | 78 | 319 | 574 | 244 | 60 | 46 | 4 |
| 2Q2017 | 6 | 5 | 44 | 17 | 39 | 245 | 330 | 143 | 18 | 5 |

On a positive note, breach severity scores declined in the second quarter of 2107. 58.2% of breaches reported in Q2 scored 3 or below while 25.7% of Q1 reported breaches scored 3 or below.

## Mid-Year 2017 – Breach Severity Scores – Top 10

| Score | Reported | Organization | Top 10 Summary |
|---|---|---|---|
| 10 | Q2 | DU Group dba DU Caller | (Web) 2,000,000,000 user phone numbers, names and addresses inappropriately made accessible in an uncensored public directory |
| 10 | Q1 | NetEase, Inc. dba 163.com | (Hacking) 1,221,893,767 email addresses and passwords stolen by hackers and sold on the Dark Web by DoubleFlag |
| 10 | Q1 | River City Media, LLC | (Web) 1,374,159,612 names, addresses, IP addresses, and email addresses, as well as an undisclosed number of financial documents, chat logs, and backups exposed by faulty `rsync` backup |
| 10 | Q2 | Deep Root Analytics | (Web) Approximately 198,000,000 voter names, addresses, dates of birth, phone numbers, political party affiliations, and other demographic information exposed in an unsecured Amazon S3 bucket |

Copyright © 2017 Risk Based Security, Inc. All rights reserved.

| Score | Reported | Organization | Top 10 Summary |
|---|---|---|---|
| 9.96 | Q2 | Edmodo | (Hacking) 77,000,000 user email addresses, usernames, and bcrypt hashed passwords with salts stolen by hackers through undisclosed means |
| 9.80 | Q1 | EmailCar | (Web) 267,693,854 email addresses and phone numbers exposed in an unsecure MongoDB installation and later dumped on the Internet |
| 9.71 | Q1 | Tencent Holdings Ltd dba QQ.com | (Hacking) 129,696,449 email addresses and passwords stolen by hackers and sold on the Dark Web by DoubleFlag |
| 9.68 | Q2 | National Social Assistance Programme (India) | (Web) Roughly 135,000,000 Aadhaar numbers and 100,000,000 linked bank account numbers, as well as names, caste, religion, addresses, phone numbers, photographs, and assorted financial details leaked on government web portals |
| 9.56 | Q2 | Youku | (Hacking) 91,890,110 user accounts with usernames, email addresses and MD5 encrypted passwords compromised by hackers and offered for sale |
| 9.45 | Q1 | Yahoo Japan | (Hacking) 23,590,165 email addresses and passwords stolen by hackers and sold on the Dark Web by DoubleFlag |

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 15 of 20

## Top 20 Largest Breaches All Time (Exposed Records Count)

| Breach Reported Date | Summary | Records Exposed | Organization's Name | Industry-Sector | Breach Location |
|---|---|---|---|---|---|
| **Highest All Time** 5/13/2017 | User phone numbers, names and addresses inappropriately made accessible in an uncensored public directory | 2 Billion | DU Caller Group (DU Caller) | Business - Technology | China |
| **Number 2** 3/3/2017 | Names, addresses, IP addresses, and email addresses, as well as an undisclosed number of financial documents, chat logs, and backups, exposed by faulty rsync backup. | 1.3 Billion | River City Media, LLC | Business - Technology | United States |
| **Number 3** 1/25/2017 | A database holding email addresses and passwords stolen by hackers and offered for sale on the dark web. | 1.2 Billion | NetEase, Inc. dba 163.com | Business – Technology | China |

    Copyright © 2017 Risk Based Security, Inc. All rights reserved.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 16 of 20

| Breach Reported Date | Summary | Records Exposed | Organization's Name | Industry-Sector | Breach Location |
|---|---|---|---|---|---|
| **Number 4** 12/14/2016 | While investigating the #4 incident on this list, a second hacking event was discovered targeting user names, email addresses, phone numbers, dates of birth, hashed passwords and security questions and associated answers. | 1 Billion | Yahoo | Business - Technology | United States |
| **Number 5** 9/22/2016 | Hack exposes user names, email addresses, phone numbers, dates of birth, hashed passwords and security questions and associated answers. | 500 Million | Yahoo | Business - Technology | United States |
| **Number 6** 10/18/2016 | Hackers exploit a Local File Inclusion vulnerability, compromising member email addresses, usernames, and encrypted passwords, IP addresses and membership statuses. | 412 Million | FriendFinder Networks, Inc | Business - Technology | United States |
| **Number 7** 5/27/2016 | Hack exposes user account records containing SHA1 encrypted passwords, email addresses. | 360 Million | MySpace | Business - Technology | United States |
| **Number 8** 1/1/2017 | Email addresses and phone numbers were exposed in an unsecure MongoDB installation, which was later downloaded and dumped on the Internet | 267 Million | EmailCar | Business - Technology | China |
| **Number 9** 8/22/2014 | Hack of websites exposes names, registration numbers, usernames and passwords. | 220 Million | Organization's Name has not been reported | Unknown | South Korea |
| **Number 10** 12/3/2016 | Hackers offer for sale a database containing a variety of personal and financial details. | 203 Million | Organization's Name has not been reported | Unknown | Unknown |
| **Number 11** 10/19/2013 | Fraudulent account used to gain access to credit card numbers, social security numbers, names, and financial account numbers. | 200 Million | Court Ventures, Inc. | Business - Data | United States |
| **Number 12** 6/19/2017 | Unsecured Amazon S3 bucket exposes voter names, addresses, dates of birth, contact information and voter preferences. | 198 Million | Deep Root Analytics | Business / Business | United States |

      Copyright © 2017 Risk Based Security, Inc. All rights reserved.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 17 of 20

| Breach Reported Date | Summary | Records Exposed | Organization's Name | Industry-Sector | Breach Location |
|---|---|---|---|---|---|
| **Number 13** 12/28/2015 | Mis-configured database exposes voter names, dates of birth, addresses, phone numbers, political party affiliations, and genders. | 191 Million | Organization's Name has not been reported | Unknown | United States |
| **Number 14** 6/21/2014 | Hack exposes trip details of customers after cracking MD5 hashes | 173 Million | NYC Taxi & Limousine Commission | Government - City | United States |
| **Number 15** 6/23/2016 | Hack exposes USA voter information. | 154 Million | Organization's Name has not been reported | Unknown | United States |
| **Number 16** 10/3/2013 | Hack exposed customer names, IDs, encrypted passwords and debit/ credit card numbers with expiration dates, source code and other customer order information. | 152 Million | Adobe Systems, Inc. | Business - Technology | United States |
| **Number 17** 3/17/2012 | Firm may have illegally bought and sold customers' information. | 150 Million | Shanghai Roadway D&B Marketing Services Co. | Business - Data | China |
| **Number 18** 5/21/2014 | Hack exposes names, encrypted passwords, email addresses, registered addresses, phone numbers and dates of birth. | 145 Million | eBay, Inc. | Business - Retail | United States |
| **Number 19** 6/8/2013 | North Korean Hackers expose email addresses and identification numbers. | 140 Million | Organization's Name has not been reported | Unknown | South Korea |
| **Number 20** 5/2/2017 | Leaky governmental websites expose Aadhaar numbers, banking details, names and other personal information. | 135 Million | National Social Assistance Programme | Government - Federal | India |

 Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Methodology & Terms

Risk Based Security's research methods include automated processes coupled with traditional human research and analysis. Our proprietary applications crawl the Internet 24x7 to capture and aggregate potential data breach breaches for our researchers to analyze. In addition, the research team manually verifies news feeds, blogs, and other sources looking for new data breaches as well as new information on previously disclosed incidents. The database also includes information obtained through Freedom of Information Act (FOIA) requests, seeking breach notification documentation from various state and federal agencies in the United States. The research team extends our heartfelt thanks to the individuals and agencies that assist with fulfilling our requests for information.

### Data Standards and the use of "Unknown"

In order for any data point to be associated with a breach entry, Risk Based Security requires a high degree of confidence in the accuracy of the information reported as well as the ability to reference a public source for the information. In short, the research team does not guess at the facts. For this reason the term "Unknown" is used when the item cannot be verified in accordance with our data validation requirements. This can occur when the breached organization cannot be identified but leaked data is confirmed to be valid or when the breached organization is unwilling or unable to provide sufficient clarity to the data point.

### Breach Types are defined as follows:

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 48 of 90

| Name | Description |
|------|-------------|
| Disposal Computer | Discovery of computers not disposed of properly |
| Disposal Document | Discovery of documents not disposed of properly |
| Disposal Drive | Discovery of disk drives not disposed of properly |
| Disposal Mobile | Discovery of mobile devices not disposed of properly |
| Disposal Tape | Discovery of backup tapes not disposed of properly |
| Email | Email communication exposed to unintended third party |
| Fax | Fax communication exposed to unintended third party |
| Fraud SE | Fraud or scam (usually insider-related), social engineering |
| Hack | Computer-based intrusion |
| Lost Computer | Lost computer (unspecified type in media reports) |
| Lost Document | Discovery of documents not disposed of properly, not stolen |
| Lost Drive | Lost data drive (unspecified if IDE, SCSI, thumb drive, etc.) |
| Lost Laptop | Lost laptop (generally specified as a laptop in media reports) |
| Lost Media | Media (e.g. disks) reported to have been lost by a third party |
| Lost Mobile | Lost mobile phone or device such as tablets, etc. |
| Lost Tape | Lost backup tapes |
| Missing Document | Missing document, unknown or disputed whether lost or stolen |
| Missing Drive | Missing drive, unknown or disputed whether lost or stolen |
| Missing Laptop | Missing laptop, unknown or disputed whether lost or stolen |
| Missing Media | Missing media, unknown or disputed whether lost or stolen |
| Other | Miscellaneous breach type not yet categorized |
| Phishing | Masquerading as a trusted entity in an electronic communication to obtain data |
| Seizure | Forcible taking of property by a government law enforcement official |
| Skimming | Using electronic device (skimmer) to swipe victims' credit/debit card numbers |
| Snail Mail | Personal information in "snail mail" exposed to unintended third party |
| Snooping | Exceeding intended privileges and accessing data not authorized to view |
| Stolen Computer | Stolen desktop (or unspecified computer type in media reports) |
| Stolen Document | Documents either reported or known to have been stolen by a third party |
| Stolen Drive | Stolen data drive, unspecified if IDE, SCSI, thumb drive, etc. |
| Stolen Laptop | Stolen Laptop (generally specified as a laptop in media reports) |
| Stolen Media | Media generally reported or known to have been stolen by a third party |

    Copyright © 2017 Risk Based Security, Inc. All rights reserved.

| Name | Description |
|------|-------------|
| Stolen Mobile | Stolen mobile phone or device such as tablets, etc. |
| Stolen Tape | Stolen backup tapes |
| Unknown | Unknown or unreported breach type |
| Virus (Malware) | Exposure to personal information via virus or Trojan (possibly classified as hack) |
| Web | Web-based intrusion, data exposed to the public via search engines, public pages |

**Data Type Definitions**

| Abbreviation | Description |
|--------------|-------------|
| CCN | Credit Card Numbers |
| SSN | Social Security Numbers (or Non-US Equivalent) |
| NAA | Names |
| EMA | Email Addresses |
| MISC | Miscellaneous |
| MED | Medical |
| ACC | Account Information |
| DOB | Date of Birth |
| FIN | Financial Information |
| UNK | Unknown |
| PWD | Passwords |
| ADD | Addresses |
| USR | User Name |
| NUM | Phone Number |
| IP | Intellectual Property |

**NO WARRANTY.**

*Risk Based Security, Inc. makes this report available on an "As-is" basis and offers no warranty as to its accuracy, completeness or that it includes all the latest data breach breaches. The information contained in this report is general in nature and should not be used to address specific security issues. Opinions and conclusions presented reflect judgment at the time of publication and are subject to change without notice. Any use of the information contained in this report is solely at the risk of the user. Risk Based Security, Inc. assumes no responsibility for errors, omissions, or damages resulting from the use of or reliance on the information herein. If you have specific security concerns please contact Risk Based security, Inc. for more detailed data loss analysis and security consulting services.*

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 19 of 20

    Copyright © 2017 Risk Based Security, Inc. All rights reserved.

# About Risk Based Security

Risk Based Security (RBS) provides detailed information and analysis on Data Breaches, Vendor Risk Scores and Vulnerability Intelligence. Our products, Cyber Risk Analytics (CRA) and VulnDB, provide organizations with access to the most comprehensive threat intelligence knowledge bases available, including advanced search capabilities, access to raw data via API, and email alerting to assist organizations in taking the right actions in a timely manner. In addition, our YourCISO offering provides organizations with on-demand access to high quality security and information risk management resources in one, easy to use web portal.

VulnDB is the most comprehensive and timely vulnerability intelligence available and provides actionable information about the latest in security vulnerabilities via an easy-to-use SaaS Portal, or a RESTful API for easy integration into GRC tools and ticketing systems. VulnDB allows organizations to search on and be alerted to the latest vulnerabilities, both in end-user software and the third-party libraries or dependencies that help build applications. A subscription to VulnDB provides organizations with simple to understand ratings and metrics on their vendors and products, and how each contributes to the organization's risk-profile and cost of ownership.

Cyber Risk Analytics (CRA) provides actionable security ratings and threat intelligence on a wide variety of organizations. This enables organizations to reduce exposure to the threats most likely to impact them and their vendor base. In addition, our PreBreach vendor risk rating, the result of a deep-view into the metrics driving cyber exposures, are used to better understand the digital hygiene of an organization and the likelihood of future data breach. The integration of PreBreach ratings into security processes, vendor management programs, cyber insurance processes and risk management tools allows organizations to avoid costly risk assessments, while enabling businesses to understand its risk posture, act quickly and appropriately to proactively protect its most critical information assets.

YourCISO provides organizations with on-demand access to high quality security and information risk management resources in one, easy to use web portal. YourCISO provides organization ready access to a senior executives and highly skilled technical security experts with a proven track record, matched specifically to your needs. The YourCISO service is designed to be an affordable long term solution for addressing information security risks. YourCISO brings together all the elements an organization needs to develop, document and manage a comprehensive information security program.

For more information, please visit:

https://www.riskbasedsecurity.com/
https://vulndb.cyberriskanalytics.com/
https://www.cyberriskanalytics.com/
https://www.yourciso.com/

Or call 855-RBS- RISK.

      Copyright © 2017 Risk Based Security, Inc. All rights reserved.

ELECTRONICALLY FILED
6/6/2018 11:14 AM
2018-CH-07161
PAGE 20 of 40

Summons - Alias Summons                                                                (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

<u>YANA MAZYA</u>

v.

No.  <u>2018-CH-07161</u>

<u>NORTHWESTERN LAKE FOREST HOSPITAL;</u>
<u>NORTHWESTERN MEMORIAL HEALTHCARE;</u>
<u>OMNICELL, INC.; BECTON, DICKINSON AND</u>
<u>COMPANY</u>

Defendant Address:
NORTHWESTERN LAKE FOREST HOSPITAL
R/A DANAE K PROUSIS
211 EAST ONTARIO STREET
#1800
CHICAGO, IL 60611

☑ **SUMMONS** ☐ **ALIAS - SUMMONS**

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room <u>802</u>                    ,Chicago, Illinois 60602

☐ District 2 - Skokie
  5600 Old Orchard Rd.
  Skokie, IL 60077

☐ District 3 - Rolling Meadows
  2121 Euclid 1500
  Rolling Meadows, IL 60008

☐ District 4 - Maywood
  Maybrook Ave.
  Maywood, IL 60153

☐ District 5 - Bridgeview
  10220 S. 76th Ave.
  Bridgeview, IL 60455

☐ District 6 - Markham
  16501 S. Kedzie Pkwy.
  Markham, IL 60428

☐ Richard J. Daley Center
  50 W. Washington, LL-01
  Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: <u>43734</u>

Name: STEPHAN ZOURAS LLP

Atty. for:  YANA MAZYA

Address:  205 N MICHIGAN 2560

City/State/Zip Code:  CHICAGO, IL 60601

Telephone:  (312) 233-1550

Primary Email Address: cmitchell@stephanzouras.com

Secondary Email Address(es):

rstephan@stephanzouras.com

Witness:              Wednesday, 06 June 2018

/s DOROTHY BROWN
DOROTHY BROWN, Clerk of Court

Date of Service:

(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____
(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

**Summons - Alias Summons**          (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

YANA MAZYA

v.

NORTHWESTERN LAKE FOREST HOSPITAL;
NORTHWESTERN MEMORIAL HEALTHCARE;
OMNICELL, INC.; BECTON, DICKINSON AND
COMPANY

No. 2018-CH-07161

Defendant Address:
NORTHWESTERN MEMORIAL HEALTHCARE
R/A DANAE K PROUSIS
211 EAST ONTARIO STREET
#1800
CHICAGO, IL 60611

☑ SUMMONS   ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802   ,Chicago, Illinois 60602

☐ District 2 - Skokie    ☐ District 3 - Rolling Meadows    ☐ District 4 - Maywood
5600 Old Orchard Rd.   2121 Euclid 1500   Maybrook Ave.
Skokie, IL 60077   Rolling Meadows, IL 60008   Maywood, IL 60153

☐ District 5 - Bridgeview    ☐ District 6 - Markham    ☐ Richard J. Daley Center
10220 S. 76th Ave.   16501 S. Kedzie Pkwy.   50 W. Washington, LL-01
Bridgeview, IL 60455   Markham, IL 60428   Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 43734

Name: STEPHAN ZOURAS LLP
Atty. for: YANA MAZYA
Address: 205 N MICHIGAN 2560
City/State/Zip Code: CHICAGO, IL 60601
Telephone: (312) 233-1550
Primary Email Address: cmitchell@stephanzouras.com
Secondary Email Address(es):
rstephan@stephanzouras.com

Witness: Wednesday, 06 June 2018

/s DOROTHY BROWN
DOROTHY BROWN, Clerk of Court

Date of Service:
(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

Summons - Alias Summons                                              (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

YANA MAZYA

v.

No. 2018-CH-07161

NORTHWESTERN LAKE FOREST HOSPITAL;
NORTHWESTERN MEMORIAL HEALTHCARE;
OMNICELL, INC.; BECTON, DICKINSON AND
COMPANY

Defendant Address:
OMNICELL, INC.
R/A ILLINOIS CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, IL 62703

☑ SUMMONS  ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802_____ ,Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid 1500
Rolling Meadows, IL 60008

☐ District 4 - Maywood
Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60428

☐ Richard J. Daley Center
50 W. Washington, LL-01
Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 43734

Name: STEPHAN ZOURAS LLP

Atty. for: YANA MAZYA

Address: 205 N MICHIGAN 2560

City/State/Zip Code: CHICAGO, IL 60601

Telephone: (312) 233-1550

Primary Email Address: cmitchell@stephanzouras.com

Secondary Email Address(es):

rstephan@stephanzouras.com

Witness: Wednesday, 06 June 2018

/s DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____

(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____

(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

Summons - Alias Summons                                                                                    (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

<u>YANA MAZYA</u>

v.

<u>NORTHWESTERN LAKE FOREST HOSPITAL;
NORTHWESTERN MEMORIAL HEALTHCARE;
OMNICELL, INC.; BECTON, DICKINSON AND
COMPANY</u>

No. <u>2018-CH-07161</u>

Defendant Address:
BECTON, DICKINSON AND COMPANY
R/A C T CORPORATION SYSTEM
208 SO. LASALLE STREET
SUITE 814
CHICAGO, IL 60604

☑ SUMMONS ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room <u>802</u>                   ,Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid 1500
Rolling Meadows, IL 60008

☐ District 4 - Maywood
Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60428

☐ Richard J. Daley Center
50 W. Washington, LL-01
Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: <u>43734</u>

Name: STEPHAN ZOURAS LLP

Atty. for: YANA MAZYA

Address: 205 N MICHIGAN 2560

City/State/Zip Code: CHICAGO, IL 60601

Telephone: (312) 233-1550

Primary Email Address: cmitchell@stephanzouras.com

Secondary Email Address(es):

rstephan@stephanzouras.com

Witness: Wednesday, 06 June 2018

/s DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service:

(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____
(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

2

## IN THE CIRCUIT CIVIL COURT OF COOK COUNTY, ILLINOIS

MAZYA YANA

v.

NORTHWESTERN LAKE FOREST

} No. 2018-CH-07161

## NOTICE OF MOTION

To: STEPHAN ZOURAS LLP (cmitchell@stephanzouras.com)
205 N MICHIGAN 2560
CHICAGO, IL 60601

On   June 21, 2018  , at   10:00 A.M.   or as soon thereafter as counsel may be heard, I shall appear before the Honorable   Cohen, Neil   or any Judge sitting in that Judge's stead, in the courtroom usually occupied by him/her, located at   50 W. Washington, R.J. Daley Center, Chicago Court Room 2308  , Illinois, and present

CERTIFY CLASS(SET FOR MOTION HEARING)

| | | | |
|---|---|---|---|
| Name | STEPHAN ZOURAS LLP | Atty. No. 43734 | *Pro Se 99500* |
| Address | 205 N MICHIGAN 2560 | Attorney for | MAZYA YANA |
| City/State/Zip | CHICAGO, IL 60601 | Telephone | (312) 233-1550 |

### ☐ PROOF OF SERVICE BY DELIVERY

I, _____, ☐ the attorney ☐ non-attorney certify that on the _____ day of _____, _____, I served this notice by delivering a copy personally to each person to whom it is directed.

Date _____, _____

Signature/Certification

### ☐ PROOF OF SERVICE BY MAIL

I, _____, ☐ the attorney ☐ non-attorney certify that I served this notice by mailing a copy to _____ at _____

(address on envelope)

and depositing the same in the U. S. Mail at _____

(place of mailing)

at _____ on the _____ day of _____, _____, with proper postage prepaid.

Date _____, _____

Signature/Certification

### ☑ PROOF OF ELECTRONIC SERVICE

I,   Catherine Mitchell  , ☑ the attorney ☐ non-attorney certify that on the 14th day of June , 2018 , I served this notice electronically ☑ via the Clerk's Office E-filing system, or ☐ by telefax transmission ( _____ pages) with consent of the recipient where permissible under Ill. Sup Ct. R.11, at fax no. _____ at _____ , from _____ .

(Place)

Date   June 14th  , 2018

/s CATHERINE MITCHELL

Signature/Certification

NOTE: If more than one person is served by delivery or mail, additional proof of service may be made by attaching an additional sheet to this Notice of Motion.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

ORIGINAL - COURT FILE

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
CALENDAR: 05
PAGE 1 of 15
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| YANA MAZYA, individually, and on behalf of all others similarly situated, | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| | ) Case No. 18-CH-07161 |
| NORTHWESTERN LAKE FOREST HOSPITAL, NORTHWESTERN MEMORIAL HEALTHCARE, OMNICELL, INC. and BECTON DICKINSON AND COMPANY, | ) ) ) ) ) |
| Defendants. | ) ) |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND REQUEST FOR DISCOVERY ON CERTIFICATION ISSUES

Plaintiff Yana Mazya ("Plaintiff") alleges that Defendants Northwestern Medical Lake Forest Hospital and Northwestern Medical Memorial HealthCare ("Northwestern"), Omnicell, Inc. and Becton, Dickinson and Company ("BD") (collectively "Defendants"), jointly and severally, systematically violated the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. This case is well suited for class certification pursuant to 735 ILCS 5/2-801. Specifically, Plaintiff seeks to certify a class consisting of several hundred or more former and current similarly-situated employees who worked for Northwestern in the State of Illinois and who had their fingerprints unlawfully collected, captured, received, otherwise obtained, or disclosed by any Defendant during the applicable statutory period in violation of BIPA. The question of liability is a legal question that can be answered in one fell swoop. As Plaintiff's claims and the claims of similarly-situated individuals all arise from Defendants' uniform policies and practices, they satisfy the requirement of 735 ILCS 5/2-801 and should be certified.

Plaintiff moves for class certification to protect members of the proposed class, individuals whose proprietary and legally protected personal and private biometric data was invaded by Defendants. Plaintiff believes that the evidence and argumentation submitted within this motion are sufficient to allow the class to be certified now. However, in the event the Court (or any Defendant) wishes for the parties to undertake formal discovery prior to the Court's consideration of this motion, Plaintiff requests that the Court allow her to supplement her briefing and defer the response and reply deadlines.

## I.    RELEVANT BACKGROUND

### A. The Biometric Information Privacy Act

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 2 of 15

Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became wary of this then-growing, yet unregulated, technology. *See* 740 ILCS 14/5.

The Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* was enacted in 2008, arising from concerns that these experimental uses of finger-scan technologies created a "very serious need of protections for the citizens of Illinois when it comes to biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. Under the Act, it is unlawful for a private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless it first:

> (1) Informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) Informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

> (3) Receives a written release executed by the subject of the biometric identifier or biometric information."

740 ILCS 14/15(b).

Although there may be benefits with using biometrics in the workplace, there are also serious risks. Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprints are a unique, permanent biometric identifier associated with each individual. These biometrics are biologically unique to the individual; once compromised, the individual has *no* means by which to prevent identity theft, unauthorized tracking, or other unlawful or improper use of this information. This exposes individuals to serious and irreversible privacy risks. For example, if a biometric database is hacked, breached, or otherwise exposed – as in the recent Equifax, Yahoo, eBay, Home Depot, Whole Foods, Panera and Uber data breaches, to name a few – individuals have no means to prevent the misappropriation and theft of their proprietary biometric makeup. Thus, recognizing the need to protect its citizens from harms like these, Illinois enacted BIPA specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

**B. Factual Allegations**

Plaintiff Yana Mazya filed this class action against Defendants on June 6, 2018 to redress Defendants' unlawful collection, use, storage, and disclosure of biometric information of their employees under BIPA. In her Class Action Complaint, Mazya provided detailed allegations that Northwestern's employees were and continue to be universally required to scan their fingerprints for the employee database(s) in order to gain access to stored materials, as a condition of their employment, but are not: (1) informed in writing of the purpose(s) and length of time for which fingerprint data was being collected, stored and used; (2) provided a publicly available retention

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 3 of 15

3

schedule or guidelines for permanent destruction of the data; and (3) provided (nor did they execute) a written release, as required by BIPA. *See* Class Action Complaint ("Compl.") at ¶¶ 7-8.

Mazya worked for Northwestern as a registered nurse at Northwestern Lake Forest Hospital ("NLFH") located at 1000 N Westmoreland Road, Lake Forest, Illinois 60045 from November 12, 2012 to December 4, 2017. *Id.* at ¶ 49. As an employee and as a condition of her employment, Mazya was required to scan her fingerprint so Defendants could use it as an authentication method to allow access to stored materials at NLFH, such as medications, to administer to patients. *Id.* at ¶¶ 50. Mazya was required to scan her fingerprint each time she needed to gain access to stored materials. *Id.* at ¶ 52. Each Defendant stored Plaintiff's fingerprint data in their database(s). *Id.* at ¶ 51. However, Defendants failed and continue to fail to inform Northwestern employees, including Mazya, of the extent of the purposes for which they collect their sensitive biometric data or to whom the data is disclosed, if at all. *Id.* at ¶¶ 7-8, 40-41, 90, 100. Defendants similarly failed to provide Northwestern employees, including Mazya, with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying Northwestern employees' fingerprint data when the initial purpose for collecting or obtaining their fingerprint is no longer relevant, as required by BIPA. *Id.* at ¶¶ 7-8, 11, 42, 44, 54, 91, 93, 101-102. Northwestern employees, including Mazya, have no knowledge when they leave the company of when – if ever – their biometric identifiers will be removed from Defendants' database(s). *Id.* Northwestern employees are not told what might happen to their biometric data if and when any one of Defendants' facilities go out of business or, worse, if and when Defendants' entire business folds. *Id.* ¶ 45. Because Defendants neither publish a BIPA-mandated data retention policy nor disclose the purposes for their collection of biometric data,

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 4 of 15

4

Northwestern employees, including Mazya, have no idea whether Defendants sell, disclose, re-disclose, or otherwise disseminate their biometric data. *Id*. at ¶ 46. Nor are Northwestern employees told to whom Defendants currently disclose their biometric data or what might happen to their biometric data in the event of a merger or a bankruptcy. *Id*. at ¶¶ 9, 40, 46. Finally, Defendants never secured a written release executed by any of Northwestern employees, including Mazya, permitting any of the Defendants to collect, store, use, and disseminate Northwestern employees' biometric data, as required by BIPA. *Id*. at ¶¶ 7-8, 40-41, 55, 88.

Accordingly, Defendants' practices violated BIPA. As a result of Defendants' violations, Plaintiff and similarly-situated individuals were subject to Defendants' uniform policies and practices and were victims of their scheme to unlawfully collect, store, use, and disseminate their biometric data in direct violation of BIPA. As a result of Defendants' violations of BIPA, Plaintiff and all other similarly-situated individuals suffered an invasion of privacy and other damages.[1]

Plaintiff now seeks class certification for the following similarly-situated individuals, defined as:

> All individuals working for Northwestern in the State of Illinois who had their fingerprints collected, captured, received, or otherwise obtained or disclosed by any Defendant during the applicable statutory period.

Given Defendants' standard practices defined above and the straightforward and common legal questions presented in this case, Plaintiff now moves for class certification. Notably, this

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 5 of 15

---

[1] BIPA does not require Plaintiff and the putative class to have suffered actual damages. Nonetheless, Plaintiff and the putative class have suffered an invasion of a legally protected interest when Defendants secured their personal and private biometric data at a time when they had no right to do so, an invasion of Plaintiff's and the putative Class's right to privacy; an informational injury because Defendants did not provide them with information to which they were entitled by statute; and mental anguish when contemplating what would happen to their biometric data if and when Defendants go out of business, whether Defendants will ever delete their biometric information, and whether (and to whom) Defendants share their biometric information.

motion is being filed shortly after the Complaint was filed and before any Defendant has responded. The parties have not discussed settlement, neither settlement offers nor demands have been made, and a scheduling order has not been issued. For the reasons discussed herein, Plaintiff's request should be granted.

## II.    STANDARD FOR CLASS CERTIFICATION

"The basic purpose of a class action is the efficiency and economy of litigation." *CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App. (1st) 131465, ¶ 9 (Ill. App. Ct. May 8, 2015) (citing *Miner v. Gillette Co.*, 87 Ill. 2d 7, 14 (1981)). "In determining whether to certify a proposed class, the trial court accepts the allegations of the complaint as true and should err in favor of maintaining class certification." *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 9 (citing *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (2007)). Under Section 2-801 of the Code of Civil Procedure, a class may be certified if the following four requirements are met:

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 6 of 15

> (1) the class is so numerous that a joinder of all members is impracticable;
>
> (2) there are questions of fact or law common to the class that predominate over any questions affecting only individual members;
>
> (3) the representative parties will fairly and adequately protect the interest of the class; and
>
> (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy.

*See Smith v. Illinois Cent. R.R. Co.*, 223 Ill. 2d 441, 447 (2006) (citing 735 ILCS 5/2-801). Notably, "[a] trial court has broad discretion in determining whether a proposed class meets the requirements for class certification." *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 9 (citing *Ramirez*, 378 Ill. App. 3d at 53). Here, the allegations and facts in this case amply demonstrate that the four certification factors are met.

6

### III.   ARGUMENT

Plaintiff's claims here are especially suited for class certification because Defendants treated all Northwestern employees identically for the purposes of applying BIPA. All of the putative class members in this case were uniformly subjected to the same illegal and unlawful collection, storage, use, and dissemination of their biometric data that was required as a condition of employment in order to perform their job duties throughout the class period. Plaintiff meets each of the statutory requirements for maintenance of this suit as a class action. Thus, the class action device is ideally suited and is far superior to burdening the Court with many individual lawsuits to address the same issues, undertake the same discovery, and rely on the same testimony.

### A.   The Class Is So Numerous That Joinder of All Members Is Impracticable.

Numerosity is not dependent on a plaintiff setting forth a precise number of class members or a listing of their names. *See Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 771 (2d Dist. 2008) ("Of course, plaintiffs need not demonstrate a precise figure for the class size, because a good-faith, non-speculative estimate will suffice; rather, plaintiffs need demonstrate only that the class is sufficiently numerous to make joinder of all of the members impracticable.") (internal citations omitted); *Hayna v. Arby's, Inc.*, 99 Ill. App. 3d 700, 710-11 (1st Dist. 1981) ("It is not necessary that the class representative name the specific individuals who are possibly members of the class."). Courts in Illinois generally find numerosity when the class is comprised of at least 40 members. *See Wood River Area Dev. Corp. v. Germania Fed. Sav. Loan Ass'n*, 198 Ill. App. 3d 445, 450 (5th Dist. 1990).

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 7 of 15

In the present case, there can be no serious dispute that Plaintiff meets the numerosity requirement. The class of potential plaintiffs is sufficiently large to make joinder impracticable.[2] As a result of Defendants' violations of BIPA, Plaintiff and all similarly-situated individuals were subjected to Defendants' uniform policies and practices and were victims of Defendants' schemes to unlawfully collect, store, use, and disseminate their extremely personal and private biometric data in direct violation of BIPA. As a result of Defendants' violations of the Act, Plaintiff and all other similarly-situated individuals suffered an invasion of privacy as well as informational and personal injury. The precise number in the class cannot be determined until discovery records are obtained from Defendants. Nevertheless, class membership can be easily determined by reviewing said records. A review of Defendants' files regarding the collection, storage, use, and dissemination of employees' biometric data performed during the class period is all that is needed to determine membership in Plaintiff's proposed class. *See e.g., Chultem v. Ticor Title Ins. Co.*, 401 Ill. App. 3d 226, 233 (1st Dist. 2010) (reversing Circuit Court's denial of class certification and holding that class was certifiable over defendants' objection that "the proposed class was not ascertainable, because the process of reviewing defendants' transaction files to determine class membership would be burdensome"); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539-40 (6th Cir. 2012)[3] (rejecting the argument that manual review of files should defeat certification agreeing with district court's reasoning that, if manual review was a bar, "defendants against whom

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 8 of 15

---

[2]  Upon information and belief, Northwestern employs hundreds of employees, many of whom are members of the class.

[3]  "Section 2-801 is patterned after Rule 23 of the Federal Rules of Civil Procedure and, because of this close relationship between the state and federal provision, 'federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois.'" *Cruz*, 383 Ill. App. 3d at 761 (quoting *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill.2d 100, 125 (2005)).

claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained," and citing numerous courts that are in agreement, including *Perez v. First Am. Title Ins. Co.*, 2009 WL 2486003, at *7 (D. Ariz. Aug. 12, 2009) ("Even if it takes a substantial amount of time to review files and determine who is eligible for the [denied] discount, that work can be done through discovery"). Once Defendants' records are obtained, the Court will know the precise number of persons affected.

Absent certification of this class action, putative class members may never know that their legal rights have been violated and as a result may never obtain the redress to which they are entitled under BIPA. Illinois courts have noted that denial of class certification where members of the putative class have no knowledge of the lawsuit may be the "equivalent of closing the door of justice" on the victims. *Wood River Area Dev. Corp. v. Germania Fed. Sav. & Loan Assn.*, 198 Ill.App.3d 445, 452 (5th Dist. 1990). Further, recognizing the need to protect its citizens from harms such as identity theft, Illinois enacted BIPA specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information. A class action would help ensure that Plaintiff and all other similarly-situated individuals have a means of redress against Defendants for their widespread violations of BIPA.

**B.**     **Common Questions Of Law And Fact Exist That Predominate Over Any Questions Solely Affecting Individual Members Of The Class.**

Courts analyze commonality and predominance under Section 2-801 by identifying the substantive issues that will control the outcome of the case. *See Bemis v. Safeco Ins. Co. of Am.*, 407 Ill. App. 3d 1164, 1167 (5th Dist. 2011); *Cruz*, 383 Ill. App. 3d at 773. The question then becomes whether those issues will predominate and whether they are common to the class, meaning that "favorable adjudication of the claims of the named plaintiffs will establish a right of

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 9 of 15

9

recovery in other class members." *Cruz*, 383 Ill. App. 3d at 773. As stated by the Court of Appeals, the question is will "common . . . issues be the subject of the majority of the efforts of the litigants and the court[?]" *Bemis*, 407 Ill. App. 3d at 1168. The answer here is "yes."

At the heart of this litigation is the culpable conduct of the Defendants under BIPA. The issues are simple and straightforward legal questions that plainly lend themselves to class-wide resolution. Notwithstanding the clear and unequivocal requirements of the law, Defendants disregarded Plaintiff's and other similarly-situated individuals' statutorily-protected privacy rights and unlawfully collected, stored, used, and disseminated their biometric data in direct violation of BIPA. Specifically, Defendants have violated and continue to violate BIPA because they failed and continue to fail to: (1) inform Plaintiff or the putative class in writing of the specific purpose(s) and length of time for which their fingerprints were being collected, stored, used, and disseminated as required by BIPA; (2) provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the putative class's fingerprints, as required by BIPA; and (3) receive a written release from Plaintiff or the putative class to collect, capture, or otherwise obtain their fingerprints, as required by BIPA. Defendants treated the entire proposed class in precisely the same manner, resulting in identical violations of BIPA. These common practices create common issues of law and fact. In fact, the legality of Defendants' collection, storage, use, and dissemination of their employees' biometric data is the focus of this litigation.

Indeed, once this Court determines whether Defendants' practice of collecting, storing, and using individuals' biometric data without adhering to the specific requirements of BIPA constitutes violations thereof, liability for the claims of class members will be determined in one stroke. The material facts and issues of law are substantially the same for the members of the class, and therefore these common issues could be tried such that proof as to one claimant would be proof as

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 10 of 15

10

to all members of the class. This alone establishes predominance. The only remaining questions will be whether Defendants' violations caused members of the class to suffer damages and the proper measure of damages and injunctive relief, which in and of themselves are questions common to the class. Accordingly, a favorable adjudication of the Plaintiff's claims in this case will establish a right of recovery to all other class members, and thus the commonality and predominance requirements weigh in favor of certification of the class.

### C. The Named Plaintiff And Class Counsel Are Adequate Representatives Of The Class.

When evaluating adequacy, courts look to whether the named plaintiff has the same interests as those of the class and whether he or she will fairly represent them. *See CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 16. In this case, Plaintiff's interest arises from statute. The class representative, Yana Mazya, is a member of the proposed class and will fairly and adequately protect the class's interests. Plaintiff was required to have her fingerprints scanned to gain access to stored materials that are crucial to carrying out her job duties. Defendants subsequently stored Plaintiff's fingerprints in their database(s). Plaintiff has never been informed of the specific limited purposes (if any) or length of time for which any of the Defendants collected, stored, used, or disseminated her biometric data. Plaintiff has never been informed of any biometric data retention policy developed by any Defendant, nor has she ever been informed of whether Defendants will ever permanently delete her fingerprints. Finally, Plaintiff has never been provided nor did she ever sign a written release allowing any of the Defendants to collect, store, use, or disseminate her biometric data. Thus, Plaintiff was a victim of the same uniform policies and practices of Defendants as the individuals she seeks to represent and is not seeking any relief that is potentially antagonistic to other members of the class. What is more, Plaintiff has the interests of those class members in mind, as demonstrated by her willingness to sue on a class-wide basis and step forward

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 11 of 15

11

as the class representative, which subjects her to discovery. (*See* Exhibit A – Affidavit of Yana Mazya). This qualifies her as a conscientious representative plaintiff and satisfies the adequacy of representation requirement.

Proposed Class Counsel, Stephan Zouras, LLP, will also fairly and adequately represent the class. Proposed Class Counsel are highly qualified and experienced attorneys. (*See* Exhibit B – Affidavit of Catherine T. Mitchell and the Firm Resume attached thereto as Exhibit 1). Stephan Zouras, LLP, are recognized attorneys in class action lawsuits and have been designated as class counsel in numerous class actions in state and federal courts. (*Id.*). Thus, proposed Class Counsel, too, are adequate and have the ability and resources to manage this lawsuit.

### D. A Class Action Is The Appropriate Method For Fair And Efficient Adjudication Of This Controversy.

Finally, a class action is the most appropriate method for the fair and efficient adjudication of this controversy, rather than bringing individual suits which could result in inconsistent determinations and unjust results. "It is proper to allow a class action where a defendant is alleged to have acted wrongfully in the same basic manner toward an entire class." *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corporation*, 345 Ill. App. 3d 992, 1003 (2d Dist. 2004). "The purported class representative must establish that a successful adjudication of its individual claims will establish a right of recovery or resolve a central issue on behalf of the class members." *Id.*

Here, Plaintiff's claim stems from Defendants' common and uniform policies and practices, resulting in common violations of BIPA for all members of the class. Thus, class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. *Wenthold v. AT&T Technologies, Inc.*, 142 Ill. App. 3d 612 (1st Dist. 1986). Without a class, the Court would have to hear dozens of additional

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 12 of 15

individual cases raising identical questions of liability. Moreover, class members are better served by pooling resources rather than attempting to litigate individually. *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶¶ 28-30 (certifying TCPA class where statutory damages were alleged and rejecting arguments that individual lawsuits would be superior). In the interests of justice and judicial efficiency, it is desirable to concentrate the litigation of all class members' claims in a single forum. For all of these reasons, the class action is the most appropriate mechanism to adjudicate the claims in this case.

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 13 of 15

> ### E. In The Event The Court Or Defendants Seek More Factual Information Regarding This Motion, The Court Should Allow Supplemental And Deferred Briefing Following Discovery.

There is no meaningful need for discovery for the Court to certify a class in this matter; Defendants' practices and policies are uniform. If, however, the Court wishes for the Parties to engage in discovery, the Court should keep the instant motion pending during the discovery period, allow Plaintiff a supplemental brief, and defer Defendants' response and Plaintiff's reply. Plaintiff is moving as early as possible for class certification in part to avoid the "buy-off problem," which occurs when a defendant seeks to settle with a class representative on individual terms in an effort to moot the class claims asserted by the class representative. Plaintiff is also moving for class certification now because the class should be certified, and because no meaningful discovery is necessary to establish that fact. The instant motion is far more than a placeholder or barebones memorandum. Rather, Plaintiff's full arguments are set forth based on the facts known at this extremely early stage of litigation. Should the Court wish for more detailed factual information, the briefing schedule should be extended.

## IV. Conclusion

For the reasons stated above, Plaintiff respectfully requests that the Court enter an Order: (1) certifying Plaintiff's claims as a class action; (2) appointing Plaintiff Yana Mazya as Class

Representative; (3) appointing Stephan Zouras, LLP as Class Counsel; and (4) authorizing court-facilitated notice of this class action to the class. In the alternative, this Court should allow discovery, allow Plaintiff to supplement this briefing, and defer response and reply briefs.

Date:   June 14, 2018                                  Respectfully Submitted,

                                                       /s/ Catherine T. Mitchell

                                                       Ryan F. Stephan
                                                       James B. Zouras
                                                       Catherine T. Mitchell
                                                       **STEPHAN ZOURAS, LLP**
                                                       250 N. Michigan Avenue
                                                       Suite 2560
                                                       Chicago, Illinois 60601
                                                       312.233.1550
                                                       312.233.1560 *f*
                                                       Firm ID: 43734
                                                       cmitchell@stephanzouras.com

                                                       **ATTORNEYS FOR PLAINTIFF**

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 14 of 15

14

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on June 14, 2018, I electronically filed the attached with the Clerk of the Court using the electronic filing system and will send such filing to all attorneys of record.

*/s/ Catherine T. Mitchell*

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 15 of 15

15

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
CALENDAR: 05
PAGE 1 of 2
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT A

DocuSign Envelope ID: 99D79100-870D-41CC-A4AB-793B2169885C

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| YANA MAZYA, individually,<br>and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. |
| v. | )<br>) |
| NORTHWESTERN LAKE FOREST<br>HOSPITAL and NORTHWESTERN<br>MEMORIAL HEALTHCARE, | ) AFFIDAVIT OF YANA MAZYA<br>)<br>)<br>) |
| Defendants. | )<br>) |

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 2 of 2

I, Yana Mazya, being first duly cautioned, swear and affirm as follows:

1. I am over the age of 18 and competent to testify.

2. I am the Named Plaintiff and proposed Class Representative in this case.

3. I understand what it means to be a class representative. As a class representative, I am looking out for the interests of the other class members.

4. I do not have any conflicts with the class members because they were treated like I was with respect to this lawsuit. I have their interests in mind, as well as my own, in bringing this lawsuit.

FURTHER YOUR AFFIANT SAYETH NOT.

Date: _____ 6/4/2018

DocuSigned by:
_Yana Mazya_
DEEE1938FFCD486...
Yana Mazya

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
CALENDAR: 05
PAGE 1 of 17
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT B

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| YANA MAZYA, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 18-CH-07161 |
| v. | ) ) | |
| NORTHWESTERN LAKE FOREST HOSPITAL and NORTHWESTERN MEMORIAL HEALTHCARE, | ) ) ) ) | |
| Defendants. | ) ) | |

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 2 of 17

### AFFIDAVIT OF CATHERINE T. MITCHELL

I, Catherine T. Mitchell, being first duly cautioned, swears and affirms as follows:

1. I am one of Plaintiff's Counsel in the above-referenced matter.

2. I submit this Affidavit in support of Plaintiff's Motion for Class Certification and Request for Discovery on Certification Issues.

3. I am an Associate Attorney of the law firm of Stephan Zouras, LLP. Attached hereto as Exhibit 1 is a true and correct copy of the firm's resume.

FURTHER YOUR AFFIANT SAYETH NOT.

Date: June 14, 2018

_____
Catherine T. Mitchell

Subscribed and sworn to
before me on this 14th day of
June, 2018

_____
Notary Public

ADRIANNA PARKER
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
January 03, 2022

# EXHIBIT 1

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 3 of 17



STEPHANZOURAS LLP

ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

# FIRM PROFILE

**STEPHAN ZOURAS, LLP** is a law firm concentrating on helping people in class and individual civil litigation. The firm's attorneys have broad litigation, trial and appellate experience in the areas of wage and hour law and other employment disputes, mass torts and catastrophic personal injury, consumer protection, products liability and other complex litigation.

Our Chicago-based firm actively litigates cases in federal and state courts throughout the United States. The firm's two founding partners, James B. Zouras and Ryan F. Stephan, have successfully prosecuted claims ranging from individual wrongful death and other catastrophic injury cases to complex, multi-district class and collective actions on behalf of over one hundred thousand individuals against many of the largest corporations in the world.

# PRINCIPAL ATTORNEYS

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 1 of 17

**JAMES B. ZOURAS** is a founder and principal of Stephan Zouras, LLP. A 1995 graduate of DePaul University College of Law, Jim served as Editor of the Law Review, graduated in the top 10% of his class and was admitted to the Order of the Coif. Jim has helped thousands of people recover tens of millions of dollars in damages in individual and class actions arising under federal wage and hour laws including the Fair Labor Standards Act ("FLSA") and comparable state wage laws, other complex litigation, and catastrophic personal injury actions involving wrongful death, vehicle crashes, products liability, premises liability and construction negligence. Jim has been appointed lead or co-lead counsel on a large number of contested class actions throughout the United States. He has successfully tried over a dozen jury trials and argued over 14 appeals as lead appellate counsel before the federal and state appellate courts. In 2000, Jim was named among the *Chicago Daily Law Bulletin's* "Top 40 Lawyers Under Age 40," one of the youngest lawyers ever bestowed that honor. Jim and his cases have been profiled by numerous media outlets including the Chicago Tribune, the Chicago Sun-Times, Bloomberg BNA, Billboard Magazine and TMZ. Jim has also been interviewed by CBS Consumer Watch. Jim is frequently invited as a speaker at national class action litigation seminars.

**RYAN F. STEPHAN** is a founder and principal of Stephan Zouras, LLP. A 2000 graduate from Chicago Kent College of Law, Ryan has helped thousands of clients recover damages in cases involving unpaid overtime, employment disputes, business litigation, products liability and personal injury. Ryan has successfully tried cases to verdict including obtaining a $9,000,000 verdict on behalf of 200 employees who were misclassified and denied overtime pay. Ryan has also served as lead or co-lead counsel on numerous complex class and collective action cases involving wage and hour matters and has helped recover damages for tens of thousands of wronged employees. In these cases, Ryan has helped establish precedent in wage and hour law, forced major corporations to change unlawful employment practices and helped recover tens of millions of dollars in unpaid wages for his clients. Ryan and his cases have been profiled by numerous media outlets including Good Morning America, Fortune, ESPN, Fox News, The Guardian, The New York Times, Think Progress, USA Today and Vice Sports.

Ryan and Jim are admitted to the United States Supreme Court as well as the Trial Bar of the United States District Court for the Northern District of Illinois. In addition, they have been admitted or admitted *pro hac vice* to prosecute class actions in the Southern and Eastern Districts of New York, the District of New Jersey, the Eastern and Middle Districts of



ATTORNEYS AT LAW

Pennsylvania, the Western District of North Carolina, the Superior Court for the State of California, the Central District of Illinois, , the District of Minnesota the Eastern District of Michigan, the Eastern District of Missouri, the District of Maryland, the Southern District of Ohio, the Northern, Middle and Southern Districts of Florida, the Northern District of Texas, the District of Massachusetts, the District of Minnesota, the First Judicial District of Pennsylvania, the Western District of Washington and the Southern and Northern Districts of Iowa.

In every consecutive year since 2009, *Chicago Magazine's* Super Lawyer Section selected both Jim and Ryan as two of the top attorneys in Illinois, a distinction given to no more than 5% of the lawyers in the state.

## PARTNERS

**ANDREW C. FICZKO** graduated from Drake University Law School in 2009. A tireless advocate for working people, Andy has spent his entire professional career litigating on behalf of employees in class and collective actions nationwide. Andy has helped thousands of clients recover damages in cases involving unpaid minimum and overtime wages and other benefits. Andy served as the second chair in two major federal jury trials to verdict on behalf of Plaintiffs in wage and hour matters and one state jury trial to verdict on behalf of Plaintiffs in a breach of contract matter.

Andy has been admitted to the Trial Bar of the United States District Court for the Northern District of Illinois since December 2012 and has been admitted or admitted *pro hac vice* to the Southern District of New York, the Southern and Northern Districts of Iowa, District of Massachusetts, Eastern District of Pennsylvania, and the Western District of Washington.

In 2014, 2015, and 2016 Andy was recognized by Chicago Magazine's Super Lawyer section as a Rising Star, a distinction given to no more than 2.5% of Illinois lawyers.

**TERESA M. BECVAR** is a 2013 graduate of Chicago-Kent College of Law, where she served as Editor of the Law Review and graduated in the top 15% of her class. Teresa assists Stephan Zouras, LLP clients with employment and consumer protection issues. Teresa has experience working on a wide range of employment cases, including wage and hour class and collective actions and employment discrimination cases. Teresa has been admitted *pro hac vice* to the Eastern and Southern Districts of New York, the Western District of Washington, the Middle District of Florida and the Central District of California.

In 2016, Teresa was recognized by Chicago Magazine's Super Lawyer section as a Rising Star, a distinction given to no more than 2.5% of Illinois lawyers.

## ASSOCIATE ATTORNEYS

**CATHERINE T. MITCHELL** graduated from The John Marshall Law School in 2015. Catherine litigates on behalf of Stephan Zouras, LLP's clients in both class action and individual litigation, representing people in a wide-range of legal disputes, including unpaid wages, employee misclassification, mass torts, antitrust, and consumer fraud. Catherine is an active member of the Women's Bar Association of Illinois and the Young Lawyers Society of the Chicago Bar Association, and served as a Chapter Editor for the Second Edition of BNA's Age Discrimination in Employment Act Treatise. Catherine is admitted to practice in Illinois, the District of Colorado, the Eastern District of Wisconsin (admission pending) and has

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 3 of 47

**STEPHANZOURAS** LLP
ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

been admitted *pro hac vice* to the Southern and Eastern District of New York, the District of Florida-Tampa Division, the Southern District of Iowa and the Eastern District of North Carolina.

**HALEY R. JENKINS** graduated *cum laude* from Chicago-Kent College of Law in 2016. Haley litigates on behalf of Stephan Zouras, LLP's clients in both class action and individual litigation. A spirited advocate, Haley represents clients in legal disputes involving unpaid wages, employee misclassification, antitrust, consumer fraud, whistleblower actions, and *qui tam* cases. She is currently a member of the legal team pursuing the first-ever lawsuit for minimum wage violations on behalf of the cheerleading squad of an NBA team. Haley is admitted to practice in Illinois and the District of Colorado and has been admitted *pro hac vice* to the Middle District of Pennsylvania.

## OF COUNSEL

**DAVID J. COHEN**, a highly skilled and successful class-action attorney, joined Stephan Zouras, LLP in April 2016 and manages our Philadelphia office. Dave has spent 22 years fighting to protect the rights of thousands of employees, consumers, shareholders, and union members. Before joining Stephan Zouras, Dave worked on, and ran, dozens of significant antitrust, consumer, employment and securities matters for four highly-regarded Philadelphia firms. Before joining the private sector, Dave completed a unique clerkship with the Hon. Stephen E. Levin in the Philadelphia Court of Common Pleas, during which he not only helped to develop a respected and efficient system for the resolution of the Court's class action cases, but also contributed to several well-regarded works on class actions. Dave earned a J.D. from the Temple University School of Law in 1994. While attending law school, Dave was awarded the Barristers Award for excellence in trial advocacy and worked as a teaching assistant for Hon. Legrome Davis (E.D. Pa.) as part of Temple's award-winning Integrated Trial Advocacy program. Dave graduated with honors from the University of Chicago in 1991.

Dave is admitted to practice in the United States Court of Appeals for the Third Circuit, the United States Court of Appeals for the Sixth Circuit, the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the Middle District of Pennsylvania, the United States District Court for the Western District of Pennsylvania, the United States District Court for the District of New Jersey and the state courts of Pennsylvania and New Jersey. He is a member of the American and Philadelphia Bar Associations.

**PHILIP J. GIBBONS, JR.**, a highly-accomplished Plaintiff's class action attorney in his own right, joined Stephan Zouras, LLP in June 2017 and manages our Charlotte office. Phil focuses entirely on employment law, with an emphasis on helping employees recover unpaid wages including overtime. Phil began his legal career with a large national law firm, representing and counseling corporations and employers. Since 2001, Phil has exclusively represented employees. Phil is recognized by his peers as a highly skilled employment lawyer. He is listed in Best Lawyers in America and Super Lawyers. In addition, he has a perfect 10.0 rating on Avvo.com and an "A/V" rating with Martindale Hubble, which is the highest rating an attorney can receive. Phil has extensive experience litigating single and multi-plaintiff wage and hour lawsuits under the Fair Labor Standards Act, recovering unpaid overtime and minimum wages for thousands of employees throughout the United States.

Phil is admitted to practice in North Carolina, Indiana, Seventh Circuit Court of Appeals, Sixth Circuit Court of Appeals, Third Circuit Court of Appeals, Tenth Circuit Court of Appeals, U.S. District Courts Western District North Carolina, Middle District North Carolina, Southern District of Indiana, Northern District of Indiana, and Eastern District of Michigan.

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 81 of 91

CHICAGO • PHILADELPHIA • CHARLOTTE

# STEPHANZOURAS LLP
## ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

## REPRESENTATIVE TRIALS, VERDICTS AND JUDGMENTS

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 72 of 99

**Franco, et al. v. Ideal Mortgage Bankers, d/b/a Lend America**     **12/14/17 – Trial Court Judgment**
*No. 07-cv-3956 (United States District Court for the Eastern District of New York)*
The Court entered a $15.2 million judgment on behalf of several hundred loan officers who were deprived of minimum wages and overtime in violation of federal and state law.

**Frisari v. DISH Network**     **8/25/16 – Arbitration Judgment**
*No. 18-160-001431-12 (AAA Arbitration)*
The Arbitrator certified and granted final judgment in excess of seven figures for a class of over 1,000 New Jersey inside sales associates who performed work before and/or after their shifts without pay and were not paid the proper overtime rate when they worked in excess of 40 hours a week.

**Huskey v. Ethicon Inc.**     **9/10/2014 – Jury Verdict**
*No. 2:12-cv-05201 (United States District Court for the Southern District of West Virginia)*
Stephan Zouras, LLP helped secure a $3,270,000.00 jury verdict in one of the bell-weather trial cases in the multi-district litigation against Johnson & Johnson's Ethicon unit for defective design, failure to warn and negligence related to transvaginal mesh device.

**Lee v. THR**     **5/22/14 – Trial Court Judgment**
*No. 12-cv-3078 (United States District Court for the Central District of Illinois)*
As a result of the efforts of class counsel Stephan Zouras, LLP, the Court entered a judgment for a class of employees given job titles such as "Buyers," "Auditors" and "Managers" for unpaid overtime in the sum of $12,207,880.84.

**Vilches et al. v. The Travelers Companies, Inc.**     **12/12/12 - Arbitration Judgment**
*No. 11-160-000355-11 (American Arbitration Association)*
Following a contested evidentiary hearing, Stephan Zouras, LLP secured a significant monetary award on behalf of a group of insurance appraiser employees seeking unpaid earned overtime under the FLSA.

**Kyriakoulis, at al. v. DuPage Health Center**     **11/8/12 - Jury Verdict**
*No. 10-cv-7902 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP achieved a favorable jury verdict on behalf of several medical assistants deprived of minimum and overtime wages in violation of federal and Illinois law.

**Smith v. Safety-Kleen Systems, Inc.**     **7/11/12 - Jury Verdict**
*No. 10-cv-6574 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP achieved a favorable jury verdict on behalf of a chemical handler deprived of overtime wages in this donning and doffing action brought under the FLSA.

**Wong v. Wice Logistics**     **1/30/12 - Jury Verdict**
*No. 08 L 13380 (Circuit Court of Cook County, Illinois)*
Stephan Zouras, LLP recovered unpaid commissions and other damages for Plaintiff based on her claims under the Illinois Wage Payment and Collection Act.

# STEPHANZOURAS

ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 83 of 93

**Daniels et al. v. Premium Capital Financing**  **10/18/11 - Jury Verdict**
*No. 08-cv-4736 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP were appointed lead class and trial counsel and achieved a jury verdict in excess of $9,000,000.00 on behalf of over 200 loan officers who were deprived of minimum wages and overtime pay.

**Ferrand v. Lopas**  **5/22/01 - Jury Verdict**
*No. 00 L 2502 (Circuit Court of Cook County, Law Division, State of Illinois)*
Jury verdict in excess of available liability insurance policy limits entered in favor of seriously-injured pedestrian, resulting in liability against insurance carrier for its bad faith refusal to tender the policy limits before trial.

## REPRESENTATIVE RESOLVED CLASS AND COLLECTIVE ACTIONS

**Courts have appointed the firm's partners as lead or co-lead counsel in numerous class and collective actions in which they achieved six, seven and eight-figure verdicts or settlements including:**

**Kaminski v. Bank of America, N.A.**  **2/15/17 – Final Approval**
*No. 16-cv-10844 (United States District Court for the Northern District of Illinois)*
Final approval for class settlement in the amount of $850,000 in unpaid wages was granted and awarded to a class of approximately 100 employees working as Senior Specialist-Securities and Operation Market Professionals.

**Byrne v. Centegra Health System**  **1/29/17 – Final Approval**
*No. 17-cv-00018 (United States District Court for the Northern District of Illinois)*
The Court granted final approval of class settlement for $425,000 in unpaid overtime wages on behalf of registered nurses, physical therapists, occupational therapists, speech therapists and other similarly-designated skilled care positions who were misclassified as exempt under federal and state wage laws.

**Donoghue v. Verizon Communications, Inc.**  **11/16/17 – Final Approval**
*No. 16-cv-4742 (United States District Court for the Eastern District of Pennsylvania)*
The Court granted final approval of class settlement for $800,0000 in unpaid overtime wages on behalf of wireline workers who were hired to fill in for Verizon employees during a strike. Despite regularly working 65 hours per week, these employees were classified as exempt and denied overtime wages.

**Tompkins v. Farmers Insurance Exchange**  **9/27/17 – Final Approval**
*No. 14-cv-3737 (United States District Court for the Eastern District of Pennsylvania)*
The Court granted final approval of a $775,000.00 class settlement on behalf misclassified loan officers seeking unpaid overtime wages.

**In re Sears Holdings Corporation Stockholder and Derivative Litigation**  **5/9/17 – Final Approval**
*No. 11081-VCL (Court of Chancery of the State of Delaware)*
Stephan Zouras, LLP represented the Named Plaintiff in a $40 million settlement in connection with a 2015 sale by Sears of 235 properties to Seritage Growth Properties.

**Oaks v. Sears**  **4/12/17 – Final Approval**
*No. 1:15-cv-11318 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP settled on behalf of thousands of consumers who own or once owned Sears Kenmore grills in a product defect class action.

CHICAGO • PHILADELPHIA • CHARLOTTE



**STEPHANZOURAS** LLP
ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 9 of 17

**Hauser v. Alexian Brothers Home Health**                                   **4/06/17 – Final Approval**
*No. 15-cv-6462 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP settled for $1 million on behalf of home health care clinicians who were misclassified as "exempt" and deprived of earned overtime wages.

**Leiner v. Johnson & Johnson**                                              **1/31/17 – Final Approval**
*No. 15-cv-5876 (United States District Court for the Northern District of Illinois)*
The Court granted final approval of a $5 million settlement for consumers nationwide in a consumer fraud class action. Stephan Zouras, LLP represented consumers who were deceived into paying premium prices for Johnson & Johnson baby bedtime products which falsely claimed to help babies sleep better.

**McPhearson v. 33 Management**                                             **11/3/16 – Final Approval**
*No. 15-ch-17302 (Circuit Court of Cook County, IL)*
The Court granted final approval of class settlement on behalf of tenants of a Chicago apartment building where the landlords violated the City of Chicago Residential Landlord and Tenant Ordinance by collecting and holding tenant security deposits without paying interest earned.

**Cook v. Bank of America**                                                 **8/2/16 – Final Approval**
*No. 15-cv-07718 (United States District Court for the Northern District of Illinois)*
The Court granted final approval of $3,250,000 settlement for an Illinois Class and FLSA Collective on behalf of individuals who worked as Treasury Services Advisors and who were misclassified as exempt from earned overtime wages.

**Altnor v. Preferred Freezer Services, Inc.**                              **7/18/16 – Final Approval**
*No. 14-cv-7042 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as lead counsel in this lawsuit seeking recovery of wages for unpaid meal break work for a class of 80 cold storage warehouse workers.

**Lukas v. Advocate Health Care**                                           **6/29/16 – Final Approval**
*No. 14-cv-2740 (United States District Court for the Northern District of Illinois)*
The Court granted final approval of a $4,750,000 settlement for a federal FLSA and Illinois Minimum Wage Law collective class of home health care clinicians who were wrongly classified as "exempt" from federal and state overtime laws.

**Kurgan v. Chiro One Wellness Centers LLC**                                **4/27/16 – Final Approval**
*No. 10-cv-1899 (United States District Court for the Northern District of Illinois)*
The Court granted Plaintiffs' motion for Section 216(b) certification of Plaintiffs' FLSA claim, granted Rule 23 certification of Plaintiffs' claims under the Illinois Minimum Wage Law and appointed Stephan Zouras, LLP as counsel for a class of chiropractic technicians and assistants.

**Heba v. Comcast**                                                         **4/6/16 – Final Approval**
*No. 12-471 (First Judicial District of Pennsylvania Court of Common Pleas of Philadelphia)*
The Court granted class certification to Customer Account Executives who worked at Comcast's Pennsylvania call centers and were required to work 15 minutes a day before their scheduled start time without pay. As lead counsel, Stephan Zouras, LLP achieved a favorable resolution for over 6,000 class members.

**Johnson v. Casey's General Stores, Inc.**                                 **3/3/16 – Final Approval**
*No. 15-cv-3086 (United States District Court for the Western District of Missouri)*
The Court granted final approval on behalf of a certified class of employees of Casey's General Stores, Inc. to redress violations of the Fair Credit Reporting Act (FCRA).

# STEPHANZOURAS
ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

ELECTRONICALLY FILED
6/14/2018 12:01 PM
2018-CH-07161
PAGE 40 of 47

**Fields v. Bancsource, Inc.**                                  2/3/16 – Final Approval
*No. 14-cv-7202 (United States District Court for the Northern District of Illinois)*
The Court entered an order granted Plaintiffs' motion for Section 216(b) certification of a class of field engineers who were deprived of overtime for hours worked in excess of 40 in given workweeks.

**Elder, et al. v. Comcast Corporation**                        1/11/16 – Final Approval
*No. 12-cv-1157 (United States District Court for the Northern District of Illinois)*
The Court granted Plaintiffs' motion for conditional certification and appointed Stephan Zouras, LLP as counsel for a class of cable technicians who allege they were deprived of overtime wages in violation of federal law.

**Posada, et al. v. Continental Home Loans, Inc.**              1/13/16 - Final Approval
*15-cv-4203 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP was appointed class counsel and achieved a substantial settlement on behalf of a class of loan officers deprived of minimum and overtime wages.

**Struett v. Susquehanna Bank**                                 10/27/15 – Final Approval
*No. 15-cv-176 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as co-lead counsel in this lawsuit which recovered $300,000 in unpaid overtime wages for 31 misclassified loan officers.

**Faust, et al. v. Comcast Corporation**                        10/11/15 - Final Approval
*No. 10-cv-2336 (United States District Court for the Northern District of Maryland)*
The Court granted Plaintiffs' motion for conditional certification and appointed Stephan Zouras, LLP lead counsel for a class of call center employees.

**Butler, et al. v. Direct Sat**                                9/3/15 – Final Approval
*No. 10-cv-08747 DKC (United States District Court for the District of Maryland)*
Stephan Zouras, LLP reached favorable resolution on behalf of a finally-certified collective class of technicians working in DirectSat's Maryland warehouses who were not paid overtime.

**Sosnicki v. Continental Home Loans, Inc.**                    7/30/15 - Final Approval
*No. 12-cv-1130 (United States District Court for the Eastern District of New York)*
As lead class counsel, Stephan Zouras, LLP achieved a six-figure settlement on behalf of a collective class of loan officers who were deprived of minimum wages and overtime in violation of federal and state law.

**Bordell v. Geisinger Medical Center**                         4/8/15 – Final Approval
*No. 12-cv-1688 (Northumberland Court of Common Pleas)*
The firm's attorneys served as lead counsel in this lawsuit which challenged Defendant's workweek averaging practices and recovered $499,000 in unpaid overtime wages for hospital workers.

**Harvey, et al. v. AB Electrolux, et al.**                     3/23/15 – Final Approval
*No. 11-cv-3036 (United States District Court for the Northern District of Iowa)*
As lead counsel, Stephan Zouras, LLP achieved a six-figure settlement amount on behalf of hundreds of production workers seeking unpaid earned wages.

**Price v. NCR Corporation**                                    3/18/15 – Final Approval
*No. 51-610-908-12 (AAA Arbitration)*
As lead class counsel, Stephan Zouras, LLP achieved a seven figure, arbitrator approved settlement on behalf of

CHICAGO          •          PHILADELPHIA          •          CHARLOTTE

**Motion Slip**

(05/25/17) CCCH 0048 A

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

## MOTION SLIP

**CASE NO.** 2018-CH-07161

**CALENDAR:** 5

**ATTORNEY CODE:** 43734

**MOTION FOR:** ☑PLAINTIFF  ☐DEFENDANT

**DATE REQUESTING:** 20180621

**CALL TIME:** 1000

☐ **CONTESTED**   ☑ **NOT CONTESTED**

**PLAINTIFF'S NAME:** MAZYA YANA

**DEFENDANT'S NAME:** NORTHWESTERN LAKE FOREST

**ATTORNEY'S NAME:** STEPHAN ZOURAS, LLP

**FIRM NAME:**

**ATTY. TELEPHONE:** (312) 233-1550

# PLEASE CHECK BOX ON THE REVERSE SIDE OF THIS FORM FOR THE TYPE OF MOTION

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

(05/25/17) CCCH 0048 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION
## SPINDLED MOTION FORM

☐ 1501 ADD ADDITIONAL PARTY
☐ 1502 ALTERNATIVE SERVICE
☐ 1503 AMEND ORDER
☐ 1504 APPOINT COMMISSIONER
☐ 1505 APPOINT RECEIVER
☐ 1506 APPOINT SELLING OFFICER
☐ 1507 APPROVE RECEIVER RPT.
☐ 1508 APPROVE SALE
☑ 1509 CERTIFY CLASS
☐ 1511 CHANGE OF VENUE
☐ 1512 CITATION-DISCOVER ASSETS
☐ 1513 COMPEL DISCOVERY
☐ 1514 CONSOLIDATE
☐ 1515 CONTINUE HEARING
☐ 1516 DEFAULT
☐ 1517 DEPOSIT FUNDS
☐ 1518 DISPURSE FUND
☐ 1519 DISCHARGE RECEIVER
☐ 1520 DISCOVERY SANCTIONS
☐ 1521 DISMISS
☐ 1522 DISMISS PARTY
☐ 1523 EXTEND DISCOVERY DATE
☐ 1524 EXTENDED POSSESSION
☐ 1525 EXTEND TIME FOR FILING
☐ 1526 FILE AMENDED PLEADINGS
☐ 1527 GOOD FAITH FINDING
☐ 1528 INTERLOCUTORY APPEAL
☐ 3025 INTERVENE
☐ 1530 ISSUE JUDICIAL DEED
☐ 1531 JUDGEMENT OF FORCLOSURE AND SALE
☐ 1532 FILE APPEARANCE AND PLEADING
☐ 1533 LIFT STAY
☐ 1534 MISCELLANEOUS MOTION

☐ 1535 SUBSTITUTION OF JUDGE
☐ 1536 PLACE MORT. IN POSSESSION
☐ 1537 PRELIMINARY INJUCTION
☐ 1538 PROTECTIVE ORDER
☐ 1539 PROVE – UP
☐ 1540 QUASH
☐ 1542 RELEASE SURPLUS
☐ 1543 RESET BRIEFING-SCHEDULE
☐ 1544 RULE TO SHOW CAUSE
☐ 1545 SANCTIONS
☐ 1546 SET APPEAL BOND
☐ 1547 SET BOND
☐ 1548 SET BRIEFING SCHEDULE
☐ 1549 SET CASE MGMT CONFER.
☐ 1550 PRETRIAL SETTLEMENT CONF.
☐ 1551 SPECIAL PROCESS SERVER
☐ 1552 STAY ADMINSTA, ORDER
☐ 1553 STAY DISCOVERY
☐ 1554 STAY SALE
☐ 1555 STRIKE PLEADING
☐ 1556 SUBSTITUTE ATTORNEY
☐ 1557 SUMMARY JUDGEMENT
☐ 1558 SUPPLEMENTAL DISCOVERY
☐ 1559 TEMP. RESTRAINING ORDER
☐ 1560 TRANSFER
☐ 1564 WITHDRAW
☐ 3137 MOTION TO VACATE/MODIFY/ RECONSIDER/REINSTATE FINAL ORDER/JUDGMENT LESS THANOR EQUAL TO 30 DAYS
☐ 3138 MOTION TO VACATE/MODIFY/ RECONSIDER/REINSTATE FINAL ORDER/JUDGMENT GREATERTHAN 30 DAYS
☐ 3139 MOTION TO VACATE/MODIFY/ RECONSIDER/REINSTATE NON-FINAL ORDER/JUDGMENT

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

3

Order                                                    (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Mazya, et al.

v.

No. 18 - ch - 07161

Northwestern Lake Forest Hospital, et al.

### ORDER

This matter coming to be heard on Plaintiffs' Motion for Class Certification + Request for Discovery on Certification Issues, and the Court being duly advised on the premises, it is hereby ordered that Plaintiffs' Motion is entered and continued. This case is set for status as to service on all defendants and pleadings, October 4, 2018 at 9:30 am. Defendant Omnicell, Inc.'s deadline to Answer or otherwise plead is extended and held in advance

ENTERED
Judge Neil H. Cohen-2021
JUN 21 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Attorney No.: 43734
Name: Stephan Zouras LLP
Atty. for: πs
Address: 205 N. Michigan Ave
City/State/Zip: Chicago, IL 60601
Telephone: 312-233-1550

ENTERED:

Dated: 6-21-18

Judge                                    Judge's No.

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

4

Appearance and Jury Demand*                                    (1/20/17) CCG N009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
CHANCERY _____ DEPARTMENT/_____ DISTRICT

Yanza Mazya

                                              **No.** 2018-CH-07161
                                              **Claimed $:**
                            **Plaintiff**      **Return Date:**
                  v.                           **Time:**
                                               **Court Date:**
Northwestern Lake Forest Hospital, et al.      **Room No.:** 802
                            **Defendant**      50 W. Washington, Chicago, IL
                                               Address of Court District for Filing

### APPEARANCE AND JURY DEMAND*

■ General Appearance   ❑ 0900 - Fee Paid                      ❑ 0904 - Fee Waived
                       ❑ 0908 - Trial Lawyers Appearance - No Fee

■ Jury Demand*         ■ 1900 - Appearance and Jury Demand/Fee Paid   ■ Twelve-person Jury
                       ❑ 1904 - Appearance and Jury Demand/Fee Waived  ❑ Six-person Jury

The undersigned enters the appearance of:  ❑ Plaintiff   ■ Defendant
    Omnicell, Inc.

                        (Insert Litigant's Name)

                                        /s/ Jeffrey T. Norberg
                                              Signature

☑ Initial Counsel of Record  ❑ Pro Se (Self-represented)  **2810** ❑ Rule 707 Out-of-State Counsel (pro hac vice)
❑ Additional Appearance   ❑ Substitute Appearance

■ Atty. No.: 60608        ❑ Pro se 99500
Name: Jeffrey T. Norberg
Atty. for: Defendant Omnicell, Inc.
Address: 1776 Ash Street
City/State/Zip: Northfield, IL 60093
Telephone: 847-881-2468
Primary Email: jnorberg@nealmcdevitt.com
Secondary Email: docketing@nealmcdevitt.com
Tertiary Email: apierce@nealmcdevitt.com

> **Important**
> *Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, facsimile transmission (fax), Email transmission or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

**Pro Se Only:** ❑ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address: _____
*Strike demand for trial by jury if not applicable.
I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

                                        /s/ Jeffrey T. Norberg
                                        Attorney for  ❑ Plaintiff  ■ Defendant

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

```
CLERK OF THE CIRCUIT COURT - COOK COUNTY
00043397 Chancery-01 6/21/2018 9:29AM
ATTY: 60608   141 DAVIDLA
AD DAMNUM:                        $0.00
CASE NO: 2018CH07161     CALENDAR: 5
COURT DATE: 0/0/0000 12:00AM
CASE TOTAL: $467.00
Automation                       $25.00
Document Storage                 $25.00
Law Library                      $21.00
Arbitration                      $10.00
12 Jurors 3                     $230.00
Chancery Appearance             $110.00
Court Services                   $25.00
Children Waiting Rm              $10.00
Access Justice Fund               $2.00
e-Business                        $9.00
CHECK NO: 9137398680
CHECK AMOUNT:                   $467.00
CHANGE                            $0.00

RECEIPT 0001 OF 0001
TRANSACTION TOTAL:              $467.00

        THANK YOU
```

5



ELECTRONICALLY FILED
6/21/2018 1:40 PM
2018-CH-07161
PAGE 1 of 2
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# SANGAMON COUNTY SHERIFFS OFFICE
*"Keeping the Peace Since 1821"*

**WES BARR**
#1 Sheriffs Plaza
Springfield, IL 62701

Administration - (217) 753-6855
Civil Process/Records - (217) 753-6846

Investigations - (217) 753-6840
Corrections - (217) 753-6886

SG TRACKING #18- 3545

I, T. Roderick _____ certify that I served this summons as follows:

☐ Personal service on an individual, by leaving a copy of the summons and complaint with the defendant personally

☐ Abode service on an individual, by leaving a copy of the summons and complaint with a member of the household thirteen (13) years or older, informing said person of the contents thereof, and also by sending a copy of the summons, in a sealed envelope, postage paid, to the individual listed in the summons.

☑ Corporation service, by leaving a copy of the summons and complaint with an agent or officer of the corporation listed in the summons.

☐ Other service, as described below.

Case Number ___18CH 7161___

Name of defendant ___Omnicell, Inc.___

Name of other person
Summons left with ___Devose, Lashawn___

Sex ( M (F) ) Race ___W___ Approx. age ~~8-30~~ 45

Date of Service ___6/15/2018___ Time ___8:30am___

Date of Mailing _____

Address at which paper was served:
___801 Adlai Stevenson___
___SPFld IL___

**Service fees (Circle One) $42.00 or $82.00**

**Circle One:** PAID   PAUPER   NO CHARGE

Wesley L. Barr, Sheriff of Sangamon County

By _____, Deputy # ___332(___

IN PARTNERSHIP WITH THE COMMUNITY

Summons - Alias Summons                                                    (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

YANA MAZYA                                     No.  2018-CH-07161

v.                                             Defendant Address:
                                               OMNICELL, INC.
NORTHWESTERN LAKE FOREST HOSPITAL;             R/A ILLINOIS CORPORATION SERVICE COMPANY
NORTHWESTERN MEMORIAL HEALTHCARE;              801 ADLAI STEVENSON DRIVE
OMNICELL, INC.; BECTON, DICKINSON AND          SPRINGFIELD, IL 62703
COMPANY

                                                        JUN 12 2018

                          [✓] SUMMONS  [ ] ALIAS - SUMMONS

To each defendant:
    YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto
attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the
following location:

[✓] Richard J. Daley Center, 50 W. Washington, Room 802 _____ ,Chicago, Illinois 60602

[ ] District 2 - Skokie          [ ] District 3 - Rolling Meadows      [ ] District 4 - Maywood
    5600 Old Orchard Rd.             2121 Euclid 1500                      Maybrook Ave.
    Skokie, IL 60077                 Rolling Meadows, IL 60008             Maywood, IL 60153

[ ] District 5 - Bridgeview       [ ] District 6 - Markham             [ ] Richard J. Daley Center
    10220 S. 76th Ave.               16501 S. Kedzie Pkwy.                 50 W. Washington, LL-01
    Bridgeview, IL 60455            Markham, IL 60428                      Chicago, IL 60602

must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE
RELIEF REQUESTED IN THE COMPLAINT.

To the officer:
This Summons must be returned by the officer or other person to whom it was given for service, with endorsement
of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so
endorsed. This Summons may not be served later than thirty (30) days after its date.

[✓] Atty. No.: 43734                             Witness:          Wednesday, 06 June 2018

Name:  STEPHAN ZOURAS LLP                        /s DOROTHY BROWN

Atty. for:  YANA MAZYA                           DOROTHY BROWN, Clerk of Court

Address:  205 N MICHIGAN 2560

City/State/Zip Code:  CHICAGO, IL 60601          Date of Service: _____

Telephone:  (312) 233-1550                       (To be inserted by officer on copy left with Defendant or other person)

Primary Email Address: cmitchell@stephanzouras.com

Secondary Email Address(es):                     **Service by Facsimile Transmission will be accepted at:

rstephan@stephanzouras.com                       _____

                                                 (Area Code)   (Facsimile Telephone Number)

ELECTRONICALLY FILED
6/21/2018 1:40 PM
2018-CH-07161
PAGE 2 of 2

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

ELECTRONICALLY FILED
6/21/2018 1:40 PM
2018-CH-07161
CALENDAR: 05
PAGE 1 of 1
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on June 21, 2018, I filed the attached with the Clerk of

the Court using the electronic filing system which will send such filing to all attorneys of record.

,

   */s/ Catherine T. Mitchell*

6



# SHERIFF'S OFFICE OF COOK COUNTY, ILLINOIS
# AFFIDAVIT OF SERVICE





| CASE NUMBER: 18CH07161 | MULT.SER. 3 | DOC. TYPE: CHANCERY |
|---|---|---|
| **DIE DATE: 06/27/2018** | RECEIVED DATE: 6/14/2018 12:00:00 PM | FILED DATE: 06/06/2018 | DIST: 611 DC |

| | |
|---|---|
| **DEFENDANT** | **PLANTIFF** |
| NORTHWESTERN LAKE FOREST HOSPITAL | MAZYA, YANA |
| 211 E ONTARIO ST | **ATTORNEY** |
| CHICAGO, IL 60611 | STEPHAN ZOURAS LLP |
| 1800 | 205 N MICHIGAN 2560 |
| | CHICAGO, IL 60601 |
| | (312) 233-1550 |

FILED
CH-2308
JUN 29 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

**ATTACHED FEE AMOUNT:**

**SERVICE INFORMATION:**       RM 802 RA  DANAE K PROUSIS

I CERTIFY THAT I SERVED THE DEFENDANT/RESPONDENT AS FOLLOWS:

_____ **(1) PERSONAL SERVICE:**
BY LEAVING A COPY OF THE WRIT/ORDER WITH THE DEFENDANT/RESPONDENT PERSONALLY, AND INFORMING DEFENDANT/RESPONDENT OF CONTENTS.

_____ **(2) SUBSTITUTE SERVICE:**
BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH A FAMILY MEMBER OR PERSON RESIDING THERE, 13 YEARS OR OLDER, AND INFORMING THAT PERSON OF THE CONTENTS OF THE SUMMONS. ALSO, A COPY OF THE SUMMONS WAS MAILED TO THE DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE ON THE _____ DAY OF _____ 20_____.

_____ **(3) UNKNOWN OCCUPANTS:**
BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT NAMING "UNKNOWN OCCUPANTS" WITH A PERSON OF THE AGE OF 13 OR UPWARDS OCCUPYING SAID PREMISE.

___X___ **(4) CORP/CO/BUS/PART:**
BY LEAVING THE APPROPRIATE NUMBER OF COPIES OF THE SUMMONS, COMPLAINTS, INTERROGATORIES, JUDGMENTS, CERTIFICATIONS AND NOTICES WITH THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT CORPORATION _____ COMPANY _____ BUSINESS _____ PARTNERSHIP

_____ **(5) PROPERTY RECOVERED:**
NO ONE PRESENT TO RECEIVE ORDER OF COURT. ORDER POSTED IN PLAIN VIEW.

_____ **(6) S.O.S./D.O.I.:**
BY LEAVING THE SUMMONS AND COMPLAINT WITH THE SECRETARY OF THE STATE/DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, AN AGENT OF SAID DEFENDANT LISTED ABOVE. ANY AGENT OF SAID CORPORATION NOT FOUND IN THE COUNTY OF COOK.

_____ **(7) CERTIFIED MAIL**

**\*\*\*\*\* COMPLETE THIS SECTION IF WRIT IS A THIRD PARTY CITATION/GARNISHMENT \*\*\*\*\***

_____ **(8)**       AND BY MAILING ON THE _____ DAY OF _____ 20_____ A COPY OF THE THIRD PARTY GARNISHMENT/CITATION SUMMONS AND NOTICE TO THE JUDGMENT DEBTOR'S LAST KNOWN ADDRESS AS INDICATED IN THE NOTICE WITHIN (2) BUSINESS DAYS OF SERVICE UPON GARNISHEE/THIRD PARTY DEFENDANT.

THE NAMED DEFENDANT WAS NOT SERVED FOR THE GIVEN REASON BELOW:

| | | |
|---|---|---|
| _____ (01) NO CONTACT | _____ (05) WRONG ADDRESS | _____ (09) DECEASED |
| _____ (02) MOVED | _____ (06) NO SUCH ADDRESSS | _____ (10) NO REGISTERED AGENT |
| _____ (03) EMPTY LOT | _____ (07) EMPLOYER REFUSAL | _____ (11) OUT OF COOK COUNTY |
| _____ (04) NOT LISTED | _____ (08) CANCELLED BY PLAINTIFF ATTY | _____ (12) OTHER REASON (EXPLAIN) |

EXPLANATION: _____

| | ATTEMPTED SERVICES | | |
|---|---|---|---|
| WRIT SERVED ON: MVS. DOYLE | DATE | TIME (AM/PM) | STAR # |
| SEX: M/F  RACE: W  AGE: 57 | | 9:36 A | 1063 |
| THIS 8 DAY OF June, 20 18 | | : | |
| Thomas J. Dart | | : | |
| SHERIFF, BY: _____ 6683 , DEPUTY | | : | |

SSA840



**SHERIFF'S OFFICE OF COOK COUNTY**
**AFFIDAVIT OF SERVICE**



\* 0 2 8 0 8 2 9 1 \*

CASE NUMBER: 18CH07161      MULT. SER.: 3      DOC. TYPE: CHANCERY
**DIE DATE: 6/27/2018**    RECEIVED DATE: 6/14/2018     FILED DATE: 6/6/2018     DIST: 611 DC

| | |
|---|---|
| **DEFENDANT:** NORTHWESTERN MEMORIAL HEALTHCARE<br>211 E ONTARIO ST<br>CHICAGO, IL 60611<br>1800 | **PLAINTIFF:** MAZYA, YANA<br>**ATTORNEY:** STEPHAN ZOURAS LLP<br>205 N MICHIGAN 2560<br>CHICAGO, IL 60601<br>312-233-1550 |

ATTACHED FEE AMT:
SERVICE INFORMATION: RM 802 RA DANAE K PROUSIS

FILED CH-23
JUN 29 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

**I CERTIFY THAT I SERVED THE DEFENDANT/RESPONDENT AS FOLLOWS:**

____ **(1) PERSONAL SERVICE:** BY LEAVING A COPY OF THE WRIT/ORDER WITH THE DEFENDANT/RESPONDENT PERSONALLY, AND INFORMING DEFENDANT/RESPONDENT OF CONTENTS.

____ **(2) SUBSTITUTE SERVICE:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH A FAMILY MEMBER OR PERSON RESIDING THERE, 13 YEARS OR OLDER, AND INFORMING THAT PERSON OF THE CONTENTS OF THE SUMMONS. ALSO, A COPY OF THE SUMMONS WAS MAILED TO THE DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE ON THE _____ DAY OF _____ 20 ____

____ **(3) UNKNOWN OCCUPANTS:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT NAMING "UNKNOWN OCCUPANTS" WITH A PERSON OF THE AGE OF 13 OR UPWARDS OCCUPYING SAID PREMISE.

____ **(4) CORP/CO/BUS/PART:** BY LEAVING THE APPROPRIATE NUMBER OF COPIES OF THE SUMMONS, COMPLAINTS, INTERROGATORIES, JUDGMENTS, CERTIFICATIONS AND NOTICES WITH THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT CORPORATION ✓ COMPANY _____ BUSINESS _____ PARTNERSHIP ____

____ **(5) PROPERTY RECOVERED:** NO ONE PRESENT TO RECEIVE ORDER OF COURT. ORDER POSTED IN PLAIN VIEW.

____ **(6) S.O.S./D.O.I.:** BY LEAVING THE SUMMONS AND COMPLAINT WITH THE SECRETARY OF THE STATE/DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, AN AGENT OF SAID DEFENDANT LISTED ABOVE. ANY AGENT OF SAID CORPORATION NOT FOUND IN THE COUNTY OF COOK.

____ **(7) CERTIFIED MAIL**

     **\*\*\*\* COMPLETE THIS SECTION IF WRIT IS A THIRD PARTY CITATION/GARNISHMENT \*\*\*\***

____ **(8)** AND BY MAILING ON THE _____ DAY OF _____ 20____ A COPY OF THE THIRD PARTY GARNISHMENT/CITATION SUMMONS AND NOTICE TO THE JUDGMENT DEBTOR'S LAST KNOWN ADDRESS AS INDICATED IN THE NOTICE WITHIN (2) BUSINESS DAYS OF SERVICE UPON GARNISHEE/THIRD PARTY DEFENDANT.

**THE NAMED DEFENDANT WAS NOT SERVED FOR THE GIVEN REASON BELOW:**

| | | |
|---|---|---|
| ____ (01) NO CONTACT | ____ (05) WRONG ADDRESS | ____ (09) DECEASED |
| ____ (02) MOVED | ____ (06) NO SUCH ADDRESS | ____ (10) NO REGISTERED AGENT |
| ____ (03) EMPTY LOT | ____ (07) EMPLOYER REFUSAL | ____ (11) OUT OF COOK COUNTY |
| ____ (04) NOT LISTED | ____ (08) CANCELLED BY PLAINTIFF ATTY | ____ (12) OTHER REASON (EXPLAIN) |

EXPLANATION: _____

WRIT SERVED ON: _Mrs Doyle_

SEX: _F_     RACE: _W_      AGE: _57_

THIS _18_ DAY OF _June_ 20 _18_

TIME: _9:36_ (AM)/PM

THOMAS J. DART,
SHERIFF, BY: _____ 10087 _____ , DEPUTY

| ATTEMPTED SERVICES | | |
|---|---|---|
| DATE | TIME (AM/PM) | STAR# |
| | : | |
| | : | |
| | : | |
| | : | |

MOC087R

7

FILED DATE: 7/6/2018 1:18 PM   2018CH07161

Appearance and Jury Demand*

(Rev. 1/21/16) CCG N009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
CHANCERY _____ DEPARTMENT/ FIRST _____ DISTRICT

FILED
7/6/2018 1:18 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

YANA MAZYA, individually and on behalf of all others similarly situated

Plaintiff

v.

NORTHEWESTERN LAKE FOREST HOSPITAL, et al.

Defendant

No. __2018-CH-07161__

Claimed $: _____

Return Date: _____

Court Date: October 4, 2018

Room No.: 2308 (Judge Cohen)

**Address of Court District for Filing**

## APPEARANCE AND JURY DEMAND*

☑ General Appearance  ☐ 0900 - Fee Paid        ☐ 0909 - No Fee
                      ☐ 0904 - Fee Waived      ☐ 0908 - Trial Lawyers Appearance - No Fee

☐ Jury Demand*   ☐ 1900 - Appearance and Jury Demand/Fee Paid
                 ☐ 1909 - Appearance and Jury Demand/No Fee Paid

The undersigned enters the appearance of:  ☐ Plaintiff   ☑ Defendant

__Becton, Dickinson, & Company__

(Insert Litigant's Name)

_Karlin Sangdahl_ (signature)
Signature

☑ Initial Counsel of Record ☐ Pro Se (Self-represented) **2810** ☐ Rule 707 Out-of-State Counsel (pro hac vice)
☐ Additional Appearance    ☐ Substitute Appearance

☑ Atty. No.: __44486__          ☐ Pro se 99500
Name: _Reed Smith LLP / Karlin E. Sangdahl_
Atty. for: _Becton, Dickinson & Company_
Address: _10 S. Wacker Dr., Ste. 4000_
City/State/Zip Code: _Chicago, IL_
Telephone: _60606_
Primary Email: _ksangdahl@reedsmith.com_
Secondary Email: _____
Tertiary Email: _____

| **Important** |
| --- |
| *Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, facsimile transmission (fax), Email transmission or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)* |

**Pro Se Only:** ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address: _____
*Strike demand for trial by jury if not applicable.
I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

_____
Attorney for  ☐ Plaintiff ☐ Defendant

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

8

Order                                                               (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Yana Mazya, individually and on behalf of others
            v.     Similarly situated,
                                  No. __18 - CH - 07161__

Northwestern Lake Forest Hospital, et al.

### ORDER

This matter coming before the Court on parties' Agreed Motion to modify the responsive pleading schedule, due notice having been given, and the Court being duly advised in the premises;

By agreement of the parties, It is ordered that the Agreed Motion is granted. Becton, Dickinson and Company's (incorrectly sued as "Becton Dickinson") time to file its responsive pleading to Plaintiff's Complaint is extended to October 4, 2018

```
ENTERED
Judge Neil H. Cohen-2021
JUL 10 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK
```

Attorney No.: __4448C__
Name: __M. Gabbois / Reed Smith LLP__
Atty. for: __Defendant Becton Dickinson__
Address: __10 S. Wacker Drive__
City/State/Zip: __Chicago, IL 60606__
Telephone: __312 / 287 - 1000__

ENTERED:

Dated: __7-10-18__

_____
Judge                   Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

9

Appearance                                                                  (12/30/15) CCL N530

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED
7/11/2018 3:44 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

YANA MAZYA, individually, and on behalf of all others similarly situated,

                                    Plaintiff

v.

NORTHWESTERN LAKE FOREST HOSPITAL, NORTHWESTERN MEMORIAL HEALTHCARE, OMNICELL, INC, AND BECTON DICKINSON,

                                    Defendant

No. 2018-CH-07161

Calendar: 05

## APPEARANCE

☑ GENERAL APPEARANCE       0900 - APPEARANCE - FEE PAID; 0909 - APPEARANCE - NO FEE; 0904 - APPEARANCE FILED - FEE WAIVED

☐ JURY DEMAND       1900 - APPEARANCE & JURY DEMAND - FEE PAID
                                    1909 - APPEARANCE & JURY DEMAND - NO FEE

The undersigned enters the appearance of:     ☐ Plaintiff    ☑ Defendant

Northwestern Memorial HealthCare and Northwestern Lake Forest Hospital

_____

(Insert litigant's name.)

_____
                                   Signature

☑ INITIAL COUNSEL OF RECORD     ☐ PRO SE
☐ ADDITIONAL APPEARANCE       ☐ SUBSTITUTE APPEARANCE

    A copy of this appearance shall be given to all parties who have appeared and have not been found by the Court to be in default.

☑ Atty. No.: 46365         ☐ Pro Se 99500

(Please complete the following contact information.)

Name: BAKER & HOSTETLER LLP

Atty. for: NORTHWESTERN MEMORIAL HEALTHCARE and NORTHWESTERN LAKE FOREST HOSPITAL

Address: 191 N Wacker Dr, Suite 3100

City/State/Zip: Chicago, IL 60606

Telephone: 312-416-6200

Primary Email: ehines@bakerlaw.com

Secondary Email: mhoward@bakerlaw.com

Tertiary Email: msiebert@bakerlaw.com

**Pro Se Only:** ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

_____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

10

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| YANA MAZYA, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 18 CH 07161 |
| NORTHWESTERN LAKE FOREST HOSPITAL, NORTHWESTERN MEMORIAL HEALTHCARE, OMNICELL, INC., and BECTON DICKINSON, | ) ) ) ) ) | Judge Neil H. Cohen |
| Defendants. | ) ) | |

**AGREED ORDER**

This Cause coming before the Court on the Agreement of Plaintiff and Defendants Northwestern Lake Forest Hospital and Northwestern Memorial Healthcare to hold in abeyance Northwestern Lake Forest Hospital's and Northwestern Memorial Healthcare's responses to Plaintiff's Complaint until after the October 4, 2018 status hearing in this matter, the Court being fully advised in the premises,

IT IS HEREBY ORDERED Northwestern Lake Forest Hospital's and Northwestern Memorial Healthcare's responses to the Complaint are held in abeyance until after the October 4, 2018 status hearing in this matter.

Prepared By:
Melissa A. Siebert
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite 3100
Chicago, Illinois 60606
312.416.6200 (t)
312.416.6201 (f)
Firm ID: 46365
*Attorneys for Defendants Northwestern Lake Forest Hospital and Northwestern Memorial HealthCare*

ENTERED: 7|17|18

Judge Neil H. Cohen

**ENTERED**
Judge Neil H. Cohen-2021
**JUL 17 2018**
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

11

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
8/3/2018 2:06 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

FILED DATE: 8/3/2018 2:06 PM   2018CH07161

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

YANA MAZYA, individually, and on behalf of )
all others similarly situated, )
                               )
              Plaintiff, )
                               )
       v. )     Case No. 18-CH-07161
                               )
NORTHWESTERN LAKE FOREST )     Judge Neil H. Cohen
HOSPITAL, NORTHWESTERN MEMORIAL )
HEALTHCARE, OMNICELL, INC. and )
BECTON DICKINSON AND COMPANY, )
                               )
              Defendants. )
                               )

### <u>NOTICE OF ROUTINE MOTION</u>

TO: Counsel of Record (*see* attached Certificate of Service)

    **PLEASE TAKE NOTICE** that on **Monday, August 13, 2018** at **8:30 a.m.**, or as soon

thereafter as Counsel may be heard, we shall appear before the Honorable Neil H. Cohen, or any

judge sitting in his stead, in Room 2308 of the Richard J. Daley Center, 50 West Washington

Street, Chicago, Illinois, and then and there present the attached **AGREED MOTION FOR**

**LEAVE TO SUBSTITUTE ATTORNEYS,** a copy of which is hereby served upon you

Dated: August 3, 2018             Respectfully submitted,

                                     BECTON, DICKINSON & COMPANY

                           By:    */s/ Gary M. Miller*
                                         One of Its Attorneys

Gary M. Miller
SHOOK, HARDY & BACON L.L.P.             
111 South Wacker Drive, 51st Floor        ***Attorneys for Defendant Becton, Dickinson &***
Chicago, IL  60606                     ***Company***
Tel: (312) 704-7700
gmiller@shb.com
Firm No.  58950

4072385

FILED DATE: 8/3/2018 2:06 PM  2018CH07161

## CERTIFICATE OF SERVICE

I, Gary M. Miller, an attorney, hereby certify that on August 3, 2018, I caused a true and correct copy of **NOTICE OF ROUTINE MOTION** to be served on counsel of record via electronic mail, addressed as follows:

Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, IL  60601
(312) 233-1550
(312) 233-1560 (Fax)
lawyers@stephanzouras.com
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com

Michael O'Neil
Michael B. Galibois
Karlin E. Sangdahl
REED SMITH LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL  60606
(312) 207-1000
Firm ID No. 44486
michael.oneil@reedsmith.com
mgalibois@reedsmith.com
ksangdahl@reedsmith.com

***Attorneys for Plaintiff***

and by U.S. first-class mail, addressed to the following:

BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite. 300
Chicago, IL  60606
(312) 416-6200

NEAL & MCDEVITT LLC
1776 Ash Street
Northfield, IL  60093
(847) 881-2488

***Attorneys for Defendants Northwestern Lake Forest Hospital***

***Attorneys for Defendants Omnicell, Inc***

_/s/ Gary M. Miller_

4072385

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
8/3/2018 2:06 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

FILED DATE: 8/3/2018 2:06 PM  2018CH07161

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| YANA MAZYA, individually, and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 18-CH-07161 ) |
| NORTHWESTERN LAKE FOREST HOSPITAL, NORTHWESTERN MEMORIAL HEALTHCARE, OMNICELL, INC. and BECTON DICKINSON AND COMPANY, | ) Judge Neil H. Cohen ) ) ) ) ) |
| Defendants. | ) ) |

### AGREED MOTION FOR LEAVE TO SUBSTITUTE ATTORNEYS

Defendant Becton, Dickinson and Company ("BD"), by and through its attorneys, moves this Court to grant a Substitution of Attorneys, granting REED SMITH LLP leave to withdraw its appearance on behalf of BD and SHOOK, HARDY & BACON L.L.P. leave to file its appearance on behalf of said Defendant in accordance with the attached Substitution of Attorneys.

Counsel for BD has conferred with counsel for Plaintiff and Plaintiff has no objection to this motion.

Dated: August 3, 2018

Respectfully submitted,

BECTON, DICKINSON & COMPANY

By: _/s/ Gary M. Miller_____
       One of Its Attorneys

Gary M. Miller
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, 51st Floor
Chicago, IL 60606
Tel: (312) 704-7700
gmiller@shb.com
Firm No. 58950

***Attorneys for Defendant Becton, Dickinson & Company***

4071484

FILED DATE: 8/3/2018 2:06 PM 2018CH07161

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| YANA MAZYA, individually, and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 18-CH-07161 ) |
| NORTHWESTERN LAKE FOREST HOSPITAL, NORTHWESTERN MEMORIAL HEALTHCARE, OMNICELL, INC. and BECTON DICKINSON AND COMPANY, | ) Judge Neil H. Cohen ) ) ) ) |
| Defendants. | ) ) |

## <u>SUBSTITUTION OF ATTORNEYS</u>

The law firm of SHOOK, HARDY & BACON L.L.P. hereby **ENTERS** its appearance as counsel for Defendant Becton, Dickinson and Company.

Dated: August 3, 2018          SHOOK, HARDY & BACON L.L.P.

Gary M. Miller                  */s/ Gary M. Miller*
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, 51st Floor
Chicago, IL 60606
Tel: (312) 704-7700
gmiller@shb.com
Firm No. 58950

The law firm of REED SMITH LLP hereby **WITHDRAWS** its appearance as counsel for Defendant Becton, Dickinson and Company.

Dated: August 3, 2018          REED SMITH LLP

Michael O'Neil                  */s/ Michael O'Neil*
Michael B. Galibois
Karlin E. Sangdahl
REED SMITH LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL 60606
(312) 207-1000
Firm ID No. 44486
michael.oneil@reedsmith.com
mgalibois@reedsmith.com
ksangdahl@reedsmith.com

4071484

## CERTIFICATE OF SERVICE

I, Gary M. Miller, an attorney, hereby certify that on August 3, 2018, I caused a true and correct copy of **AGREED MOTION FOR LEAVE TO SUBSTITUTE ATTORNEYS** to be served on counsel of record via electronic mail, addressed as follows:

Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, IL 60601
(312) 233-1550
(312) 233-1560 (Fax)
lawyers@stephanzouras.com
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com

Michael O'Neil
Michael B. Galibois
Karlin E. Sangdahl
REED SMITH LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL 60606
(312) 207-1000
Firm ID No. 44486
michael.oneil@reedsmith.com
mgalibois@reedsmith.com
ksangdahl@reedsmith.com

*Attorneys for Plaintiff*

and by U.S. first-class mail, addressed to the following:

BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite. 300
Chicago, IL 60606
(312) 416-6200

NEAL & MCDEVITT LLC
1776 Ash Street
Northfield, IL 60093
(847) 881-2488

*Attorneys for Defendants Northwestern Lake Forest Hospital*

*Attorneys for Defendants Omnicell, Inc*

_/s/ Gary M. Miller_

FILED DATE: 8/3/2018 2:06 PM  2018CH07161

4071484

12

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

YANA MAZYA, individually, and on behalf of  )
all others similarly situated,  )
  )
        Plaintiff,  )
  )
    v.  )  Case No. 18-CH-07161
  )
NORTHWESTERN LAKE FOREST  )  Judge Neil H. Cohen
HOSPITAL, NORTHWESTERN MEMORIAL  )
HEALTHCARE, OMNICELL, INC. and  )
BECTON DICKINSON AND COMPANY,  )
  )
        Defendants.  )
  )

## AGREED ORDER

This matter coming on to be heard on Defendant Becton, Dickinson and Company's

("BD") Agreed Motion for Leave to Substitute Attorneys ("Motion"), due notice having been

given and the Court being fully advised in the premises,

**IT IS HEREBY ORDERED THAT:**

1.    BD's Motion is granted;

2.    Reed Smith LLP is withdrawn as counsel for BD; and

3.    Shook, Hardy & Bacon L.L.P. is substituted as counsel for BD.

Dated: _____      _____
                                              Judge Neil H. Cohen

*Prepared by:*

Gary M. Miller
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, 51st Floor
Chicago, IL 60606
Tel: (312) 704-7700
gmiller@shb.com
Firm No. 58950
*Attorneys for Defendant Becton,*
*    Dickinson and Company*

> ENTERED
> Judge Neil H. Cohen-2021
> AUG 10 2018
> DOROTHY BROWN
> CLERK OF THE CIRCUIT COURT
> OF COOK COUNTY, IL
> DEPUTY CLERK

4072383

13

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

Appearance

(12/30/15) CCL N530

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED
8/13/2018 3:19 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

FILED DATE: 8/13/2018 3:19 PM 2018CH07161

YANA MAZYA, et al.,

Plaintiff

v.

NORTHWESTERN LAKE FOREST HOSPITAL, et al.,

Defendant

No. 2018-CH-07161

Calendar: Hon. Neal H. Cohen

## APPEARANCE

☑ GENERAL APPEARANCE

0900 - APPEARANCE - FEE PAID;  0909 - APPEARANCE - NO FEE;
0904 - APPEARANCE FILED - FEE WAIVED

☑ JURY DEMAND

1900 - APPEARANCE & JURY DEMAND - FEE PAID
1909 - APPEARANCE & JURY DEMAND - NO FEE

The undersigned enters the appearance of:      ☐ Plaintiff      ☑ Defendant

BECTON, DICKINSON AND COMPANY

(Insert litigant's name.)

/s/ Gary M. Miller

☐ INITIAL COUNSEL OF RECORD          ☐ PRO SE
☐ ADDITIONAL APPEARANCE              ☑ SUBSTITUTE APPEARANCE

A copy of this appearance shall be given to all parties who have appeared and have not been found by the Court to be in default.

☑ Atty. No.: 58950          ☐ Pro Se 99500

(Please complete the following contact information.)

Name: Gary M. Miller and Matthew C. Wolfe

Atty. for: Defendant Becton, Dickinson and Company

Address: SHOOK, HARDY & BACON L.L.P., 111 S. Wacker Drive

City/State/Zip: Chicago, IL  60606

Telephone: (312) 704-7700

Primary Email: docket@shb.com

Secondary Email: gmiller@shb.com

Tertiary Email: mwolfe@shb.com

**Pro Se Only:** ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

CIRCUIT COURT OF COOK COUNTY
CHANCERY DIV., RM. 802 DALEY CTR.
CHICAGO, IL. 60602

ID: CH2018CH07161    20180827000027
TO: STEPHAN ZOURAS LLP
AT: KBOWERS@STEPHANZOURAS.COM

```
          * * * * *  N O T I C E  * * * * *
               CASE  18-CH-07161
               CALENDAR  05

     MAZYA YANA              V.      NORTHWESTERN LAKE FOREST
     THERE WILL BE A CASE MANAGEMENT CALL OF YOUR CASE ON THURSDAY
     THE  4TH  DAY OF OCTOBER 2018 IN ROOM     AT  9:30 A.M.
     RICHARD J. DALEY CENTER, CHICAGO, IL. 60602.
     * * * *  YOU MUST APPEAR OR AN APPROPRIATE ORDER * * * *
     * * * *  MAY BE ENTERED AFFECTING YOUR RIGHTS  * * * *
     NOTE: IF THIS CASE HAS BEEN ALREADY DISMISSED OR IF THIS CASE
     HAS A COURT DATE SET BY COURT ORDER, YOU MAY DISREGARD THIS
                    NOTICE
```

14

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

Appearance and Jury Demand

(1/20/11) CCG N009

8/13/2018 6:56 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

FILED DATE: 8/13/2018 6:56 PM   2018CH07161

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
CHANCERY _____ DEPARTMENT/_____ DISTRICT

| | |
|---|---|
| Yana Mazya | No. 18-CH-07161 |
| | Claimed $: _____ |
| **Plaintiff** | Return Date: _____ |
| v. | Time: _____ |
| Northwestern Lake Forest Hospital, et al. | Court Date: _____ |
| | Room No.: 802 |
| **Defendant** | 50 W. Washington, Chicago, IL |
| | Address of Court District for Filing |

### APPEARANCE AND JURY DEMAND*

☑ General Appearance  ☑ 0900 - Fee Paid  ☐ 0904 - Fee Waived
  ☐ 0908 - Trial Lawyers Appearance - No Fee

☑ Jury Demand*  ☑ 1900 - Appearance and Jury Demand/Fee Paid  ☑ Twelve-person Jury
  ☐ 1904 - Appearance and Jury Demand/Fee Waived  ☐ Six-person Jury

The undersigned enters the appearance of:  ☐ Plaintiff  ☑ Defendant
Omnicell, Inc.

(Insert Litigant's Name)

_Michael G2_ (signature)
Signature

☐ Initial Counsel of Record  ☐ Pro Se (Self-represented)  2810 ☑ Rule 707 Out-of-State Counsel (pro hac vice)
☐ Additional Appearance  ☐ Substitute Appearance

☑ Atty. No.: CA Bar No. 116127  ☐ Pro se 99500

Name: Michael Graham Rhodes

Atty. for: Defendant Omnicell, Inc.

Address: 101 California Street, 5th Floor

City/State/Zip: San Francisco, CA 94111

Telephone: (415) 693-2000

Primary Email: rhodesmg@cooley.com

Secondary Email: pmoyes@cooley.com

Tertiary Email: _____

> **Important**
> _Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, facsimile transmission (fax), Email transmission or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)_

**Pro Se Only:** ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address: _____
*Strike demand for trial by jury if not applicable.

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

_Michael G2_ (signature)
Attorney for  ☐ Plaintiff  ☑ Defendant

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

FILED DATE: 8/13/2018 6:56 PM   2018CH07161

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| YANA MAZYA, individually and on behalf of all others similarly situated | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2018-ch-07161 |
| NORTHWESTERN LAKE FOREST HOSPITAL, NORTHWESTERN MEMORIAL HEALTHCARE, OMNICELL, INC., and BECTON DICKINSON, | ) ) ) ) ) ) | Hon. Judge Cohen |
| Defendants. | ) | |

Verified Statement of Out-of-State Attorney Pursuant to Supreme Court Rule 707

I, Michael G. Rhodes, submit this Verified Statement pursuant to Illinois Supreme Court Rule 707.

1.     My full name is Michael Graham Rhodes.   The address of the office from which I practice law and related email address and telephone number are as follows:

Cooley LLP
101 California Street, 5th Floor
San Francisco, CA 94111-5800
(415) 693-2000
rhodesmg@cooley.com

2.     I represent Omnicell, Inc. in *Mazya et al. v. Northwestern Lake Forest Hospital, et al.*, filed in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, Case No. 2018-ch-07161.

3(a).     I have not filed any other appearance pursuant to this rule during this calendar year.

3(b).     I have not received a registration number from the ARDC.

4(a).     I list each jurisdiction of admission, including any state, territory, or commonwealth of the United States, the District of Columbia, or in a foreign country, and my full admission name and license number.

1

FILED DATE: 8/13/2018 6:56 PM   2018CH07161

California – Michael G. Rhodes, Bar No. 116127.

4(b).   I attach a letter or certificate of good standing for each of the jurisdictions listed in paragraph 4(a), above.

5.      I have no office or other presence in Illinois for the practice of law.

6.      I submit to the disciplinary authority of the Supreme Court of Illinois.

7.      I have undertaken to become familiar with and to comply, as if admitted to practice in Illinois, with the rules of the Supreme Court of Illinois, including the Illinois Rules of Professional Conduct and the Supreme Court Rules on Admission and Discipline of Attorneys, and other Illinois law and practices that pertain to the proceeding.

8.      The full name, business address and ARDC number of the Illinois attorney with whom I have associated in the matter is:

Jeffrey T. Norberg
Neal & McDevitt, LLC
1776 Ash Street
Northfield, Illinois 60093
(847) 881-2468
ARDC Number 6315012

9.      I certify that I have caused this Statement to be served upon the following parties and that these parties are all entitled to service under this rule.

Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
Stephan Zouras, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
(312) 233-1550
(312) 233-1560 (fax)
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
*Attorneys for Plaintiff*

2

FILED DATE: 8/13/2018 6:56 PM   2018CH07161

Melissa A. Siebert
Baker & Hostetler LLP
191 North Wacker Drive, Suite 3100
Chicago, Illinois 60606
(312) 416-6200
(312) 416-6201 (fax)
msiebert@bakerlaw.com
*Attorneys for Defendants Northwestern Lake*
*Forest Hospital and Northwestern Memorial*
*Healthcare*

Gary M. Miller
Shook, Hardy & Bacon L.L.P.
111 South Wacker Drive, 51st Floor
Chicago, Illinois 60606
(312) 704-7700
(312) 558-1195 (fax)
gmiller@shb.com
*Attorneys for Defendant Becton, Dickinson and Company*

Jeffrey T. Norberg
Neal & McDevitt, LLC
1776 Ash Street
Northfield, Illinois 60093
(847) 881-2468
jnorberg@nealmcdevitt.com
*Attorneys for Defendant Omnicell, Inc.*

Omnicell, Inc.
R/A Illinois Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

The Administrator of the Attorney Registration and Disciplinary Commission
Rule707@iardc.org

///
///
///

3

FILED DATE: 8/13/2018 6:56 PM   2018CH07161

<u>Verification</u>

I verify the accuracy and completeness of each of the above statements.

Date: August 13 2018

Michael G. Rhodes

179698579

4

FILED DATE: 8/13/2018 6:56 PM   2018CH07161

**THE STATE BAR**
**OF CALIFORNIA**

180 HOWARD STREET, SAN FRANCISCO, CALIFORNIA 94105-1617                    TELEPHONE: 888-800-3400

# CERTIFICATE OF STANDING

July 24, 2018

TO WHOM IT MAY CONCERN:

This is to certify that according to the records of the State Bar, MICHAEL GRAHAM RHODES, #116127 was admitted to the practice of law in this state by the Supreme Court of California on December 3, 1984; and has been since that date, and is at date hereof, an ACTIVE member of the State Bar of California; and that no recommendation for discipline for professional or other misconduct has ever been made by the Board of Trustees or a Disciplinary Board to the Supreme Court of the State of California.

THE STATE BAR OF CALIFORNIA

Denise Velasco
Custodian of Records

FILED DATE: 8/13/2018 6:56 PM  2018CH07161

## CERTIFICATE OF SERVICE

I, Michael G. Rhodes, an attorney, hereby certify that on August 13, 2018, I caused a true

and correct copy of the Appearance and Jury Demand and Verified Statement of Out-of-State

Attorney Pursuant to Supreme Court Rule 707 to be served on counsel of record via electronic

mail, addressed as follows:

Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
Stephan Zouras, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
(312) 233-1550
(312) 233-1560 (fax)
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
*Attorneys for Plaintiff*

Melissa A. Siebert
Baker & Hostetler LLP
191 North Wacker Drive, Suite 3100
Chicago, Illinois 60606
(312) 416-6200
(312) 416-6201 (fax)
msiebert@bakerlaw.com
*Attorneys     for     Defendants
Northwestern Lake
Forest Hospital and Northwestern
Memorial
Healthcare*

Gary M. Miller
Shook, Hardy & Bacon L.L.P.
111 South Wacker Drive, 51st Floor
Chicago, Illinois 60606
(312) 704-7700
(312) 558-1195 (fax)
gmiller@shb.com
*Attorneys   for   Defendant   Becton,
Dickinson and Company*

Jeffrey T. Norberg
Neal & McDevitt, LLC
1776 Ash Street
Northfield, Illinois 60093
(847) 881-2468
(847) 441-0911 (fax)
jnorberg@nealmcdevitt.com
*Attorneys   for   Defendant   Omnicell,
Inc.*

The Administrator of the Attorney
Registration    and    Disciplinary
Commission
Rule707@iardc.org

And by U.S. first class mail, addressed to the following:

Omnicell, Inc.
R/A Illinois Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

15

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
9/26/2018 2:37 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| YANA MAZYA, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| NORTHWESTERN LAKE FOREST HOSPITAL, NORTHWESTERN MEMORIAL HEALTHCARE, OMNICELL, INC., and BECTON DICKINSON | ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 2018-CH-07161

Honorable Judge Neil H. Cohen

## NOTICE OF CHANGE OF ADDRESS

PLEASE TAKE NOTICE that Stephan Zouras, LLP ("Stephan Zouras") notifies the Court and all counsel that, effective September 19, 2018, Stephan Zouras has relocated to the following address:

Stephan Zouras, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
T: (312) 233-1550

This Court and all parties are hereby instructed to make notice of this address change and send all notices, order, pleadings, and other correspondence regarding the captioned matter to the new address.

Dated: September 26, 2018

Respectfully submitted,

/s/ Ryan F. Stephan
One of the Attorneys for Plaintiffs
Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
FIRM ID # 43734

FILED DATE: 9/26/2018 2:37 PM   2018CH07161

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on September 26, 2018 I served a true and correct copy of the foregoing *Notice of Change of Address* by email, upon the following:

Craig R. Thorstenson
Becky L. Kalas
FORD HARRISON LLP
180 N. Stetson Avenue, Suite1660
Chicago, IL 60601
cthorstenson@fordharrison.com
bkalas@fordharrison.com
*Attorneys for Northwestern Lake Forest Hospital*
*And Northwestern Memorial Healthcare*

Gary M. Miller
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, 51st Floor
Chicago, IL 60606
gmiller@shb.com
*Attorney for Becton, Dickinson and Co*

      /s/ Ryan F. Stephan

2

16

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
9/28/2018 5:56 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

FILED DATE: 9/28/2018 5:56 PM  2018CH07161

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

YANA MAZYA, individually, and on behalf of ) 
all others similarly situated, )
                                             )

                                 Plaintiff, )

                                 )
       v.                             ) Case No. 18-CH-07161
                                 )
NORTHWESTERN LAKE FOREST )  Judge Neil H. Cohen
HOSPITAL, NORTHWESTERN MEMORIAL )
HEALTHCARE, OMNICELL, INC. and )
BECTON DICKINSON AND COMPANY, )
                                 )
                   Defendants. )
                                 )

## NOTICE OF MOTION

TO:  Counsel of Record (*see* attached Certificate of Service)

     **PLEASE TAKE NOTICE** that on **Thursday, October 4, 2018** at **10:00 a.m.**, or as

soon thereafter as Counsel may be heard, we shall appear before the Honorable Neil H. Cohen,

or any judge sitting in his stead, in Room 2308 of the Richard J. Daley Center, 50 West

Washington Street, Chicago, Illinois, and then and there present the attached **AGREED**

**MOTION TO HOLD IN ABEYANCE RESPONSIVE PLEADINGS DEADLINE**, a copy of

which is hereby served upon you

Dated:  September 28, 2018           Respectfully submitted,

                                   BECTON, DICKINSON & COMPANY

                     By:   */s/ Matthew C. Wolfe*
                               One of Its Attorneys

Gary M. Miller
SHOOK, HARDY & BACON L.L.P.      ***Attorneys for Defendant Becton, Dickinson &***
111 South Wacker Drive, 51st Floor      ***Company***
Chicago, IL 60606
Tel:  (312) 704-7700
gmiller@shb.com
Firm No. 58950

4091027

FILED DATE: 9/28/2018 5:56 PM   2018CH07161

## CERTIFICATE OF SERVICE

I, Matthew C. Wolfe, an attorney, hereby certify that on September 28, 2018, I caused a

true and correct copy of **NOTICE OF MOTION** to be served on counsel of record via

electronic mail, addressed as follows:

Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, IL 60601
(312) 233-1550
(312) 233-1560 (Fax)
lawyers@stephanzouras.com
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com

*Attorneys for Plaintiff*

Jeffrey T. Norberg
NEAL & MCDEVITT LLC
1776 Ash Street
Northfield, IL 60093
(847) 881-2488
jnorberg@nealmcdevitt.com

Eric C. Johnson
Michael G. Rhodes
COOLEY LLP
101 California Street
Fifth Floor
San Francisco, CA 94111-5800
(415) 693-2000
ejohnson@cooley.com
rhodesmg@cooley.com

*Attorneys for Defendants Omnicell, Inc*

Melissa A. Siebert
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite. 300
Chicago, IL 60606
(312) 416-6200
msiebert@bakerlaw.com

*Attorneys for Defendants Northwestern
Lake Forest Hospital*

　　　　　　　　　　　　　／s/ Matthew C. Wolfe

4091027

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
9/28/2018 5:39 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED DATE: 9/28/2018 5:39 PM   2018CH07161

| | |
|---|---|
| YANA MAZYA, individually, and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 18-CH-07161 ) |
| NORTHWESTERN LAKE FOREST HOSPITAL, NORTHWESTERN MEMORIAL HEALTHCARE, OMNICELL, INC. and BECTON DICKINSON AND COMPANY, | ) Judge Neil H. Cohen ) ) ) ) |
| Defendants. | ) ) |

**AGREED MOTION TO HOLD IN ABEYANCE
RESPONSIVE PLEADINGS DEADLINE**

Defendant Becton Dickinson and Company ("BD") respectfully moves to hold its responsive pleading deadline in abeyance pending the Illinois Supreme Court's decision in *Rosenbach v. Six Flags Entertainment Corp.*, 2017 IL App (2d) 170317 ("*Rosenbach*"). In support of this Agreed Motion, BD states as follows:

1.      Plaintiff filed this lawsuit on June 6, 2018, seeking relief under the Illinois Biometric Information Privacy Act ("BIPA"). Plaintiff alleges that BD makes devices allegedly used to collect biometric information.

2.      On May 30, 2018, the Illinois Supreme Court granted a petition for leave to appeal in *Rosenbach* to decide the meaning of "aggrieved person" under BIPA. As of September 24, 2018, the *Rosenbach* appeal is fully briefed.

3.      On July 10, 2018, this Court entered an order extending BD's time to file a responsive pleading to October 4, 2018. Ex. 1.

4.      In separate orders, this Court has held in abeyance the other defendants' deadlines to answer or otherwise plead pending the Illinois Supreme Court's decision in *Rosenbach*. *See*

4090236

FILED DATE: 9/28/2018 5:39 PM   2018CH07161

Exs. 2 & 3. BD respectfully submits that because the *Rosenbach* appeal remains pending before the Illinois Supreme Court, this Court also hold in abeyance its deadline to answer or otherwise plead.

      5.      Counsel for BD has discussed this motion with counsel for the other parties and the other parties have no objection to this motion.

      WHEREFORE, BD respectfully requests that this Court hold its responsive pleading deadlines in abeyance pending a decision from the Supreme Court in *Rosenbach*.

Dated:  September 28, 2018

                      Respectfully submitted,

                      BECTON, DICKINSON AND COMPANY

             By:   */s/ Matthew C. Wolfe*
                      One of Its Attorneys

Gary M. Miller
Matthew C. Wolfe
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, 51st Floor
Chicago, IL  60606
Tel:  (312) 704-7700
gmiller@shb.com
mwolfe@shb.com
Firm No.  58950

                      ***Attorneys for Defendant Becton, Dickinson and Company***

FILED DATE: 9/28/2018 5:39 PM   2018CH07161

## CERTIFICATE OF SERVICE

I, Matthew C. Wolfe, an attorney, hereby certify that on **September 28, 2018,** I caused a true and correct copy of **AGREED MOTION TO HOLD IN ABEYANCE RESPONSIVE PLEADINGS DEADLINE** to be served on counsel of record via electronic mail, addressed as follows:

Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, IL 60601
(312) 233-1550
(312) 233-1560 (Fax)
lawyers@stephanzouras.com
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com

*Attorneys for Plaintiff*

Jeffrey T. Norberg
NEAL & MCDEVITT LLC
1776 Ash Street
Northfield, IL 60093
(847) 881-2488
jnorberg@nealmcdevitt.com

Eric C. Johnson
Michael G. Rhodes
COOLEY LLP
101 California Street
Fifth Floor
San Francisco, CA 94111-5800
(415) 693-2000
ejohnson@cooley.com
rhodesmg@cooley.com

*Attorneys for Defendants Omnicell, Inc*

Melissa A. Siebert
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite. 300
Chicago, IL 60606
(312) 416-6200
msiebert@bakerlaw.com

*Attorneys for Defendants Northwestern Lake Forest Hospital*

_/s/ Matthew C. Wolfe_

4090236

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
9/28/2018 5:39 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

# EXHIBIT 1

FILED DATE: 9/28/2018 5:39 PM   2018CH07161

Order _____ (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED DATE: 9/28/2018 5:39 PM   2018CH07161

Yana Mazya, individually and on behalf of other, similarly situated,

v.

No. 18-CH-07161

Northwestern Lake Forest Hospital, et al

### ORDER

This matter coming before the Court on parties' Agreed Motion to modify the responsive pleading schedule, due notice having been given, and the Court being duly advised in the premises;

By agreement of the parties, It is ordered that the Agreed Motion is granted. Becton, Dickinson and Company's (incorrectly sued as "Becton Dickinson") time to file its responsive pleading to Plaintiff's Complaint is extended to October 4, 2018

**ENTERED**
Judge Neil H. Cohen-2021
JUL 10 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Attorney No.: 44980

Name: M. Caillere / Reed Smith LLP

Atty. for: Defendant Becton Dickinson

Address: 10 S. Wacker Drive

City/State/Zip: Chicago, IL 60606

Telephone: 312/207-1000

ENTERED:

Dated: 7-10-18

_____
Judge                    Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

# EXHIBIT 2

FILED
9/28/2018 5:39 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

FILED DATE: 9/28/2018 5:39 PM   2018CH07161

Order                                                     (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Mazya, et al.

v.

No. 18-ch-07161

Northwestern Lake Forest Hospital, etal.

### ORDER

This matter coming to be heard on Plaintiffs' Motion for Class Certification + Request for Discovery on Certification Issues, and the Court being duly advised on the premises, it is hereby ordered that Plaintiffs' Motion is entered and continued. This case is set for status as to service on all defendants and pleadings, October 4, 2018 at 9:30 am.

Defendant Omnicell, Inc.'s deadline to Answer or otherwise plead is extended and held in advance.

ENTERED
Judge Neil H. Cohen-2021
JUN 21 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Attorney No.: 43734
Name: Stephan Zouvas LLP
Atty. for: ttS
Address: 205 N. Michigan Ave
City/State/Zip: Chicago, IL 60601
Telephone: 312-233-1550

ENTERED:

Dated: 6-21-18

Judge                                    Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED DATE: 9/28/2018 5:39 PM   2018CH07161

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

# EXHIBIT 3

FILED
9/28/2018 5:39 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

FILED DATE: 9/28/2018 5:39 PM   2018CH07161

FILED DATE: 9/28/2018 5:39 PM 2018CH07161

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

YANA MAZYA, individually, and on behalf
of all others similarly situated,

        Plaintiff,

v.

NORTHWESTERN LAKE FOREST
HOSPITAL, NORTHWESTERN
MEMORIAL HEALTHCARE, OMNICELL,
INC., and BECTON DICKINSON,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 18 CH 07161

Judge Neil H. Cohen

## <u>AGREED ORDER</u>

    This Cause coming before the Court on the Agreement of Plaintiff and Defendants

Northwestern Lake Forest Hospital and Northwestern Memorial Healthcare to hold in abeyance

Northwestern Lake Forest Hospital's and Northwestern Memorial Healthcare's responses to

Plaintiff's Complaint until after the October 4, 2018 status hearing in this matter, the Court being

fully advised in the premises,

    IT IS HEREBY ORDERED Northwestern Lake Forest Hospital's and Northwestern

Memorial Healthcare's responses to the Complaint are held in abeyance until after the October 4,

2018 status hearing in this matter.

Prepared By:
Melissa A. Siebert
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite 3100
Chicago, Illinois 60606
312.416.6200 (t)
312.416.6201 (f)
Firm ID: 46365
*Attorneys for Defendants Northwestern*
*Lake Forest Hospital and Northwestern*
*Memorial HealthCare*

ENTERED:

```
ENTERED
Judge Neil H. Cohen-2021
JUL 1 7 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK
```

_____
        Judge Neil H. Cohen

17

Order                 (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Mazya

v.

No. 18-CH-07161

Northwestern Lake Forest
Hospital et al.

**ORDER**

This matter coming to be heard on status, the case is stayed pending the Illinois Supreme Court's decision in Rosenbach v. Six Flags. The case is continued for a status hearing on February 20, 2019 at 9:30 a.m.

```
ENTERED
Judge Neil H. Cohen-2021
OCT -4 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK
```

Attorney No.: 59085

Name: Matt Wolfe, SHB

Atty. for: PD

Address: 111 S Wacker, Ste 5100

City/State/Zip: Chicago IL 60606

Telephone: 312-704-7000

**ENTERED:**

Dated: 10-4-18

_____
Judge          Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

18

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
1/28/2019 4:17 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| **YANA MAZYA, individually, and on behalf of all others similarly situated,** )<br><br>) | |
| **Plaintiff,** ) | |
| ) | **Case No. 2018-CH-07161** |
| **v.** ) | |
| **NORTHWESTERN LAKE FOREST HOSPITAL, NORTHWESTERN MEMORIAL HEALTHCARE, OMNICELL, INC. and BECTON DICKINSON,** )<br>)<br>)<br>) | |
| **Defendants.** )<br>) | |

**NOTICE OF AUTHORITY**

Please take notice that Plaintiff hereby submits the attached Illinois Supreme Court

Opinion in *Rosenbach v. Six Flags Entertainment Corp.*, No. 123186 (Jan. 25, 2019), for the

Court's consideration.

Date: January 28, 2019               Respectfully Submitted,

                                     */s/ Catherine T. Mitchell*
                                     **ONE OF PLAINTIFF'S ATTORNEYS**

                                     Ryan F. Stephan
                                     Catherine T. Mitchell
                                     **STEPHAN ZOURAS, LLP**
                                     100 N. Riverside Plaza
                                     Suite 2150
                                     Chicago, Illinois 60606
                                     312.233.1550
                                     312.233.1560 *f*
                                     rstephan@stephanzouras.com
                                     cmitchell@stephanzouras.com

FILED DATE: 1/28/2019 4:17 PM    2018CH07161

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on January 28, 2019, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

_/s/Catherine T. Mitchell_

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
1/28/2019 4:17 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

FILED DATE: 1/28/2019 4:17 PM   2018CH07161

**2019 IL 123186**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 123186)

STACY ROSENBACH, as Mother and Next Friend of Alexander Rosenbach, Appellant, v. SIX FLAGS ENTERTAINMENT CORPORATION *et al.*, Appellees.

*Opinion filed January 25, 2019.*

CHIEF JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Justices Thomas, Kilbride, Garman, Burke, Theis, and Neville concurred in the judgment and opinion.

## OPINION

¶ 1    The Biometric Information Privacy Act (Act) (740 ILCS 14/1 *et seq.* (West 2016)) imposes numerous restrictions on how private entities collect, retain, disclose and destroy biometric identifiers, including retina or iris scans, fingerprints, voiceprints, scans of hand or face geometry, or biometric information. Under the Act, any person "aggrieved" by a violation of its provisions "shall have a

FILED DATE: 1/28/2019 4:17 PM  2018CH07161

right of action *** against an offending party" and "may recover for each violation" the greater of liquidated damages or actual damages, reasonable attorney fees and costs, and any other relief, including an injunction, that the court deems appropriate. *Id.* § 20. The central issue in this case, which reached the appellate court by means of a permissive interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016), is whether one qualifies as an "aggrieved" person and may seek liquidated damages and injunctive relief pursuant to the Act if he or she has not alleged some actual injury or adverse effect, beyond violation of his or her rights under the statute. The appellate court answered this question in the negative. In its view, "a plaintiff who alleges only a technical violation of the statute without alleging *some* injury or adverse effect is not an aggrieved person" within the meaning of the law. (Emphasis in original.) 2017 IL App (2d) 170317, ¶ 23. We granted leave to appeal (Ill. S. Ct. R. 315(a) (eff. Nov. 1, 2017)) and now reverse and remand to the circuit court for further proceedings.

¶ 2                                    BACKGROUND

¶ 3        The question the appellate court was asked to consider in this case arose in the context of a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)). We therefore take the following well-pleaded facts from the complaint and accept them as true for purposes of our review. *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11.

¶ 4        Six Flags Entertainment Corporation and its subsidiary Great America LLC own and operate the Six Flags Great America amusement park in Gurnee, Illinois. Defendants sell repeat-entry passes to the park. Since at least 2014, defendants have used a fingerprinting process when issuing those passes. As alleged by the complaint, their system "scans pass holders' fingerprints; collects, records and stores 'biometric' identifiers and information gleaned from the fingerprints; and then stores that data in order to quickly verify customer identities upon subsequent visits by having customers scan their fingerprints to enter the theme park." According to the complaint, "[t]his makes entry into the park faster and more seamless, maximizes the time pass holders are in the park spending money, and eliminates lost revenue due to fraud or park entry with someone else's pass."

FILED DATE: 1/28/2019 4:17 PM   2018CH07161

¶ 5      In May or June 2014, while the fingerprinting system was in operation, Stacy Rosenbach's 14-year-old son, Alexander, visited defendants' amusement park on a school field trip. In anticipation of that visit, Rosenbach had purchased a season pass for him online. Rosenbach paid for the pass and provided personal information about Alexander, but he had to complete the sign-up process in person once he arrived at the amusement park.

¶ 6      The process involved two steps. First, Alexander went to a security checkpoint, where he was asked to scan his thumb into defendants' biometric data capture system. After that, he was directed to a nearby administrative building, where he obtained a season pass card. The card and his thumbprint, when used together, enabled him to gain access as a season pass holder.

¶ 7      Upon returning home from defendants' amusement park, Alexander was asked by Rosenbach for the booklet or paperwork he had been given in connection with his new season pass. In response, Alexander advised her that defendants did "it all by fingerprint now" and that no paperwork had been provided.

¶ 8      The complaint alleges that this was the first time Rosenbach learned that Alexander's fingerprints were used as part of defendants' season pass system. Neither Alexander, who was a minor, nor Rosenbach, his mother, were informed in writing or in any other way of the specific purpose and length of term for which his fingerprint had been collected. Neither of them signed any written release regarding taking of the fingerprint, and neither of them consented in writing "to the collection, storage, use sale, lease, dissemination, disclosure, redisclosure, or trade of, or for [defendants] to otherwise profit from, Alexander's thumbprint or associated biometric identifiers or information."

¶ 9      The school field trip was Alexander's last visit to the amusement park. Although he has not returned there since, defendants have retained his biometric identifiers and information. They have not publicly disclosed what was done with the information or how long it will be kept, nor do they have any "written policy made available to the public that discloses [defendants'] retention schedule or guidelines for retaining and then permanently destroying biometric identifiers and biometric information."

FILED DATE: 1/28/2019 4:17 PM    2018CH07161

¶ 10      In response to the foregoing events, Rosenbach, acting in her capacity as mother and next friend of Alexander (see 755 ILCS 5/11-13(d) (West 2016)), brought this action on his behalf in the circuit court of Lake County.[1] The action seeks redress for Alexander, individually and on behalf of all other similarly situated persons, under the Act (740 ILCS 14/1 *et seq.* (West 2016)), which, as noted at the outset of this opinion, provides that any person "aggrieved" by a violation of the Act's provisions "shall have a right of action *** against an offending party" and "may recover for each violation" the greater of liquidated damages or actual damages, reasonable attorney fees and costs, and any other relief, including an injunction, that the court deems appropriate (*id.* § 20).

¶ 11      The complaint, as amended, is in three counts. Count I seeks damages on the grounds that defendants violated section 15(b) of the Act (*id.* § 15(b)) by (1) collecting, capturing, storing, or obtaining biometric identifiers and biometric information from Alexander and other members of the proposed class without informing them or their legally authorized representatives in writing that the information was being collected or stored; (2) not informing them in writing of the specific purposes for which defendants were collecting the information or for how long they would keep and use it; and (3) not obtaining a written release executed by Alexander, his mother, or members of the class before collecting the information. Count II requests injunctive relief under the Act to compel defendants to make disclosures pursuant to the Act's requirements and to prohibit them from violating the Act going forward. Count III asserts a common-law action for unjust enrichment.

¶ 12      Defendants sought dismissal of Rosenbach's action under both sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2016)) in a combined motion filed pursuant to section 2-619.1 (*id.* § 2-619.1). As grounds for their motion, defendants asserted that one of the named defendants had no relation to the facts alleged, that plaintiff had suffered no actual or threatened injury and therefore

---

[1]Although Stacy Rosenbach has been referred to as the plaintiff in these proceedings, that is not technically accurate. Alexander is the plaintiff. Rosenbach is his next friend. A next friend of a minor is not a party to the litigation but simply represents the real party, who, as a minor, lacks capacity to sue in his or her own name. See *Blue v. People*, 223 Ill. App. 3d 594, 596 (1992). During oral argument, counsel for Rosenbach confirmed that she appears here solely on behalf of her son and asserts no claim for herself.

lacked standing to sue, and that plaintiff's complaint failed to state a cause of action for violation of the Act or for unjust enrichment.

¶ 13    Following a hearing, and proceeding only under section 2-615 of the Code, the circuit court denied the motion as to counts I and II, which sought damages and injunctive relief under the Act, but granted the motion as to count III, the unjust enrichment claim, and dismissed that claim with prejudice.

¶ 14    Defendants sought interlocutory review of the circuit court's ruling under Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016) on the grounds that it involved a question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal might materially advance the ultimate termination of the litigation. The following two questions of law were identified by the circuit court:

> (1) "[w]hether an individual is an aggrieved person under §20 of the Illinois Biometric Information Privacy Act, 740 ILCS 14/20, and may seek statutory liquidated damages authorized under §20(l) of the Act when the only injury he alleges is a violation of §15(b) of the Act by a private entity who collected his biometric identifiers and/or biometric information without providing him the required disclosures and obtaining his written consent as required by §15(b) of the Act," and

> (2) "[w]hether an individual is an aggrieved person under §20 of the Illinois Biometric Information Privacy Act, 740 ILCS 14/20, and may seek injunctive relief authorized under §20(4) of the Act, when the only injury he alleges is a violation of §15(b) of the Act by a private entity who collected his biometric identifiers and/or biometric information without providing him the required disclosures and obtaining his written consent as required by §15(b) of the Act."

¶ 15    The appellate court granted review of the circuit court's order and answered both certified questions in the negative. In its view, a plaintiff is not "aggrieved" within the meaning of the Act and may not pursue either damages or injunctive relief under the Act based solely on a defendant's violation of the statute. Additional injury or adverse effect must be alleged. The injury or adverse effect need not be pecuniary, the appellate court held, but it must be more than a "technical violation of the Act." 2017 IL App (2d) 170317, ¶ 28.

FILED DATE: 1/28/2019 4:17 PM  2018CH07161

FILED DATE: 1/28/2019 4:17 PM    2018CH07161

¶ 16        Rosenbach petitioned this court for leave to appeal. Ill. S. Ct. R. 315 (eff. Nov. 1, 2017). We allowed her petition and subsequently permitted friend of the court briefs to be filed in support of her position by the Electronic Privacy Information Center and by a consortium of groups including the American Civil Liberties Union, the Center for Democracy and Technology, and the Electronic Frontier Foundation. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). The court also permitted the Restaurant Law Center and Illinois Restaurant Association, the Internet Association, and the Illinois Chamber of Commerce to file friend of the court briefs in support of defendants.

¶ 17                                    ANALYSIS

¶ 18        Because this appeal concerns questions of law certified by the circuit court pursuant to Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016), our review is *de novo*. *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21. *De novo* review is also appropriate because the appeal arose in the context of an order denying a section 2-615 motion to dismiss (*Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006)) and its resolution turns on a question of statutory interpretation (*Eads v. Heritage Enterprises, Inc.*, 204 Ill. 2d 92, 96 (2003)).

¶ 19        The Biometric Privacy Information Act (740 ILCS 14/1 *et seq.* (West 2016)), on which counts I and II of Rosenbach's complaint are founded, was enacted in 2008 to help regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* § 5(g). The Act defines "biometric identifier" to mean "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* § 10. "Biometric information" means "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.* It is undisputed that the thumbprint collected by defendants from Rosenbach's son, Alexander, when they processed his season pass constituted a biometric identifier subject to the Act's provisions and that the electronically stored version of his thumbprint constituted biometric information within the meaning of the law.

¶ 20        Section 15 of the Act (*id.* § 15) imposes on private entities such as defendants various obligations regarding the collection, retention, disclosure, and destruction of biometric indentifiers and biometric information. Among these is the following:

FILED DATE: 1/28/2019 4:17 PM   2018CH07161

"(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." *Id.* § 15(b).

¶ 21    These provisions are enforceable through private rights of action. Specifically, section 20 of the Act provides that "[a]ny person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party." *Id.* § 20. Section 20 further provides that

"[a] prevailing party may recover for each violation:

(1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;

(2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;

(3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and

(4) other relief, including an injunction, as the State or federal court may deem appropriate." *Id.*

¶ 22    As noted earlier in this opinion, Rosenbach's complaint alleges that defendants violated the provisions of section 15 of the Act when it collected her son's

FILED DATE: 1/28/2019 4:17 PM    2018CH07161

thumbprint without first following the statutorily prescribed protocol. For the purposes of this appeal, the existence of those violations is not contested. The basis for defendants' current challenge is that no other type of injury or damage to Rosenbach's son has been alleged. Rosenbach seeks redress on her son's behalf and on behalf of a class of similarly situated individuals based solely on defendants' failure to comply with the statute's requirements. In defendants' view, that is not sufficient. They contend that an individual must have sustained some actual injury or harm, apart from the statutory violation itself, in order to sue under the Act. According to defendants, violation of the statute, without more, is not actionable.

¶ 23    While the appellate court in this case found defendants' argument persuasive, a different district of the appellate court subsequently rejected the identical argument in *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175. We reject it as well, as a recent federal district court decision correctly reasoned we might do. *In re Facebook Biometric Information Privacy Litigation*, 326 F.R.D. 535, 545-47 (N.D. Cal. 2018).

¶ 24    We begin our analysis with basic principles of statutory construction. When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. That intent is best determined from the plain and ordinary meaning of the language used in the statute. When the statutory language is plain and unambiguous, we may not depart from the law's terms by reading into it exceptions, limitations, or conditions the legislature did not express, nor may we add provisions not found in the law. *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 37-38 (2009).

¶ 25    Defendants read the Act as evincing an intention by the legislature to limit a plaintiff's right to bring a cause of action to circumstances where he or she has sustained some actual damage, beyond violation of the rights conferred by the statute, as the result of the defendant's conduct. This construction is untenable. When the General Assembly has wanted to impose such a requirement in other situations, it has made that intention clear. Section 10a(a) of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/10a(a) (West 2016)) is an example. To bring a private right of action under that law, actual damage to the plaintiff must be alleged. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002); *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018).

FILED DATE: 1/28/2019 4:17 PM   2018CH07161

¶ 26      In contrast is the AIDS Confidentiality Act (410 ILCS 305/1 *et seq.* (West 2016)). There, the legislature authorized private rights of action for monetary relief, attorney fees, and such other relief as the court may deem appropriate, including an injunction, by any person "aggrieved" by a violation of the statute or a regulation promulgated under the statute. *Id.* § 13. Proof of actual damages is not required in order to recover. *Doe v. Chand*, 335 Ill. App. 3d 809, 822 (2002).

¶ 27      Section 20 of the Act (740 ILCS 14/20 (West 2016)), the provision that creates the private right of action on which Rosenbach's cause of action is premised, clearly follows the latter model. In terms that parallel the AIDS Confidentiality Act, it provides simply that "[a]ny person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party." *Id.*

¶ 28      Admittedly, this parallel, while instructive (*Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25), is not dispositive. Separate acts with separate purposes need not, after all, define similar terms in the same way. Rather, " 'the same word may mean one thing in one statute and something different in another, dependent upon the connection in which the word is used, the object or purpose of the statute, and the consequences which probably will result from the proposed construction. [Citations.]' " *People v. Ligon*, 2016 IL 118023, ¶ 26 (quoting *Mack v. Seaman*, 113 Ill. App. 3d 151, 154 (1983)). Accepted principles of statutory construction, however, compel the conclusion that a person need not have sustained actual damage beyond violation of his or her rights under the Act in order to bring an action under it.

¶ 29      As with the AIDS Confidentiality Act, the Act does not contain its own definition of what it means to be "aggrieved" by a violation of the law. Where, as here, a statutory term is not defined, we assume the legislature intended for it to have its popularly understood meaning. Likewise, if a term has a settled legal meaning, the courts will normally infer that the legislature intended to incorporate that established meaning into the law. *People v. Johnson*, 2013 IL 114639, ¶ 9. Applying these canons of construction, it is clear that defendants' challenge to Rosenbach's right to bring suit on behalf of her son is meritless.

¶ 30      More than a century ago, our court held that to be aggrieved simply "means having a substantial grievance; a denial of some personal or property right." *Glos v.*

FILED DATE: 1/28/2019 4:17 PM   2018CH07161

*People*, 259 Ill. 332, 340 (1913). A person who suffers actual damages as the result of the violation of his or her rights would meet this definition of course, but sustaining such damages is not necessary to qualify as "aggrieved." Rather, "[a] person is prejudiced or aggrieved, in the legal sense, when a legal right is invaded by the act complained of *or* his pecuniary interest is directly affected by the decree or judgment." (Emphasis added.) *Id.*

¶ 31     This understanding of the term has been repeated frequently by Illinois courts and was embedded in our jurisprudence when the Act was adopted. See *American Surety Co. v. Jones*, 384 Ill. 222, 229-30 (1943); *In re Estate of Hinshaw*, 19 Ill. App. 2d 239, 255 (1958); *In re Estate of Harmston*, 10 Ill. App. 3d 882, 885 (1973); *Greeling v. Abendroth*, 351 Ill. App. 3d 658, 662 (2004). We must presume that the legislature was aware of that precedent and acted accordingly. See *People v. Cole*, 2017 IL 120997, ¶ 30.

¶ 32     The foregoing understanding of the term is also consistent with standard definitions of "aggrieved" found in dictionaries, which we may consult when attempting to ascertain the plain and ordinary meaning of a statutory term where, as here, the term has not been specifically defined by the legislature. *In re M.I.*, 2016 IL 120232, ¶ 26. Merriam-Webster's Collegiate Dictionary, for example, defines aggrieved as "suffering from an infringement or denial of legal rights." Merriam-Webster's Collegiate Dictionary 25 (11th ed. 2006). Similarly, the leading definition given in Black's Law Dictionary is "having legal rights that are adversely affected." Black's Law Dictionary 77 (9th ed. 2009). This is therefore the meaning we believe the legislature intended here.

¶ 33     Based upon this construction, the appellate court's response to the certified questions was incorrect. Through the Act, our General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information. See *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 953 (N.D. Cal. 2018). The duties imposed on private entities by section 15 of the Act (740 ILCS 14/15 (West 2016)) regarding the collection, retention, disclosure, and destruction of a person's or customer's biometric identifiers or biometric information define the contours of that statutory right. Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person

- 10 -

FILED DATE: 1/28/2019 4:17 PM   2018CH07161

or customer whose biometric identifier or biometric information is subject to the breach. Consistent with the authority cited above, such a person or customer would clearly be "aggrieved" within the meaning of section 20 of the Act (*id.* § 20) and entitled to seek recovery under that provision. No additional consequences need be pleaded or proved. The violation, in itself, is sufficient to support the individual's or customer's statutory cause of action.

¶ 34  In reaching a contrary conclusion, the appellate court characterized violations of the law, standing alone, as merely "technical" in nature. 2017 IL App (2d) 170317, ¶ 23. Such a characterization, however, misapprehends the nature of the harm our legislature is attempting to combat through this legislation. The Act vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent. *Patel*, 290 F. Supp. 3d at 953. These procedural protections "are particularly crucial in our digital world because technology now permits the wholesale collection and storage of an individual's unique biometric identifiers—identifiers that cannot be changed if compromised or misused." *Id.* at 954. When a private entity fails to adhere to the statutory procedures, as defendants are alleged to have done here, "the right of the individual to maintain [his or] her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized." *Id.* This is no mere "technicality." The injury is real and significant.

¶ 35  This construction of the law is supported by the General Assembly's stated assessment of the risks posed by the growing use of biometrics by businesses and the difficulty in providing meaningful recourse once a person's biometric identifiers or biometric information has been compromised. In enacting the law, the General Assembly expressly noted that

> "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS 14/5(c) (West 2016).

FILED DATE: 1/28/2019 4:17 PM  2018CH07161

The situation is particularly concerning, in the legislature's judgment, because "[t]he full ramifications of biometric technology are not fully known." *Id.* § 5(f).

¶ 36    The strategy adopted by the General Assembly through enactment of the Act is to try to head off such problems before they occur. It does this in two ways. The first is by imposing safeguards to insure that individuals' and customers' privacy rights in their biometric identifiers and biometric information are properly honored and protected to begin with, before they are or can be compromised. The second is by subjecting private entities who fail to follow the statute's requirements to substantial potential liability, including liquidated damages, injunctions, attorney fees, and litigation expenses "for each violation" of the law (*id.* § 20) whether or not actual damages, beyond violation of the law's provisions, can be shown.

¶ 37    The second of these two aspects of the law is as integral to implementation of the legislature's objectives as the first. Other than the private right of action authorized in section 20 of the Act, no other enforcement mechanism is available. It is clear that the legislature intended for this provision to have substantial force. When private entities face liability for failure to comply with the law's requirements without requiring affected individuals or customers to show some injury beyond violation of their statutory rights, those entities have the strongest possible incentive to conform to the law and prevent problems before they occur and cannot be undone. Compliance should not be difficult; whatever expenses a business might incur to meet the law's requirements are likely to be insignificant compared to the substantial and irreversible harm that could result if biometric identifiers and information are not properly safeguarded; and the public welfare, security, and safety will be advanced. That is the point of the law. To require individuals to wait until they have sustained some compensable injury beyond violation of their statutory rights before they may seek recourse, as defendants urge, would be completely antithetical to the Act's preventative and deterrent purposes.

¶ 38    In sum, defendants' contention that redress under the Act should be limited to those who can plead and prove that they sustained some actual injury or damage beyond infringement of the rights afforded them under the law would require that we disregard the commonly understood and accepted meaning of the term "aggrieved," depart from the plain and, we believe, unambiguous language of the

FILED DATE: 1/28/2019 4:17 PM   2018CH07161

law, read into the statute conditions or limitations the legislature did not express, and interpret the law in a way that is inconsistent with the objectives and purposes the legislature sought to achieve. That, of course, is something we may not and will not do. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83 (1994); *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 275 (2009).

¶ 39                                    CONCLUSION

¶ 40        For the foregoing reasons, we hold that the questions of law certified by the circuit court must be answered in the affirmative. Contrary to the appellate court's view, an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act. The judgment of the appellate court is therefore reversed, and the cause is remanded to the circuit court for further proceedings.

¶ 41        Certified questions answered.

¶ 42        Appellate court judgment reversed.

¶ 43        Cause remanded.

- 13 -

19

Order              (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Marya, et al.

v.

Northwestern Lake Forest Hospital, et al.

No. 18-CH-07161

### ORDER

This case coming to be heard for status, counsel for all Parties present and the Court being duly advised on the premises, all Defendants shall answer or otherwise plead by April 12, 2019.

This case is set for status on April 22, 2019 at 9:30 am.

It is so ordered.

> ENTERED
> Judge Neil H. Cohen-2021
> FEB 20 2019
> DOROTHY BROWN
> CLERK OF THE CIRCUIT COURT
> OF COOK COUNTY, IL
> DEPUTY CLERK

Attorney No.: 43734

Name: Stephan Zouras, LLP

Atty. for: Pls

Address: 100 N. Riverside Plz. Ste. 2150

City/State/Zip: Chicago, IL 60606

Telephone: 312-233-1550

ENTERED:

Dated: 2/20/19

Judge            Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

20

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
4/3/2019 2:01 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

|  |  |  |
|---|---|---|
| **YANA MAZYA, individually, and on behalf of all others similarly situated,** | ) |  |
|  | ) |  |
|  | ) |  |
| **Plaintiff,** | ) | **Case No. 18-CH-07161** |
|  | ) |  |
| **v.** | ) | **Honorable Judge Neil H. Cohen** |
|  | ) |  |
| **NORTHWESTERN LAKE FOREST HOSPITAL, NORTHWESTERN MEMORIAL HEALTHCARE, OMNICELL, INC. and BECTON DICKINSON,** | ) | |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| **Defendants.** | ) |  |
|  | ) |  |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on <u>**Wednesday, April 10, 2019** at **10:00 a.m.**</u> or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge Neil H. Cohen, or any judge sitting in his stead, in the courtroom usually occupied by him at 50 West Washington, Chicago, Illinois, Room 2308, and present **PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT.**

Respectfully submitted,

*/s/ Catherine T. Mitchell*
Catherine T. Mitchell
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
Telephone: 312-233-1550
Firm ID: 43734
cmitchell@stephanzouras.com

FILED DATE: 4/3/2019 2:01 PM   2018CH07161

FILED DATE: 4/3/2019 2:01 PM 2018CH07161

**CERTIFICATE OF SERVICE**

    I, an attorney, hereby certify that on April 3, 2019 a true and correct copy of the foregoing PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT was electronically filed via this Court's electronic filing system and will send notification of such filing to the listed attorneys of record.

                                      *s/ Catherine T. Mitchell*

2

Return Date: No return date scheduled
Hearing Date: 4/10/2019 10:00 AM - 10:00 AM
Courtroom Number:
Location:

FILED
4/3/2019 1:35 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| YANA MAZYA, individually, and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| NORTHWESTERN LAKE FOREST HOSPITAL, NORTHWESTERN MEMORIAL HEALTHCARE, OMNICELL, INC. and BECTON DICKINSON, | ) ) ) ) |
| Defendants. | ) ) ) |

Case No. 18-CH-07161

Honorable Neil H. Cohen

## PLAINTIFF'S MOTION FOR LEAVE TO FILE
## FIRST AMENDED COMPLAINT

Plaintiff Yana Mazya, by and through counsel, moves this Honorable Court for leave to file Plaintiff's First Amended Complaint pursuant to the Illinois Rules of Civil Procedure, 735 ILCS 5/2-616. In support thereof, Plaintiff states as follows:

1.     On June 6, 2018, Plaintiff filed a Class Action Complaint seeking damages for Defendants' alleged violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* (Dkt. No. 1). In particular, Plaintiff alleged that Defendants unlawfully collect, store, use and disseminate employees' biometric data in violation of BIPA. *Id.* at ¶¶ 8-10.

2.     This case was stayed pending the Illinois Supreme Court's decision in *Rosenbach v. Six Flags Entertainment Corp.*, No. 123186, which was rendered on January 25, 2019.

3.     On February 20, 2019, the Court entered an Order requiring that all Defendants answer Plaintiff's Complaint, or otherwise plead, by April 12, 2019.

1

FILED DATE: 4/3/2019 1:35 PM   2018CH07161

4.      On March 16, 2019, Plaintiff's Counsel was retained by Tiki Taylor, who was employed by Defendant Northwestern Memorial Healthcare as an hourly-paid Patient Care Technician at Northwestern Memorial Hospital, and whose biometrics were also unlawfully collected, stored, used and disseminated by Defendants during the relevant time period.

5.      Plaintiff seeks to amend her Complaint in order to add a Named Plaintiff, Tiki Taylor, as well as a Defendant, Northwestern Memorial Hospital, and to refine and narrow Plaintiffs' claims.

6.      The Illinois Rules of Civil Procedure set forth a liberal policy for allowing a plaintiff to amend a complaint. *See* 735 ILCS 5/2-616.

7.      The interests of justice are served by allowing Plaintiff to amend her Complaint.

8.      Counsel for Plaintiff has reached out to Counsel for all Defendants regarding any opposition to Plaintiff's Motion, and: (i) Defendant Omnicell, Inc. does not oppose Plaintiff's Motion, upon stipulation that Defendant Omnicell's response to Plaintiff's original Complaint will be stayed until the instant Motion is resolved, and should the Court grant Plaintiff's Motion, Defendant Omnicell will have thirty (30) days from the date of filing to respond to Plaintiff's First Amended Complaint; and (ii) Defendant Becton Dickenson and Company opposes Plaintiff's Motion.

For the foregoing reasons, Plaintiff respectfully requests this Honorable Court grant her leave to file her First Amended Complaint, attached hereto as Exhibit A.

Date:   April 3, 2019                    Respectfully Submitted,

                                         */s/ Catherine T. Mitchell*

                                         Ryan F. Stephan
                                         James B. Zouras
                                         Catherine T. Mitchell
                                         **STEPHAN ZOURAS, LLP**

2

FILED DATE: 4/3/2019 1:35 PM   2018CH07161

100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
Firm ID: 43734
cmitchell@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE CLASS MEMBERS**

FILED DATE: 4/3/2019 1:35 PM   2018CH07161

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on April 3, 2019, I electronically filed the attached with the Clerk of the Court using the electronic filing system and will send such filing to all attorneys of record.

/s/ Catherine T. Mitchell

4

Return Date: No return date scheduled
Hearing Date: 4/10/2019 10:00 AM - 10:00 AM
Courtroom Number:
Location:

FILED
4/3/2019 1:35 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

FILED DATE: 4/3/2019 1:35 PM    2018CH07161

# EXHIBIT A

FILED DATE: 4/3/2019 1:35 PM 2018CH07161

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| YANA MAZYA and TIKI TAYLOR, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 18-CH-07161 |
| v. | ) ) ) | Honorable Neil H. Cohen |
| NORTHWESTERN LAKE FOREST HOSPITAL, NORTHWESTERN MEMORIAL HEALTHCARE, NORTHWESTERN MEMORIAL HOSPITAL, OMNICELL, INC. and BECTON DICKINSON, | ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

### FIRST AMENDED CLASS ACTION COMPLAINT

Named Plaintiffs, Yana Mazya and Tiki Taylor ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class"), by and through their attorneys, bring the following Class Action Complaint ("Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against Northwestern Medical Lake Forest Hospital, Northwestern Memorial Hospital and Northwestern Memorial HealthCare (together, "Northwestern"), Omnicell, Inc. and Becton, Dickinson and Company ("BD") (collectively, "Defendants"), their subsidiaries and affiliates, to redress and curtail Defendants' unlawful collection, use, storage, and disclosure of Plaintiffs' sensitive biometric data. Plaintiffs allege as follows upon personal knowledge as to themselves, their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

FILED DATE: 4/3/2019 1:35 PM   2018CH07161

## NATURE OF THE ACTION

1.      Defendant Northwestern Memorial Healthcare ("NMHC") is a not-for-profit corporation organized and existing under the laws of the State of Illinois. NMHC, through its subsidiaries, is an academic and integrated healthcare system headquartered in Chicago, Illinois.

2.      Defendant Northwestern Medical Lake Forest Hospital ("NLFH") is a not-for-profit corporation organized and existing under the laws of the State of Illinois. NLFH is a community-based hospital located at 1000 N Westmoreland Road, Lake Forest, Illinois 60045. Upon information and belief, NMHC is the hospital's parent company.

3.      Defendant Northwestern Memorial Hospital ("NMH") is a not-for-profit corporation organized and existing under the laws of the State of Illinois. NMH is an academic medical center hospital located at 251 E Huron Street, Chicago, Illinois 60611. Upon information and belief, NMHC is the hospital's parent company.

4.      When Northwestern hires an employee, he or she is enrolled in an employee database. Northwestern uses the employee database to monitor authorized access to stored materials (*i.e.* – medications) by its employees.

5.      Northwestern employees are required to have their fingerprints scanned by a biometric device to be able to gain authorized access to stored materials. (*See, i.e.*, Exhibit A – New Hire Checklist).

6.      For example, Northwestern uses medication dispensing systems (*i.e.* – BD Pyxis and Omnicell) that require workers to scan a fingerprint before gaining access to stored materials.

7.      Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Defendants – and financial institutions have incorporated biometric applications into their

FILED DATE: 4/3/2019 1:35 PM    2018CH07161

workplace in the form of biometric timeclocks or authenticators, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

8.     Unlike identification badges – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each employee. This exposes Northwestern employees to serious and irreversible privacy risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Google+, Equifax, Uber, Facebook/Cambridge Analytica, and Marriott data breaches or misuses – employees have **_no_** means by which to prevent identity theft, unauthorized tracking, and other improper or unlawful use of this information.

9.     In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* www.opm.gov/cybersecurity/cybersecurity-incidents.

10.     An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including handprints, fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259f138.

11.     In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira,

FILED DATE: 4/3/2019 1:35 PM 2018CH07161

*Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

12.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate the collection and storage of Illinois citizens' biometrics, such as fingerprints.

13.     Notwithstanding the clear and unequivocal requirements of the law, Defendants disregard these employees' statutorily protected privacy rights and unlawfully collect, store, use and disseminate their biometric data in violation of BIPA. Specifically, each Defendant has violated and continues to violate BIPA because they did not and continue not to:

    a.     Properly inform Plaintiffs and others similarly situated in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by BIPA;

    b.     Receive a written release from Plaintiffs and others similarly situated to collect, store, or otherwise use their fingerprints, as required by BIPA;

    c.     Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' and other similarly-situated individuals' fingerprints, as required by BIPA; and

    d.     Obtain consent from Plaintiffs and others similarly situated to disclose, redisclose, or otherwise disseminate their fingerprints to a third party, as required by BIPA.

14.     Accordingly, Plaintiffs, on behalf of themselves as well as the putative Class, seek an Order: (1) declaring that Defendants' conduct violates BIPA; (2) requiring Defendants to cease the unlawful activities discussed herein; and (3) awarding liquidated damages to Plaintiffs and the proposed Class.

## PARTIES

15.     Plaintiff Yana Mazya is a natural person and a citizen of the State of Illinois.

4

FILED DATE: 4/3/2019 1:35 PM   2018CH07161

16.     Plaintiff Tiki Taylor is a natural person and a citizen of the State of Illinois.

17.     Defendant Northwestern Medical Lake Forest Hospital is an Illinois not-for-profit corporation, and a subsidiary of NMHC, that is registered with the Illinois Secretary of State and conducts business in the State of Illinois.

18.     Defendant Northwestern Memorial Hospital is an Illinois not-for-profit corporation, and subsidiary of NMHC, that is registered with the Illinois Secretary of State and conducts business in the State of Illinois.

19.     Defendant Northwestern Memorial HealthCare is an Illinois not-for-profit corporation that is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

20.     Defendant Omnicell, Inc. is a Delaware corporation that is registered to do business in Illinois.

21.     Defendant Becton, Dickinson and Company is a New Jersey corporation that is registered to do business in Illinois.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over Defendants pursuant to 735 ILCS § 5/2-209 because they conduct business transactions in Illinois, have committed statutory violations and tortious acts in Illinois, and are registered to conduct business in Illinois.

23.     Venue is proper in Cook County because Defendants are authorized to conduct business in this State, Defendants conduct business transactions in Cook County, and Defendants committed the statutory violations alleged herein in Cook County and throughout Illinois.

5

FILED DATE: 4/3/2019 1:35 PM   2018CH07161

## FACTUAL BACKGROUND

**I.    The Biometric Information Privacy Act.**

24.    In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

25.    In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

26.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

27.    Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent

FILED DATE: 4/3/2019 1:35 PM   2018CH07161

violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

28.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

>    a.   Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;
>
>    b.   Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
>    c.   Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS 14/15(b).

29.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

30.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

31.     BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or

7

FILED DATE: 4/3/2019 1:35 PM    2018CH07161

biometric information without first obtaining consent for such disclosures. *See* 740 ILCS 14/15(d)(1).

32.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

33.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at a heightened risk for identity theft and left without any recourse.

34.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

35.     Plaintiffs, like the Illinois legislature, recognize how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

FILED DATE: 4/3/2019 1:35 PM   2018CH07161

## II.    Defendants Violate the Biometric Information Privacy Act.

36.    By the time BIPA passed through the Illinois Legislature in mid-2008, most companies who had experimented using individuals' biometric data stopped doing so.

37.    However, Defendants failed to take note of the shift in Illinois law governing the collection, use and dissemination of biometric data. As a result, Defendants continue to collect, store, use and disseminate individuals' biometric data in violation of BIPA.

38.    Specifically, when employees are hired, Northwestern requires them to have their fingerprints scanned to enroll them in Northwestern's, BD's Pyxis and/or Omnicell's database(s).

39.    Northwestern uses an authentication system that requires employees to use their fingerprint as a means of authentication to gain access to stored materials.  Thus, employees have to use their fingerprints multiple times each day whenever they need to access these materials.

40.    Upon information and belief, Northwestern fails to inform their employees that it discloses employees' fingerprint data to at least two out-of-state third-party vendors, Omnicell and BD; fails to inform their employees that it discloses their fingerprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to inform their employees of the purposes and duration for which it collects employees' sensitive biometric data; and fails to obtain written releases from employees before collecting their fingerprints.

41.    Likewise, Omnicell and BD fail to inform Plaintiffs of the purposes and duration for which it collects their sensitive biometric data and fails to obtain written releases from workers before collecting their fingerprints.

42.    Furthermore, each Defendant fails to provide employees with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying

FILED DATE: 4/3/2019 1:35 PM    2018CH07161

employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

43.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA, highlights why such conduct – where individuals are aware that they are providing a fingerprint, but not aware of to whom or for what purposes they are doing so – is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as a fingerprint, who exactly is collecting their biometric data, where it will be transmitted, for what purposes, and for how long. Each Defendant disregards these obligations and Plaintiffs' statutory rights and instead unlawfully collects, stores, uses and disseminates Plaintiffs' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

44.     Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiffs' and other similarly-situated individuals' biometric data and has not and will not destroy Plaintiffs' and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with each company.

45.     Plaintiffs and other similarly-situated individuals are not told what might happen to their biometric data if and when any Defendant merges with another company, or worse, if and when any of the Defendant's entire organization folds.

46.     Since Defendants neither publish a BIPA-mandated data retention policy nor disclose the purposes for their collection of biometric data, Northwestern's employees have no idea whether any of the Defendants sell, disclose, re-disclose, or otherwise disseminate their biometric data. Nor are Plaintiffs and the putative Class told to whom either Defendant currently

discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

47.     These violations have raised a material risk that Plaintiffs' and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

48.     By and through the actions detailed above, Defendants disregard Plaintiffs' and other similarly-situated individuals' legal rights in violation of BIPA.

**III.    Named Plaintiffs' Experience**

49.     Named Plaintiff Yana Mazya worked for Northwestern as a registered nurse at Northwestern Memorial Lake Forest Hospital, which is located at 1000 N Westmoreland Road, Lake Forest, Illinois 60045 from November 12, 2012 until December 4, 2017.

50.     Named Plaintiff Tiki Taylor worked for Northwestern as a Patient Care Technician at Northwestern Memorial Hospital, which is located at 251 E Huron Street, Chicago, Illinois 60611 from August of 2016 to June of 2017.

51.     As a condition of employment with Northwestern, Plaintiffs *were required* to scan their fingerprint so Northwestern could use it as an authorization method to allow access to stored materials. (*See, i.e.,* Ex. A).

52.     Defendants subsequently stored Plaintiffs' fingerprint data in their BD's Pyxis and/or Omnicell's database(s).

53.     Each time Plaintiffs needed to gain access to stored materials, they were required to scan their fingerprint.

54.     Plaintiffs have never been informed of the specific limited purposes or length of time for which any Defendant collected, stored, used and/or disseminated their biometric data.

FILED DATE: 4/3/2019 1:35 PM   2018CH07161

FILED DATE: 4/3/2019 1:35 PM   2018CH07161

55.     Plaintiffs have never been informed of any biometric data retention policy developed by any Defendant, nor have they ever been informed of whether any Defendant will ever permanently delete their biometric data.

56.     Plaintiffs have never been informed that their biometric data was being shared with Omnicell, BD and/or any other third-party vendors.

57.     Plaintiffs have never been provided with, nor ever signed, a written release allowing any Defendant to collect, store, use or disseminate their biometric data.

58.     Plaintiffs have continuously and repeatedly been exposed to the risks and harmful conditions created by each Defendant's violations of BIPA as alleged herein.

59.     No amount of time or money can compensate Plaintiffs if their biometric data is compromised by the lax procedures through which Defendants captured, stored, used, and disseminated their and other similarly-situated individuals' biometrics. Moreover, Plaintiffs would not have provided their biometric data to Defendants if they had known that they would retain such information for an indefinite period of time without their consent.

60.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act"). Nonetheless, Plaintiffs have been aggrieved because they suffered an injury-in-fact based on Defendants' violations of their legal rights. Additionally, Plaintiffs suffered an invasion of a legally protected interest when Defendants secured their personal and private biometric data at a time when they had no right to do so, a gross invasion of their rights to privacy.

FILED DATE: 4/3/2019 1:35 PM    2018CH07161

BIPA protects workers like Plaintiffs from this precise conduct, and Defendants had no lawful right to secure this data or share it with third parties absent a specific legislative license to do so.

61.     Plaintiffs' biometric information is economically valuable, and such value will increase as the commercialization of biometrics continues to grow. As such, Plaintiffs were not sufficiently compensated by Defendants for their retention and use of their and other similarly-situated employees' biometric data. Plaintiffs would not have agreed to work for Defendants for the compensation they received if they had known that Defendants would retain their biometric data indefinitely.

62.     Plaintiffs also suffered an informational injury because Defendants failed to provide them with information to which they were entitled by statute. Through BIPA, the Illinois legislature has created a right: an employee's right to receive certain information prior to an employer securing their highly personal, private and proprietary biometric data; and an injury – not receiving this extremely critical information.

63.     Plaintiffs also suffered an injury in fact because each Defendant improperly disseminated their biometric identifiers and/or biometric information to third parties, including but not limited to Omnicell and BD, that hosted the biometric data in their data centers, in violation of BIPA.

64.     Pursuant to 740 ILCS 14/15(b), Plaintiffs were entitled to receive certain information prior to Defendants securing their biometric data; namely, information advising them of the specific limited purpose(s) and length of time for which each Defendant collects, stores, uses and disseminates their private biometric data; information regarding each Defendant's biometric retention policy; and, a written release allowing each Defendant to collect, store, use and disseminate their private biometric data. By depriving Plaintiffs of this information, Defendants

FILED DATE: 4/3/2019 1:35 PM   2018CH07161

injured them. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

65.    Plaintiffs have plausibly inferred actual and ongoing harm in the form of monetary damages for the value of the collection and retention of their biometric data; in the form of monetary damages by not obtaining additional compensation as a result of being denied access to material information about Defendants' policies and practices; in the form of the unauthorized disclosure of their confidential biometric data to third parties; in the form of interference with their rights to control and possess their confidential biometric data; and in the form of the continuous and ongoing exposure to substantial and irreversible loss of privacy.

66.    As Plaintiffs are not required to allege or prove actual damages in order to state a claim under BIPA, they seek statutory damages under BIPA as compensation for the injuries caused by Defendants. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

67.    Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiffs bring claims on their own behalf and as representatives of all other similarly-situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

68.    As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives

FILED DATE: 4/3/2019 1:35 PM   2018CH07161

a written release executed by the subject of the biometric identifier or biometric information. 740

ILCS 14/15.

69.     Plaintiffs seek class certification under the Illinois Code of Civil Procedure, 735

ILCS 5/2-801, for the following class of similarly situated workers under BIPA:

> All individuals working for Northwestern in the State of Illinois who had their
> fingerprints collected, captured, received, obtained, maintained, stored, or disclosed
> by any Defendant during the applicable statutory period.

70.     This action is properly maintained as a class action under 735 ILCS 5/2-801

because:

A.     The class is so numerous that joinder of all members is impracticable;

B.     There are questions of law or fact that are common to the class;

C.     The claims of the Plaintiffs are typical of the claims of the class; and,

D.     The Plaintiffs will fairly and adequately protect the interests of the class.

### Numerosity

71.     The total number of putative class members exceeds fifty (50) individuals. The

exact number of class members may easily be determined from Northwestern's database.

### Commonality

72.     There is a well-defined commonality of interest in the substantial questions of law

and fact concerning and affecting the Class in that Plaintiffs and all members of the Class have

been harmed by Defendants' failure to comply with BIPA. The common questions of law and fact

include, but not limited to the following:

A.     Whether any Defendant collected, captured or otherwise obtained
Plaintiffs' and the Class's biometric identifiers or biometric information;

B.     Whether any Defendant properly informed Plaintiffs and the Class of its
purposes for collecting, using, storing and disseminating their biometric
identifiers or biometric information;

FILED DATE: 4/3/2019 1:35 PM    2018CH07161

C. Whether any Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, store and disseminate Plaintiffs' and the Class's biometric identifiers or biometric information;

D. Whether any Defendant has disclosed or re-disclosed Plaintiffs' and the Class's biometric identifiers or biometric information;

E. Whether any Defendant has sold, leased, traded, or otherwise profited from Plaintiffs' and the Class's biometric identifiers or biometric information;

F. Whether any Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction with the individual, whichever occurs first;

G. Whether any Defendant complies with any such written policy (if one exists);

H. Whether any Defendant's violations of BIPA have raised a material risk that Plaintiffs' and the putative Class's biometric data will be unlawfully accessed by third parties;

I. Whether any Defendant used Plaintiffs' and the Class's fingerprints to identify them; and

J. Whether the violations of BIPA were committed negligently; and

K. Whether the violations of BIPA were committed intentionally and/or recklessly.

73. Plaintiffs anticipate that Defendants will raise defenses that are common to the class.

## **Adequacy**

74. Plaintiffs will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiffs and class members. Plaintiffs, moreover, have retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

FILED DATE: 4/3/2019 1:35 PM   2018CH07161

**Typicality**

75.     The claims asserted by Plaintiffs are typical of the class members they seek to represent. Plaintiffs have the same interests and suffer from the same unlawful practices as the class members.

76.     Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS 5/2-801.

**Predominance and Superiority**

77.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

78.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent

FILED DATE: 4/3/2019 1:35 PM  2018CH07161

and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

**FIRST CAUSE OF ACTION**
**Violation of BIPA Section 15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule**

79.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

80.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

81.     Each Defendant fails to comply with these BIPA mandates.

82.     Defendant NLFH is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

83.     Defendant NMHC is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

84.     Defendant NMH is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

85.     Defendant Omnicell, Inc. is a Delaware corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

FILED DATE: 4/3/2019 1:35 PM   2018CH07161

86.     Defendant Becton Dickinson and Company is a New Jersey corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

87.     Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected by Defendants (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

88.     Plaintiffs' and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

89.     Each Defendant has failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

90.     Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiffs' and the Class's biometric data and have not and will not destroy Plaintiffs' and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

91.     On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

FILED DATE: 4/3/2019 1:35 PM    2018CH07161

## SECOND CAUSE OF ACTION
### Violation of BIPA Section 15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information

92.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

93.     BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

94.     Each Defendant fails to comply with these BIPA mandates.

95.     Defendant NLFH is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

96.     Defendant NMHC is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

97.     Defendant NMH is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

98.     Defendant Omnicell, Inc. is a Delaware corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

99.     Defendant Becton Dickinson is a New Jersey corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

FILED DATE: 4/3/2019 1:35 PM 2018CH07161

100.   Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected by Defendants (in the form of their fingerprints), as explained in detail in Sections II and III, *supra. See* 740 ILCS 14/10.

101.   Plaintiffs' and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

102.   Each Defendant systematically and automatically collected, used, and stored Plaintiffs' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

103.   Each Defendant did not inform Plaintiffs in writing that their biometric identifiers and/or biometric information were being collected, stored, used, and disseminated, nor did any Defendant inform Plaintiffs in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

104.   By collecting, storing, and using Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

105.   On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to

FILED DATE: 4/3/2019 1:35 PM   2018CH07161

740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## THIRD CAUSE OF ACTION
### Violation of BIPA Section 15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent

106.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

107.    BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

108.    Each Defendant fails to comply with this BIPA mandate.

109.    Defendant NLFH is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

110.    Defendant NMHC is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

111.    Defendant NMH is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

112.    Defendant Omnicell, Inc. is a Delaware corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

113.    Defendant Becton Dickinson is a New Jersey corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

114.    Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected by Defendants (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

FILED DATE: 4/3/2019 1:35 PM   2018CH07161

115. Plaintiffs' and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

116. Each Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiffs' biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

117. By disclosing, redisclosing, or otherwise disseminating Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

118. On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

Wherefore, Named Plaintiffs Yana Mazya and Tiki Taylor respectfully request that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs Yana Mazya and Tiki Taylor as Class Representatives, and appointing Stephan Zouras, LLP, as Class Counsel;

B. Declaring that Defendants' actions, as set forth above, violate BIPA;

23

FILED DATE: 4/3/2019 1:35 PM    2018CH07161

C.     Awarding statutory damages of $5,000 for *each* reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.     Declaring that Defendants' actions, as set forth above, were intentional or reckless;

E.     Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class, including an Order requiring Defendants to collect, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

F.     Awarding Plaintiffs and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

G.     Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and,

H.     Awarding such other and further relief as equity and justice may require.

**JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Date:    April 3, 2019        Respectfully Submitted,

                                    */s/ Catherine T. Mitchell*

                                    Ryan F. Stephan
                                    James B. Zouras
                                    Catherine T. Mitchell
                                    Stephan Zouras, LLP
                                    100 N. Riverside Plaza
                                    Suite 2150
                                    Chicago, Illinois 60606
                                    312.233.1550
                                    312.233.1560 *f*
                                    rstephan@stephanzouras.com
                                    jzouras@stephanzouras.com
                                    cmitchell@stephanzouras.com

                                    **ATTORNEYS FOR PLAINTIFF**

21

Hearing Date: No hearing scheduled
Appearance and Jury Demand*
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

**12-Person Jury**

(10/26/16) CCG N009

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHANCERY _____ DEPARTMENT/ _____ DISTRICT

FILED
4/3/2019 5:10 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

Yana Mazya
_____
                                    **Plaintiff**

                    v.

Northwestern Lake Forest Hospital, et al.
_____
                                    **Defendant**

No. 18-CH-07161

Claimed $: _____

Return Date: _____

Court Date: _____

Room No.: 802 _____

50 W. Washington, Chicago, IL
**Address of Court District for Filing**

FILED DATE: 4/3/2019 5:10 PM   2018CH07161

## APPEARANCE AND JURY DEMAND*

☒ General Appearance   ☒ 0900 - Fee Paid          ☐ 0909 - No Fee
                       ☐ 0904 - Fee Waived        ☐ 0908 - Trial Lawyers Appearance - No Fee

☒ Jury Demand*         ☒ 1900 - Appearance and Jury Demand/Fee Paid   ☐ Twelve-person Jury
                       ☐ 1909 - Appearance and Jury Demand/No Fee Paid  ☐ Six-person Jury

The undersigned enters the appearance of: ☐ Plaintiff   ☒ Defendant

Omnicell, Inc. / by Kristine A. Forderer
_____
(Insert Litigants Name)

Signature

☐ Initial Counsel of Record  ☐ Pro Se (Self-represented)  2810 ☒ Rule 707 Out-of-State Counsel (pro hac vice)
☐ Additional Appearance      ☐ Substitute Appearance

☒ Atty. No.: CA Bar No. 278745  ☐ Pro se 99500

Name: Kristine A. Forderer

Atty for: Defendant Omnicell, Inc.

Address: 101 California Street, 5th Floor

City/State/Zip: San Francisco, CA 94111

Telephone: (415) 693-2000

Primary Email: kforderer@cooley.com

Secondary Email: swarren@cooley.com

Tertiary Email: _____

*Important*

*Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, facsimile transmission (fax), Email transmission or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

<u>Pro Se Only:</u> ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address: _____

*Strike demand for trial by jury if not applicable.

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

Attorney for ☐ Plaintiff ☒ Defendant

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

FILED DATE: 4/3/2019 5:10 PM   2018CH07161

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| YANA MAZYA, individually and on behalf of all others similarly situated | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2018-ch-07161 |
| NORTHWESTERN LAKE FOREST HOSPITAL, NORTHWESTERN MEMORIAL HEALTHCARE, OMNICELL, INC., and BECTON DICKINSON, | ) ) ) ) ) ) | Hon. Judge Cohen |
| Defendants. | ) | |

<u>Verified Statement of Out-of-State Attorney Pursuant to Supreme Court Rule 707</u>

      I, Kristine Forderer, submit this Verified Statement pursuant to Illinois Supreme Court Rule 707.

1.     My full name is Kristine Anne Forderer.  The address of the office from which I practice law and related email address and telephone number are as follows:

      Cooley LLP
      101 California Street, 5th Floor
      San Francisco, CA 94111-5800
      (415) 693-2000
      kforderer@cooley.com

2.     I represent Omnicell, Inc. in *Mazya et al. v. Northwestern Lake Forest Hospital, et al.*, filed in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, Case No. 2018-ch-07161.

3(a).    I have not filed any other appearance pursuant to this rule during this calendar year.

3(b).    My ARDC registration number is 6329133.

4(a).    I list each jurisdiction of admission, including any state, territory, or commonwealth of the United States, the District of Columbia, or in a foreign country, and my full admission name and license number.

1

FILED DATE: 4/3/2019 5:10 PM    2018CH07161

California – Kristine Anne Forderer, Bar No. 278745.

4(b).    I attach a letter or certificate of good standing for each of the jurisdictions listed in paragraph 4(a), above.

5.    I have no office or other presence in Illinois for the practice of law.

6.    I submit to the disciplinary authority of the Supreme Court of Illinois.

7.    I have undertaken to become familiar with and to comply, as if admitted to practice in Illinois, with the rules of the Supreme Court of Illinois, including the Illinois Rules of Professional Conduct and the Supreme Court Rules on Admission and Discipline of Attorneys, and other Illinois law and practices that pertain to the proceeding.

8.    The full name, business address and ARDC number of the Illinois attorney with whom I have associated in the matter is:

> Jeffrey T. Norberg
> Neal & McDevitt, LLC
> 1776 Ash Street
> Northfield, Illinois 60093
> (847) 881-2468
> ARDC Number 6315012

9.    I certify that I have caused this Statement to be served upon the following parties and that these parties are all entitled to service under this rule.

> Ryan F. Stephan
> James B. Zouras
> Catherine T. Mitchell
> Stephan Zouras, LLP
> 205 N. Michigan Avenue, Suite 2560
> Chicago, Illinois 60601
> (312) 233-1550
> (312) 233-1560 (fax)
> rstephan@stephanzouras.com
> jzouras@stephanzouras.com
> cmitchell@stephanzouras.com
> *Attorneys for Plaintiff*

FILED DATE: 4/3/2019 5:10 PM   2018CH07161

Melissa A. Siebert
Shook, Hardy & Bacon L.L.P.
111 South Wacker Drive, 51st Floor
Chicago, Illinois 60606
(312) 704-7700
(312) 558-1195 (fax)
masiebert@shb.com
*Attorneys for Defendants Northwestern Lake*
*Forest Hospital and Northwestern Memorial*
*Healthcare*

Gary M. Miller
Shook, Hardy & Bacon L.L.P.
111 South Wacker Drive, 51st Floor
Chicago, Illinois 60606
(312) 704-7700
(312) 558-1195 (fax)
gmiller@shb.com
*Attorneys for Defendant Becton, Dickinson and Company*

Jeffrey T. Norberg
Neal & McDevitt, LLC
1776 Ash Street
Northfield, Illinois 60093
(847) 881-2468
(847) 441-0911 (fax)
jnorberg@nealmcdevitt.com
*Attorneys for Defendant Omnicell, Inc.*

Omnicell, Inc.
R/A Illinois Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

The Administrator of the Attorney Registration and Disciplinary Commission
Rule707@iardc.org

3

FILED DATE: 4/3/2019 5:10 PM   2018CH07161

Verification

I verify the accuracy and completeness of each of the above statements.

Date: April __3__ , 2019

_____
Kristine Anne Forderer

200835196



**THE STATE BAR**
**OF CALIFORNIA**

180 HOWARD STREET, SAN FRANCISCO, CALIFORNIA  94105-1617          TELEPHONE: 888-800-3400

# CERTIFICATE OF STANDING

March 22, 2019

TO WHOM IT MAY CONCERN:

This is to certify that according to the records of the State Bar, KRISTINE ANNE VANHAMERSVELD, #278745 was admitted to the practice of law in this state by the Supreme Court of California on December 2, 2011; that at her request, on March 19, 2014, her name was changed to KRISTINE ANNE FORDERER on the records of the State Bar of California; that she has been since the date of admission, and is at date hereof, an ACTIVE member of the State Bar of California; and that no recommendation for discipline for professional or other misconduct has ever been made by the Board of Trustees or a Disciplinary Board to the Supreme Court of the State of California.

THE STATE BAR OF CALIFORNIA

Dina DiLoreto
Custodian of Records

FILED DATE: 4/3/2019 5:10 PM    2018CH07161

## CERTIFICATE OF SERVICE

I, Kristine Forderer, an attorney, hereby certify that on April 3, 2019, I caused a true and correct copy of the Appearance and Jury Demand; and Verified Statement of Out-of-State Attorney Pursuant to Supreme Court Rule 707 to be served on counsel of record via electronic mail, addressed as follows:

Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
Stephan Zouras, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
(312) 233-1550
(312) 233-1560 (fax)
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
*Attorneys for Plaintiff*

Melissa A. Siebert
Shook, Hardy & Bacon L.L.P.
111 South Wacker Drive, 51st Floor
Chicago, Illinois 60606
(312) 704-7700
(312) 558-1195 (fax)
masiebert@shb.com
*Attorneys for Defendants Northwestern Lake Forest Hospital and Northwestern Memorial Healthcare*

Gary M. Miller
Shook, Hardy & Bacon L.L.P.
111 South Wacker Drive, 51st Floor
Chicago, Illinois 60606
(312) 704-7700
(312) 558-1195 (fax)
gmiller@shb.com
*Attorneys for Defendant Becton, Dickinson and Company*

And by U.S. first class mail, addressed to the following:

Omnicell, Inc.
R/A Illinois Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

Kristine Forderer

200835920

FILED DATE: 4/3/2019 5:10 PM    2018CH07161

22

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
4/8/2019 3:29 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED DATE: 4/8/2019 3:29 PM   2018CH07161

| | |
|---|---|
| YANA MAZYA, individually, and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 18-CH-07161 ) |
| NORTHWESTERN LAKE FOREST HOSPITAL, NORTHWESTERN MEMORIAL HEALTHCARE, OMNICELL, INC. and BECTON DICKINSON AND COMPANY, | ) Judge Neil H. Cohen ) ) ) ) |
| Defendants. | ) ) |

**BECTON, DICKINSON AND COMPANY'S OPPOSITION TO**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

Defendant Becton, Dickinson and Company ("BD") opposes Plaintiff's Motion for Leave to File First Amended Complaint. Despite BD informing Plaintiff that her allegations have no basis in fact, Plaintiff's proposed amended complaint doubles down on her previous false allegations.

BD repeatedly has told Plaintiff and her counsel, including in a sworn statement from a BD Vice President, that BD simply sells or leases devices that include a finger-scanning feature to hospitals like the Northwestern defendants in this case. *See* Ex. 1 (Rule 137 letter sent March 15, 2019 with accompanying Declaration of Nicholas Dopp). Once the devices are sold or leased to BD's hospital customers, they are solely in the hospital's possession. To the extent any biometric identifiers or information are collected or stored by the devices (a point BD disputes), that data is stored locally on the devices itself. Thus, with respect to the hospital defendants in this case, BD has not accessed, possessed, collected, captured, purchased, received through trade, otherwise obtained, or stored any finger scan data that the Northwestern defendants may have collected from their employees who use the devices. *Id.*

4811-5116-2771

FILED DATE: 4/8/2019 3:29 PM    2018CH07161

In other words, this is not a situation where BD stores data collected from Northwestern's employees. To the contrary, BD simply sells or leases devices with a finger-scan feature to customers who then use them however they see fit. *See id.* Nor does BD have any relationship whatsoever with Northwestern employees such as Plaintiff. In fact, BD has no way of knowing who those employees are and therefore could not provide them with notice and consent under BIPA. *See id.*

It is well-established that "an attorney has an obligation to promptly dismiss a lawsuit once it becomes evident that it is baseless." *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.*, 250 Ill. App. 3d 149, 153 (1st Dist. 1993). Despite being on notice of the above facts, Plaintiff's proposed amended complaint actually puts *more* emphasis on the scurrilous facts it previously pled against BD. BD recognizes that Illinois liberally allows the amendment of pleadings, but this is a bridge too far. Plaintiff and her counsel have been put on notice that their allegations are false and plainly have done nothing to further investigate or cure those defects. The Court should not permit amendment under these circumstances.

## CONCLUSION

BD respectfully requests that the Court deny Plaintiff's Motion for Leave to File First Amended Complaint.

2

FILED DATE: 4/8/2019 3:29 PM   2018CH07161

Dated:  April 8, 2019

Respectfully submitted,

BECTON, DICKINSON AND COMPANY

By:  */s/ Matthew C. Wolfe*
             One of Its Attorneys

Gary M. Miller
Matthew C. Wolfe
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive
Chicago, IL  60606
Tel:  (312) 704-7700
gmiller@shb.com
mwolfe@shb.com
Firm No.  58950

***Attorneys for Defendant Becton, Dickinson and Company***

3

4811-5116-2771

FILED DATE: 4/8/2019 3:29 PM   2018CH07161

## CERTIFICATE OF SERVICE

I, Matthew C. Wolfe, an attorney, hereby certify that on April 8, 2019, I caused a true and

correct copy of **BECTON, DICKINSON AND COMPANY'S OPPOSITION TO**

**PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** to be

served on counsel of record via electronic mail, addressed as follows:

| | |
|---|---|
| Ryan F. Stephan | Jeffrey T. Norberg |
| James B. Zouras | NEAL & MCDEVITT LLC |
| Catherine T. Mitchell | 1776 Ash Street |
| STEPHAN ZOURAS, LLP | Northfield, IL 60093 |
| 100 North Riverside Plaza | (847) 881-2488 |
| Suite 2150 | jnorberg@nealmcdevitt.com |
| Chicago, IL 60606 | |
| (312) 233-1550 | Michael G. Rhodes |
| (312) 233-1560 (Fax) | Kristine A. Forderer |
| lawyers@stephanzouras.com | COOLEY LLP |
| rstephan@stephanzouras.com | 101 California Street |
| jzouras@stephanzouras.com | Fifth Floor |
| cmitchell@stephanzouras.com | San Francisco, CA 94111-5800 |
| | (415) 693-2000 |
| ***Attorneys for Plaintiff*** | ejohnson@cooley.com |
| | rhodesmg@cooley.com |
| | kforderer@cooley.com |
| | |
| | ***Attorneys for Defendant Omnicell, Inc*** |

Joel C. Griswold
Bonnie K. Del Gobbo
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite. 300
Chicago, IL 60606
(312) 416-6200
jcgriswold@bakerlaw.com
bdelgobbo@bakerlaw.com

***Attorneys for Defendants Northwestern Lake***
***Forest Hospital and Northwestern Memorial***
***Healthcare, Inc.***


_/s/ Matthew C. Wolfe_____

FILED DATE: 4/8/2019 3:29 PM   2018CH07161

# EXHIBIT 1

FILED DATE: 4/8/2019 3:29 PM   2018CH07161

**SHOOK**
HARDY & BACON

March 15, 2019

Matthew C. Wolfe

**BY ELECTRONIC MAIL**

111 South Wacker Drive
Chicago, Illinois 60606
**t** 312.704.7700
**f** 312.558.1195
mwolfe@shb.com

Ryan F. Stephan
James B. Zouras
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza
Suite 2150
Chicago, IL 60606
rstephan@stephanzouras.com
jzouras@stephanzouras.com

Re:  **Motion for Sanctions under Illinois Supreme Court Rule 137 in**
*Mosby v. Ingalls Mem'l Health & Hosp. Div., Inc., et al.*,
**Case No. 2018-CH-05031 (Cook Cty. Ill. Cir. Ct.);**
*Mazya v. Northwestern Lake Forest Hospital, et al.*,
**Case No. 2018-CH-07161 (Cook Cty. Ill. Cir. Ct.)**

Counsel:

I write on behalf of Defendant Becton, Dickinson & Co. ("Becton Dickinson") to notify you of our intention to move for sanctions under Illinois Supreme Court Rule 137 in connection with your refusal to dismiss Becton Dickinson from the above-referenced actions.

Rule 137 bars attorneys from signing and filing a pleading unless, "to the best of [their] knowledge, information, and belief formed after reasonable inquiry," the pleading is "well grounded in fact and [] warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." *See* Ill. S. Ct. Rule 137.

With regard to the Plaintiffs in the above-referenced matters, Becton Dickinson's conduct does not implicate the Illinois Biometric Information Privacy Act ("BIPA"). Becton Dickinson provides the devices at issue. Any biometric information collected by its customers using these devices is stored locally on the devices themselves. Becton Dickinson has never "collect[ed], capture[d] . . . or otherwise obtain[ed]" or been "in possession" of Plaintiffs' biometric information and thus owes no duty to Plaintiffs under BIPA. *See* 740 ILCS 14/15. Moreover, Becton Dickinson has no relationship with Plaintiffs or any Ingalls or Northwestern employees, and thus could not have furnished them notice or procured their written consent. Becton Dickinson has provided you with draft affidavits to this effect, and is providing you with the attached signed affidavit confirming the above facts.

FILED DATE: 4/8/2019 3:29 PM  2018CH07161

# SHOOK
### HARDY & BACON

In naming Becton Dickinson as a defendant, then, your complaint is not "well grounded in fact" or "warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." *See* Ill. S. Ct. Rule 137. Your failure to allege any facts to the contrary only bolsters this conclusion and suggests your actual knowledge of it from the outset.

March 15, 2019
Page 2

Rule 137 requires that "an attorney promptly dismiss a lawsuit once it becomes evident that it is unfounded." *Garlick v. Bloomingdale Twp.*, 2018 IL App (2d) 171013, ¶ 48 (citing *Rankin v. Heidlebaugh*, 321 Ill. App. 3d 255, 267 (5th Dist. 2001)). In signing and filing a frivolous complaint and refusing to release Becton Dickinson once informed of its baselessness, you have violated Rule 137.

Given the above, Becton Dickinson will exercise its rights by filing a Rule 137 motion for sanctions and recovery of costs at the appropriate time. Given that Becton Dickinson is about to incur the expense of briefing motions to dismiss the Complaints against it, we demand that you dismiss the above-referenced cases within seven days. If you do so, Becton Dickinson agrees it will not seek sanctions.

Very Truly Yours,

*Matthew C. Wolfe*

Matthew C. Wolfe

cc:    Gary M. Miller
       Alfred J. Saikali

FILED DATE: 4/8/2019 3:29 PM   2018CH07161

## DECLARATION OF NICHOLAS DOPP

I, Nicholas Dopp, hereby declare under penalty of perjury as follows:

1.      I am over 18 years of age and reside in [San Antonio], [Texas].

2.      I have personal knowledge of the matters set forth herein and could competently testify to those matters if called to do so as a witness in court.

3.      I am employed by Becton, Dickinson and Company ("BD") and hold the position of Vice President, Service & Support, Customer Service Management.

4.      As Vice President, Service & Support, Customer Service Management, I have personal knowledge of BD's product line of Pyxis MedStations ("MedStations") and Pyxis Enterprise Servers ("MedStation Servers").

5.      I also have personal knowledge of BD's relationships with its customers, including Ingalls Memorial Hospital ("Ingalls") and Northwestern Lake Forest Hospital ("Northwestern Lake Forest").

6.      MedStations are secure, automated medicine cabinets that provide access to medication as directed by authorized users.

7.      MedStations can be configured to determine whether a user is authorized by two alternative methods. Under one method, a user must provide an identification code and a password. Under the other method, a user must provide an identification code and an electronic scan of her finger.

8.      MedStations are designed so that BD's customers have a choice between the two authentication methods just described. BD does not make that choice for its customers.

9.      MedStation Servers are computer servers that store data used and collected by MedStations, including data derived from finger scans.  Specifically, when a user scans his or her

FILED DATE: 4/8/2019 3:29 PM   2018CH07161

finger on a MedStation, the fingerprint image is converted into an encrypted string of characters. The encrypted string of characters is referred to herein as "Finger Data." The fingerprint image itself is destroyed and cannot be reused, replayed, or downloaded. The Finger Data cannot be used to re-create fingerprint images.

10.     Ingalls and Northwestern Lake Forest acquired and/or leased MedStations and MedStation Servers from BD.

11.     With respect to the MedStations and MedStation Servers Ingalls and Northwestern Lake Forest acquired from BD, BD potentially could (while providing technical support), but has not, accessed any Finger Data stored on those devices. BD has not accessed, possessed, collected, captured, purchased, received through trade, otherwise obtained, or stored Finger Data or fingerprints, fingerprint scans, fingerprint templates, or any other biometric data allegedly captured by MedStations from the MedStations or MedStation Servers it provided to Ingalls and Northwestern Lake Forest.

12.     To the extent MedStations and MedStation Servers were returned to BD at the conclusion of a lease or otherwise, BD's standard work instruction for returned MedStations and MedStation Servers requires BD to remove the hard drives from those devices and wipe them using military-grade wiping equipment. In doing so, BD does not access any data stored on the MedStations or MedStation Servers.

                    *        *        *

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15 day of March , 2019 at San Antonio, Texas

_____
Nicholas Dopp

2

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
4/10/2019 3:14 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

FILED DATE: 4/10/2019 3:14 PM   2018CH07161

# EXHIBIT A

HR_Gen/130127/Yana Mazya/3240/New Hire- Documentation/11/13/2012/Default/301YWCE_00012LYCJ001929

130127

NLI M
K.Fiester

# Northwestern Memorial® Hospital

## NEW HIRE CHECKLIST

NAME: Yana Mazya    START / TRANSFER DATE: 11/12/12

JOB TITLE: RN

RECRUITER: DOC

Requisition #: 70046    Manager / Interview Date: ▉

Conviction?  Y (N)    SSN: ▉

Previous NM employee?  Y (N)  ID# _____    DOB: 1/19/1982

Right to Work in the US? (Y) N    Marital Status: M

0.6, lat

___ Licensure / Certifications Look Up

___ Verisys Checked

___ Offer Letter and On-Boarding Instructions Sent

___ Talent Plus Test To Manager _____ Result  Y / N

**STILL NEED FROM CANDIDATE:**

___ Illinois License for RN
(or IL Temporary Work Permit)

___ CPR Card

___ "PASS" Letter for RN Grads

___ Other Certifications/Licenses:

___ Educational Degree or Official
Transcript
doc issue

Refs @ completed

**Recruiting Coordinator:**

___ Reference: Date Sent: 10/4   Complete: 10/4

___ Enrolled in BPO  11/12

___ Enrolled in PCO or PCT Course  11/14

___ Professional Experience Date  3/1/11

___ Licensure / Certifications Look Up (2)

___ Licensure / Certifications Entered

___ Highest Level of Education Entered

___ Entered in Person Profiles

___ Entered in Modify a Person

___ Hourly/Annual Salary  27.82

___ Hours and Shift detail  24, 1 PT

___ Sign-on Bonus: _____

___ Pay Dates: _____

___ Date added to spreadsheet: _____

**On-Boarding Process:**

___ Employee Health Clearance verified

___ Fingerprints completed

___ Criminal Background 3019 entered

___ Union Card: NO  YES

___ Non-Licensed Direct Patient Caregiver:
NO  YES

___ Fee App Completed  UCIAL

___ Emergency Contact Information

___ Tax Data

___ ImageNow Documents

___ Direct Deposit

S:\Datastore01\Human Resources\Staffing\Forms\New Hire Paperwork for Front Desk

## APPROVED 11/12/12

FILED DATE: 4/10/2019 3:14 PM  2018CH07161

23

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
4/10/2019 3:14 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07161

FILED DATE: 4/10/2019 3:14 PM   2018CH07161

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

YANA MAZYA and TIKI TAYLOR, )
individually, and on behalf of all others similarly )
situated, )
     )
         **Plaintiff,** )    **Case No. 18-CH-07161**
     )
         **v.** )
     )    **Honorable Neil H. Cohen**
NORTHWESTERN LAKE FOREST )
HOSPITAL, NORTHWESTERN MEMORIAL )    **JURY TRIAL DEMANDED**
HEALTHCARE, NORTHWESTERN )
MEMORIAL HOSPITAL, OMNICELL, INC. )
and BECTON DICKINSON, )
     )
         **Defendants.** )

### FIRST AMENDED CLASS ACTION COMPLAINT

Named Plaintiffs, Yana Mazya and Tiki Taylor ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class"), by and through their attorneys, bring the following Class Action Complaint ("Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against Northwestern Medical Lake Forest Hospital, Northwestern Memorial Hospital and Northwestern Memorial HealthCare (together, "Northwestern"), Omnicell, Inc. and Becton, Dickinson and Company ("BD") (collectively, "Defendants"), their subsidiaries and affiliates, to redress and curtail Defendants' unlawful collection, use, storage, and disclosure of Plaintiffs' sensitive biometric data. Plaintiffs allege as follows upon personal knowledge as to themselves, their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

FILED DATE: 4/10/2019 3:14 PM  2018CH07161

## NATURE OF THE ACTION

1.      Defendant Northwestern Memorial Healthcare ("NMHC") is a not-for-profit corporation organized and existing under the laws of the State of Illinois. NMHC, through its subsidiaries, is an academic and integrated healthcare system headquartered in Chicago, Illinois.

2.      Defendant Northwestern Medical Lake Forest Hospital ("NLFH") is a not-for-profit corporation organized and existing under the laws of the State of Illinois. NLFH is a community-based hospital located at 1000 N Westmoreland Road, Lake Forest, Illinois 60045. Upon information and belief, NMHC is the hospital's parent company.

3.      Defendant Northwestern Memorial Hospital ("NMH") is a not-for-profit corporation organized and existing under the laws of the State of Illinois. NMH is an academic medical center hospital located at 251 E Huron Street, Chicago, Illinois 60611. Upon information and belief, NMHC is the hospital's parent company.

4.      When Northwestern hires an employee, he or she is enrolled in an employee database. Northwestern uses the employee database to monitor authorized access to stored materials (*i.e.* – medications) by its employees.

5.      Northwestern employees are required to have their fingerprints scanned by a biometric device to be able to gain authorized access to stored materials. (*See, i.e.*, Exhibit A – New Hire Checklist).

6.      For example, Northwestern uses medication dispensing systems (*i.e.* – BD Pyxis and Omnicell) that require workers to scan a fingerprint before gaining access to stored materials.

7.      Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Defendants – and financial institutions have incorporated biometric applications into their

FILED DATE: 4/10/2019 3:14 PM    2018CH07161

workplace in the form of biometric timeclocks or authenticators, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

8.    Unlike identification badges – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each employee. This exposes Northwestern employees to serious and irreversible privacy risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Google+, Equifax, Uber, Facebook/Cambridge Analytica, and Marriott data breaches or misuses – employees have __no__ means by which to prevent identity theft, unauthorized tracking, and other improper or unlawful use of this information.

9.    In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* www.opm.gov/cybersecurity/cybersecurity-incidents.

10.    An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including handprints, fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259f138.

11.    In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira,

FILED DATE: 4/10/2019 3:14 PM    2018CH07161

*Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

12.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate the collection and storage of Illinois citizens' biometrics, such as fingerprints.

13.     Notwithstanding the clear and unequivocal requirements of the law, Defendants disregard these employees' statutorily protected privacy rights and unlawfully collect, store, use and disseminate their biometric data in violation of BIPA. Specifically, each Defendant has violated and continues to violate BIPA because they did not and continue not to:

   a.     Properly inform Plaintiffs and others similarly situated in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by BIPA;

   b.     Receive a written release from Plaintiffs and others similarly situated to collect, store, or otherwise use their fingerprints, as required by BIPA;

   c.     Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' and other similarly-situated individuals' fingerprints, as required by BIPA; and

   d.     Obtain consent from Plaintiffs and others similarly situated to disclose, redisclose, or otherwise disseminate their fingerprints to a third party, as required by BIPA.

14.     Accordingly, Plaintiffs, on behalf of themselves as well as the putative Class, seek an Order: (1) declaring that Defendants' conduct violates BIPA; (2) requiring Defendants to cease the unlawful activities discussed herein; and (3) awarding liquidated damages to Plaintiffs and the proposed Class.

## PARTIES

15.     Plaintiff Yana Mazya is a natural person and a citizen of the State of Illinois.

FILED DATE: 4/10/2019 3:14 PM   2018CH07161

16.     Plaintiff Tiki Taylor is a natural person and a citizen of the State of Illinois.

17.     Defendant Northwestern Medical Lake Forest Hospital is an Illinois not-for-profit corporation, and a subsidiary of NMHC, that is registered with the Illinois Secretary of State and conducts business in the State of Illinois.

18.     Defendant Northwestern Memorial Hospital is an Illinois not-for-profit corporation, and subsidiary of NMHC, that is registered with the Illinois Secretary of State and conducts business in the State of Illinois.

19.     Defendant Northwestern Memorial HealthCare is an Illinois not-for-profit corporation that is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

20.     Defendant Omnicell, Inc. is a Delaware corporation that is registered to do business in Illinois.

21.     Defendant Becton, Dickinson and Company is a New Jersey corporation that is registered to do business in Illinois.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over Defendants pursuant to 735 ILCS § 5/2-209 because they conduct business transactions in Illinois, have committed statutory violations and tortious acts in Illinois, and are registered to conduct business in Illinois.

23.     Venue is proper in Cook County because Defendants are authorized to conduct business in this State, Defendants conduct business transactions in Cook County, and Defendants committed the statutory violations alleged herein in Cook County and throughout Illinois.

FILED DATE: 4/10/2019 3:14 PM   2018CH07161

## FACTUAL BACKGROUND

**I.     The Biometric Information Privacy Act.**

24.     In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

25.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

26.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

27.     Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent

FILED DATE: 4/10/2019 3:14 PM   2018CH07161

violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

28.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a.  Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;

    b.  Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    c.  Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS 14/15(b).

29.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

30.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

31.     BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or

FILED DATE: 4/10/2019 3:14 PM   2018CH07161

biometric information without first obtaining consent for such disclosures. *See* 740 ILCS 14/15(d)(1).

32.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

33.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at a heightened risk for identity theft and left without any recourse.

34.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed.  Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

35.     Plaintiffs, like the Illinois legislature, recognize how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

FILED DATE: 4/10/2019 3:14 PM    2018CH07161

## II.    Defendants Violate the Biometric Information Privacy Act.

36.    By the time BIPA passed through the Illinois Legislature in mid-2008, most companies who had experimented using individuals' biometric data stopped doing so.

37.    However, Defendants failed to take note of the shift in Illinois law governing the collection, use and dissemination of biometric data. As a result, Defendants continue to collect, store, use and disseminate individuals' biometric data in violation of BIPA.

38.    Specifically, when employees are hired, Northwestern requires them to have their fingerprints scanned to enroll them in Northwestern's, BD's Pyxis and/or Omnicell's database(s).

39.    Northwestern uses an authentication system that requires employees to use their fingerprint as a means of authentication to gain access to stored materials.  Thus, employees have to use their fingerprints multiple times each day whenever they need to access these materials.

40.    Upon information and belief, Northwestern fails to inform their employees that it discloses employees' fingerprint data to at least two out-of-state third-party vendors, Omnicell and BD; fails to inform their employees that it discloses their fingerprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to inform their employees of the purposes and duration for which it collects employees' sensitive biometric data; and fails to obtain written releases from employees before collecting their fingerprints.

41.    Likewise, Omnicell and BD fail to inform Plaintiffs of the purposes and duration for which it collects their sensitive biometric data and fails to obtain written releases from workers before collecting their fingerprints.

42.    Furthermore, each Defendant fails to provide employees with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying

FILED DATE: 4/10/2019 3:14 PM    2018CH07161

employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

43.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA, highlights why such conduct – where individuals are aware that they are providing a fingerprint, but not aware of to whom or for what purposes they are doing so – is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as a fingerprint, who exactly is collecting their biometric data, where it will be transmitted, for what purposes, and for how long. Each Defendant disregards these obligations and Plaintiffs' statutory rights and instead unlawfully collects, stores, uses and disseminates Plaintiffs' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

44.     Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiffs' and other similarly-situated individuals' biometric data and has not and will not destroy Plaintiffs' and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with each company.

45.     Plaintiffs and other similarly-situated individuals are not told what might happen to their biometric data if and when any Defendant merges with another company, or worse, if and when any of the Defendant's entire organization folds.

46.     Since Defendants neither publish a BIPA-mandated data retention policy nor disclose the purposes for their collection of biometric data, Northwestern's employees have no idea whether any of the Defendants sell, disclose, re-disclose, or otherwise disseminate their biometric data. Nor are Plaintiffs and the putative Class told to whom either Defendant currently

discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

47.     These violations have raised a material risk that Plaintiffs' and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

48.     By and through the actions detailed above, Defendants disregard Plaintiffs' and other similarly-situated individuals' legal rights in violation of BIPA.

**III.    Named Plaintiffs' Experience**

49.     Named Plaintiff Yana Mazya worked for Northwestern as a registered nurse at Northwestern Memorial Lake Forest Hospital, which is located at 1000 N Westmoreland Road, Lake Forest, Illinois 60045 from November 12, 2012 until December 4, 2017.

50.     Named Plaintiff Tiki Taylor worked for Northwestern as a Patient Care Technician at Northwestern Memorial Hospital, which is located at 251 E Huron Street, Chicago, Illinois 60611 from August of 2016 to June of 2017.

51.     As a condition of employment with Northwestern, Plaintiffs *were required* to scan their fingerprint so Northwestern could use it as an authorization method to allow access to stored materials. (*See, i.e.,* Ex. A).

52.     Defendants subsequently stored Plaintiffs' fingerprint data in their BD's Pyxis and/or Omnicell's database(s).

53.     Each time Plaintiffs needed to gain access to stored materials, they were required to scan their fingerprint.

54.     Plaintiffs have never been informed of the specific limited purposes or length of time for which any Defendant collected, stored, used and/or disseminated their biometric data.

FILED DATE: 4/10/2019 3:14 PM   2018CH07161

FILED DATE: 4/10/2019 3:14 PM    2018CH07161

55.     Plaintiffs have never been informed of any biometric data retention policy developed by any Defendant, nor have they ever been informed of whether any Defendant will ever permanently delete their biometric data.

56.     Plaintiffs have never been informed that their biometric data was being shared with Omnicell, BD and/or any other third-party vendors.

57.     Plaintiffs have never been provided with, nor ever signed, a written release allowing any Defendant to collect, store, use or disseminate their biometric data.

58.     Plaintiffs have continuously and repeatedly been exposed to the risks and harmful conditions created by each Defendant's violations of BIPA as alleged herein.

59.     No amount of time or money can compensate Plaintiffs if their biometric data is compromised by the lax procedures through which Defendants captured, stored, used, and disseminated their and other similarly-situated individuals' biometrics. Moreover, Plaintiffs would not have provided their biometric data to Defendants if they had known that they would retain such information for an indefinite period of time without their consent.

60.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act"). Nonetheless, Plaintiffs have been aggrieved because they suffered an injury-in-fact based on Defendants' violations of their legal rights. Additionally, Plaintiffs suffered an invasion of a legally protected interest when Defendants secured their personal and private biometric data at a time when they had no right to do so, a gross invasion of their rights to privacy.

FILED DATE: 4/10/2019 3:14 PM   2018CH07161

BIPA protects workers like Plaintiffs from this precise conduct, and Defendants had no lawful right to secure this data or share it with third parties absent a specific legislative license to do so.

61.     Plaintiffs' biometric information is economically valuable, and such value will increase as the commercialization of biometrics continues to grow. As such, Plaintiffs were not sufficiently compensated by Defendants for their retention and use of their and other similarly-situated employees' biometric data. Plaintiffs would not have agreed to work for Defendants for the compensation they received if they had known that Defendants would retain their biometric data indefinitely.

62.     Plaintiffs also suffered an informational injury because Defendants failed to provide them with information to which they were entitled by statute. Through BIPA, the Illinois legislature has created a right: an employee's right to receive certain information prior to an employer securing their highly personal, private and proprietary biometric data; and an injury – not receiving this extremely critical information.

63.     Plaintiffs also suffered an injury in fact because each Defendant improperly disseminated their biometric identifiers and/or biometric information to third parties, including but not limited to Omnicell and BD, that hosted the biometric data in their data centers, in violation of BIPA.

64.     Pursuant to 740 ILCS 14/15(b), Plaintiffs were entitled to receive certain information prior to Defendants securing their biometric data; namely, information advising them of the specific limited purpose(s) and length of time for which each Defendant collects, stores, uses and disseminates their private biometric data; information regarding each Defendant's biometric retention policy; and, a written release allowing each Defendant to collect, store, use and disseminate their private biometric data. By depriving Plaintiffs of this information, Defendants

FILED DATE: 4/10/2019 3:14 PM   2018CH07161

injured them. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

65.     Plaintiffs have plausibly inferred actual and ongoing harm in the form of monetary damages for the value of the collection and retention of their biometric data; in the form of monetary damages by not obtaining additional compensation as a result of being denied access to material information about Defendants' policies and practices; in the form of the unauthorized disclosure of their confidential biometric data to third parties; in the form of interference with their rights to control and possess their confidential biometric data; and in the form of the continuous and ongoing exposure to substantial and irreversible loss of privacy.

66.     As Plaintiffs are not required to allege or prove actual damages in order to state a claim under BIPA, they seek statutory damages under BIPA as compensation for the injuries caused by Defendants. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

67.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiffs bring claims on their own behalf and as representatives of all other similarly-situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

68.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives

FILED DATE: 4/10/2019 3:14 PM   2018CH07161

a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS 14/15.

69.     Plaintiffs seek class certification under the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, for the following class of similarly situated workers under BIPA:

> All individuals working for Northwestern in the State of Illinois who had their fingerprints collected, captured, received, obtained, maintained, stored, or disclosed by any Defendant during the applicable statutory period.

70.     This action is properly maintained as a class action under 735 ILCS 5/2-801 because:

A.     The class is so numerous that joinder of all members is impracticable;

B.     There are questions of law or fact that are common to the class;

C.     The claims of the Plaintiffs are typical of the claims of the class; and,

D.     The Plaintiffs will fairly and adequately protect the interests of the class.

### Numerosity

71.     The total number of putative class members exceeds fifty (50) individuals. The exact number of class members may easily be determined from Northwestern's database.

### Commonality

72.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiffs and all members of the Class have been harmed by Defendants' failure to comply with BIPA. The common questions of law and fact include, but not limited to the following:

A.     Whether any Defendant collected, captured or otherwise obtained Plaintiffs' and the Class's biometric identifiers or biometric information;

B.     Whether any Defendant properly informed Plaintiffs and the Class of its purposes for collecting, using, storing and disseminating their biometric identifiers or biometric information;

FILED DATE: 4/10/2019 3:14 PM   2018CH07161

C.       Whether any Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, store and disseminate Plaintiffs' and the Class's biometric identifiers or biometric information;

D.       Whether any Defendant has disclosed or re-disclosed Plaintiffs' and the Class's biometric identifiers or biometric information;

E.       Whether any Defendant has sold, leased, traded, or otherwise profited from Plaintiffs' and the Class's biometric identifiers or biometric information;

F.       Whether any Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction with the individual, whichever occurs first;

G.       Whether any Defendant complies with any such written policy (if one exists);

H.       Whether any Defendant's violations of BIPA have raised a material risk that Plaintiffs' and the putative Class's biometric data will be unlawfully accessed by third parties;

I.       Whether any Defendant used Plaintiffs' and the Class's fingerprints to identify them; and

J.       Whether the violations of BIPA were committed negligently; and

K.       Whether the violations of BIPA were committed intentionally and/or recklessly.

73.     Plaintiffs anticipate that Defendants will raise defenses that are common to the class.

## Adequacy

74.     Plaintiffs will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiffs and class members. Plaintiffs, moreover, have retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

FILED DATE: 4/10/2019 3:14 PM    2018CH07161

### Typicality

75.     The claims asserted by Plaintiffs are typical of the class members they seek to represent. Plaintiffs have the same interests and suffer from the same unlawful practices as the class members.

76.     Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS 5/2-801.

### Predominance and Superiority

77.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

78.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent

FILED DATE: 4/10/2019 3:14 PM   2018CH07161

and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

### FIRST CAUSE OF ACTION
### Violation of BIPA Section 15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule

79.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

80.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

81.     Each Defendant fails to comply with these BIPA mandates.

82.     Defendant NLFH is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

83.     Defendant NMHC is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

84.     Defendant NMH is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

85.     Defendant Omnicell, Inc. is a Delaware corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

FILED DATE: 4/10/2019 3:14 PM 2018CH07161

86.     Defendant Becton Dickinson and Company is a New Jersey corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

87.     Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected by Defendants (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

88.     Plaintiffs' and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

89.     Each Defendant has failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

90.     Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiffs' and the Class's biometric data and have not and will not destroy Plaintiffs' and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

91.     On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

FILED DATE: 4/10/2019 3:14 PM   2018CH07161

## SECOND CAUSE OF ACTION
### Violation of BIPA Section 15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information

92.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

93.    BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

94.    Each Defendant fails to comply with these BIPA mandates.

95.    Defendant NLFH is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

96.    Defendant NMHC is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

97.    Defendant NMH is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

98.    Defendant Omnicell, Inc. is a Delaware corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

99.    Defendant Becton Dickinson is a New Jersey corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

FILED DATE: 4/10/2019 3:14 PM    2018CH07161

100.    Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected by Defendants (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

101.    Plaintiffs' and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

102.    Each Defendant systematically and automatically collected, used, and stored Plaintiffs' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

103.    Each Defendant did not inform Plaintiffs in writing that their biometric identifiers and/or biometric information were being collected, stored, used, and disseminated, nor did any Defendant inform Plaintiffs in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

104.    By collecting, storing, and using Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

105.    On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA  pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to

FILED DATE: 4/10/2019 3:14 PM   2018CH07161

740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

### THIRD CAUSE OF ACTION
**Violation of BIPA Section 15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent**

106.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

107.    BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

108.    Each Defendant fails to comply with this BIPA mandate.

109.    Defendant NLFH is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

110.    Defendant NMHC is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

111.    Defendant NMH is a limited liability company registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

112.    Defendant Omnicell, Inc. is a Delaware corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

113.    Defendant Becton Dickinson is a New Jersey corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

114.    Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected by Defendants (in the form of their fingerprints), as explained in detail in Sections II and III, *supra. See* 740 ILCS 14/10.

FILED DATE: 4/10/2019 3:14 PM 2018CH07161

115.    Plaintiffs' and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

116.    Each Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiffs' biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

117.    By disclosing, redisclosing, or otherwise disseminating Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

118.    On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA  pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

### PRAYER FOR RELIEF

Wherefore, Named Plaintiffs Yana Mazya and Tiki Taylor respectfully request that this Court enter an Order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs Yana Mazya and Tiki Taylor as Class Representatives, and appointing Stephan Zouras, LLP, as Class Counsel;

B.    Declaring that Defendants' actions, as set forth above, violate BIPA;

FILED DATE: 4/10/2019 3:14 PM   2018CH07161

C.    Awarding statutory damages of $5,000 for *each* reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.    Declaring that Defendants' actions, as set forth above, were intentional or reckless;

E.    Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class, including an Order requiring Defendants to collect, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

F.    Awarding Plaintiffs and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

G.    Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and,

H.    Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Date:   April 10, 2019        Respectfully Submitted,

*/s/ Catherine T. Mitchell*

Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
Stephan Zouras, LLP
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF**

FILED DATE: 4/10/2019 3:14 PM   2018CH07161

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on April 10, 2019, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.


/s/ Catherine T. Mitchell

Order                                                        (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Mazya, et al.

v.

Northwestern Lake Forest Hospital, et al.

No. 18-CH-07161

### ORDER

This case coming to be heard on Plaintiff's Motion for Leave to File First Amended Complaint, the Court being duly advised on premises by Counsil for all Parties, it is hereby ordered that Plaintiff's Motion for Leave to Amend is granted over objection by Defendant Beeton Dickinson; Defendants shall answer or otherwise plead on or before May 13, 2019; and the April 22nd status date is stricken.

It is so ordered.

ENTERED
Judge Neil H. Cohen-2021
APR 10 2019
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Attorney No.: 43734
Name: Stephan Zouras LLP
Atty. for: ☑
Address: 100 N. Riverside Plz. Ste. 2150
City/State/Zip: Chicago IL 60606
Telephone: 312-233-1550

ENTERED:

Dated: 4-10-9

_____
Judge          Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**